PATRICK M. RYAN (SBN 203215)
  *pryan@bzbm.com*
STEPHEN C. STEINBERG (SBN 230656)
  *ssteinberg@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:  (415) 956-1900
Facsimile:  (415) 956-1152

Attorneys for Plaintiffs JUSTICE LAUB
and DANIEL KANES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUSTICE LAUB and DANIEL KANES,<br><br>             Plaintiffs,<br><br>        v.<br><br>NICHOLAS HORBACZEWSKI;<br>DRONE RACING LEAGUE, INC.;<br>and DOES 1 THROUGH 10, inclusive,<br><br>             Defendants. | Case No. LA CV 2:17-06210 JAK (KSx)<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**1) BREACH OF ORAL CONTRACT**<br><br>**2) BREACH OF WRITTEN CONTRACT**<br><br>**3) BREACH OF IMPLIED-IN-FACT CONTRACT**<br><br>**4) QUANTUM MERUIT**<br><br>**5) FRAUD**<br><br>**6) BREACH OF FIDUCIARY DUTIES**<br><br>**7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>8) **PROMISSORY ESTOPPEL**<br><br>**DEMAND FOR JURY TRIAL** |

1      Plaintiffs JUSTICE LAUB ("Justice") and DANIEL KANES ("Dan")

2   (collectively, "Plaintiffs") hereby file the following Amended Complaint and allege

3   as follows:

## I.    INTRODUCTION

5      1.    Plaintiffs bring this action to hold Defendant NICHOLAS

6   HORBACZEWSKI ("Horbaczewski") liable for his cynical plot to steal their ideas

7   for a televised drone racing league, claim all the credit for himself, and cheat them

8   out of their rightful ownership of two-thirds of the Drone Racing League.

9      2.    Dan and Justice conceived of and began developing ideas for a

10  televised drone racing league in 2014, long before Horbaczewski had ever even

11  flown a drone or knew anything about them.  In early January 2015, Plaintiffs

12  presented their ideas to a television ("TV") production company, and shortly

13  thereafter received a written offer to produce a drone racing league TV series.

14     3.    In late-January 2015, Justice and Dan were introduced to Horbaczewski

15  as a potential seed investor for their venture.  Unbeknownst to Plaintiffs,

16  Horbaczewski saw them as easy marks, and he falsely promised that the three would

17  be equal partners in the Drone Racing League ("DRL"), to which they agreed.

18  Horbaczewski convinced Justice and Dan to reject the lucrative TV production deal

19  that predated his involvement, assign their rights to the TV show to the nascent

20  DRL, share all of their ideas for the DRL, and to devote their efforts over the next

21  several months toward developing the DRL with him.  In April 2015, without

22  Plaintiffs' knowledge, Horbaczewski incorporated the DRL without assigning any

23  ownership interest to Plaintiffs, and he deliberately concealed this fact from them

24  when they repeatedly asked for formal documentation of their ownership.  When

25  Horbaczewski was finished using Plaintiffs, he cut them loose in late 2015 without

26  giving them any shares in the DRL, or any compensation whatsoever.

27     4.    Since then, the Drone Racing League has been very successful, and

28  Horbaczewski has fabricated its origin in order to falsely portray himself as its sole

1  originator, when in fact, he pilfered the idea from Dan and Justice.

2       5.      This action seeks damages for Horbaczewski's breaches and fraud, as

3  well as injunctive relief in the form of specific performance of the terms of the

4  parties' agreement, namely that Dan and Justice are each entitled to one-third

5  ownership of the Drone Racing League, among other things.

## II.   PARTIES

7       6.      Plaintiff JUSTICE LAUB ("Justice") is an individual residing in Los

8  Angeles, California.

9       7.      Plaintiff DANIEL KANES ("Dan") is an individual residing in Santa

10  Clarita, California.

11       8.      Defendant NICHOLAS HORBACZEWSKI ("Horbaczewski") is an

12  individual residing at 14 Prince Street, Apt. 5F, New York, NY, 10012.

13       9.      Defendant DRONE RACING LEAGUE, INC. ("DRL") is a Delaware

14  corporation.  According to the DRL's filings with the California Secretary of State,

15  it has a "Principal Executive Office" at 40 West 27th Street, 8th Floor, New York,

16  NY, 10001, another "Principal Executive Office" and "ADMIN OFFICE" at 8351

17  Sedan Ave., West Hills, CA, 91304, and a "Principal Business Office in California"

18  at 3030 Prather Lane, Santa Cruz, CA, 95065.

19       10.     The true names or capacities, whether individual, corporate, associate,

20  representative, or otherwise, of Defendants named herein as DOES 1 through 10,

21  inclusive, are unknown to Plaintiffs who sue such Defendants by fictitious names.

22  Plaintiffs will amend this Complaint to show their true names and capacities when

23  the same have been ascertained.  Plaintiffs are informed and believe, and thereon

24  allege, that at all times herein mentioned, each of the Defendants named herein as

25  DOES 1 through 10, inclusive, was the agent and employee of each of the remaining

26  Defendants, and in doing the things hereinafter alleged, was acting within the scope

27  of such agency.  Plaintiffs are informed and believe, and thereon allege, that each of

28  the fictitiously named Defendants is responsible in some manner for the occurrences

3     Case No. LA CV 2:17-06210 JAK (KSx)
THIRD AMENDED COMPLAINT

1   herein alleged, and that Plaintiffs' damages were proximately caused by these

2   Defendants.

### III.  JURISDICTION AND VENUE

4        11.    This Court has diversity jurisdiction over Plaintiffs' claims under

5   28 U.S.C. § 1332.

6        12.    Horbaczewski is subject to this Court's specific personal jurisdiction in

7   that:  (a) he purposefully directed his activities toward California and/or availed

8   himself of the benefits afforded by California's laws; (b) the claims arise out of or

9   relate to his forum-related activities; and (c) the exercise of jurisdiction comports

10  with fair play and substantial justice, *i.e.*, it is reasonable.  Specifically,

11  Horbaczewski travelled to California at least 5-6 times to negotiate and enter into

12  the contracts with Dan and Justice and to perpetrate the fraud on them alleged

13  herein, and to meet and work with Plaintiffs on developing the DRL.

14       13.    The DRL is subject to this Court's general personal jurisdiction

15  because one of its two principal places of business is located in this district.  On

16  information and belief, nearly a third of the DRL's personnel work at its location(s)

17  in California.

18       14.    In addition, the DRL is subject to this Court's specific personal

19  jurisdiction in that:  (a) it purposefully directed its activities toward California

20  and/or availed itself of the benefits afforded by California's laws; (b) the claims

21  arise out of or relate to the DRL's forum-related activities; and (c) the exercise of

22  jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable.

23  Specifically, the DRL was formed pursuant to contracts negotiated and performed in

24  California in 2015, which are the subject of this action.  The DRL is registered with

25  the secretary of state and authorized to do business in California, has offices in this

26  district, and has nearly a third of its employees in California.  The DRL has held

27  events in this district, including, but not limited to:  (1) an event in March 2016 in

28  Hawthorne, California; (2) events in or around October 2016 in or around Los

1   Angeles, California.  Additional facts relevant to jurisdiction are alleged in more

2   detail below.

3       15.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that a

4   substantial part of the events or omissions giving rise to the claims occurred here.

## IV.  FACTUAL BACKGROUND

6       16.   In 2014, Dan and Justice conceived of and spent months developing

7   ideas for a drone racing league and TV show.  They agreed to be equal partners in

8   the drone racing venture that they were developing.

9       17.   In early January 2015, Plaintiffs pitched their ideas to a TV production

10  company based in Los Angeles, California called Blank Paige Productions.  Later

11  that month, they began seeking investors for their nascent venture.

12      18.   On or about January 22, 2015, Matthew Mazzeo, a venture capitalist in

13  the Los Angeles area, introduced Justice and Dan to Horbaczewski as a potential

14  seed investor for Plaintiffs' drone racing league venture at a meeting in Los

15  Angeles, California.  Mr. Mazzeo and Horbaczewski were fraternity brothers at

16  Harvard.

17      19.   Dan, Justice, and Horbaczewski corresponded and talked on the phone

18  numerous times over the next several weeks and met again in Los Angeles for two

19  days on or about March 11-12, 2015.

20      20.   During these meetings and phone calls in January-March 2015,

21  Plaintiffs introduced Horbaczewski to drones and drone racing, shared their ideas

22  and plans to develop a televised drone racing league, including a written pitch deck

23  that predated his involvement, and invited him to become part of their venture.

24  During the meetings on or about March 11-12, 2015, the three orally agreed to be

25  partners in and co-founders of the DRL, with each owning a third of the company.

26      21.   They documented this agreement in a business plan for the DRL,

27  entitled "Drone Racing League: A Business Riff," that they jointly drafted between

28  February 2015 and March 2015 ("Business Plan").  On information and belief,

Horbaczewski's contributions to the Business Plan were largely based on the pitch deck that he had earlier received from Dan and Justice.  The Business Plan, which constitutes the Parties written agreement, was hosted by Horbaczewski in the cloud using the Google Docs platform.  The material terms of the Business Plan contemplate that Dan, Justice, and Horbaczewski would be co-founders of the DRL and specified that the company's cap structure would be: "Cap Structure: [] At this Time we are thinking 33% Dan [Kanes], 33% Justice [Laub], and 33% Nick [Horbaczewski]. We want to give Matt [Mazzeo] the additional 1% for introducing us."  This language was initially inputted by Dan and Justice in February 2015. Between February 11, 2015 and March 12, 2015, Dan, Justice, and Horbaczewski all had access to the Business Plan in Google Docs.

22.    At no time prior to March 12, 2015, did Horbaczewski remove or disagree with this language contained in the Business Plan.

23.    At their March 11-12, 2015 meetings, Dan, Justice, and Horbaczewski discussed the Business Plan and orally agreed to the material terms contained in the in the Business Plan that are described above.

24.    The Parties discussed that the language describing the material terms set forth in the Business Plan was intended by the Parties to mean that each of them would own 33% of the DRL and they would work together as co-founders to commercialize Dan and Justice's ideas for a televised drone racing league.  The Parties further discussed that this language was intended to mean that they would have the option of granting Matt Mazzeo 1% of the DRL for introducing Dan and Justice to Horbaczewski.  The Parties did not exercise the option to grant Matt Mazzeo 1% of the DRL within a reasonable period of time.  The Business Plan includes an implied term that the 1% of the DRL which was available to be granted to Matt Mazzeo would be divided equally between Dan, Justice, and Horbaczewski if the option to grant Matt Mazzeo 1% was not exercised.

25.   Immediately after the March 11-12, 2015 meetings, Dan, Justice, and Horbaczewski proceeded to act together as partners and co-founders to continue the development of their drone racing venture.

26.   At the March 11-12, 2015 meetings, Horbaczewski stated that he would invest $250,000 as seed money, serve as CEO, and work on business development while Dan and Justice would provide ideas for the league, many of which they had already developed and shared, and services related to technical issues and race logistics, community outreach and marketing, strategy, location scouting, and competitor and fan interaction and experience, among other things.  Dan offered to invest $250,000, but Horbaczewski refused, insisting that Plaintiffs did not need to contribute capital because they had contributed their ideas, concepts, and existing work product to the venture.

27.   Unbeknownst to Dan and Justice at that time, Horbaczewski never had any intent of performing his agreement with and promises to them.  Rather, he intended to breach his agreement and planned to steal Plaintiffs' ideas and then the entire DRL for himself.  He concealed his true intentions from Plaintiffs for many months while they worked on behalf of the DRL.

28.   On or about February 9, 2015, Justice and Dan received an offer from Blank Paige Productions for a one-year exclusive deal to develop a drone racing league TV show.  The offer from Blank Paige Productions granted Dan and Justice equal amounts of an executive producer fee and profit participation received by Blank Paige Productions.  Justice discussed the offer from Blank Paige Productions with Horbaczewski on the telephone and forwarded the offer to him for comment by email on or about February 12, 2015.  This email stated that Dan and Justice were happy to have the ownership in the drone racing league TV show that they originated be owned by the new company that Dan, Justice, and Horbaczewski were starting together so their interests would be aligned.

29.   On or about February 16, 2015, Horbaczewski responded and urged

Plaintiffs to reject the proposal, stating that the DRL should control all TV rights, and that the DRL would ultimately make more money for all three of them if they rejected the Blank Paige Productions offer.  Horbaczewski did not disagree that he was starting a new company with Dan and Justice and instead responded that "I'm positive we'd regret agreeing" to the terms proposed by Blank Paige Productions "if drone racing takes off quickly."  In justifiable reliance on Horbaczewski's false representations and promises that they would be equal partners in the DRL and each own one-third of the company, and on Horbaczewski's concealment of his true intentions, Plaintiffs rejected the lucrative offer, and assigned their rights in the TV show to the new company that they were starting with Horbaczewski.  But for Horbaczewski's false representations and promises, and concealment, Dan and Justice would have developed the show with Blank Paige Productions.

30.    Over the six months following their January 22, 2015 meeting, Dan and Justice performed substantial work for Horbaczewski and the yet-to-be-formed DRL to help get it off the ground.

31.    For example, Dan outlined the existing market landscape, technologies, and challenges of hobbyist drone racing, and prescribed a strategy and course of action that were used as templates for the DRL's activities.  These core concepts, techniques, and applied technologies were used by the DRL without compensating Dan for his contributions.  Horbaczewski would not have been able to take advantage of the unique business opportunity for a televised sports league built around drones and their pilots without Dan's involvement.

32.    Dan initially conceived of a competitive event between drone pilots to be captured using a variety of narrative cinematographic techniques in order to increase production quality and value.  This captured material was then to be edited together in post-production, but presented as a live event for broadcast and streaming to audiences in order to make it more engaging.  This process is a key factor that allowed Horbaczewski and the DRL to raise money and negotiate a

1   distribution deal with ESPN.

2       33.    Dan proposed the idea of a standardized drone model which all league

3   pilots would fly in competition in order to reduce variance in performance and bring

4   focus to the pilots' skills rather than incongruities in drone design and construction.

5   Dan introduced the concept of a network-connected drone simulator on or about

6   May 3, 2015 which would serve as a marketing platform, recruitment tool for league

7   pilots, and reduce the barriers to entry for people who were new to drone racing by

8   alleviating much of the expense and risk involved for novices.

9       34.    Horbaczewski and the DRL also used footage that was filmed by Dan

10  at an early DRL event to promote the league, for example, the event held in

11  Yonkers, New York in or about July 2015.  Dan also assisted in preparing requests

12  for proposals to help facilitate the DRL's early events in or about April/May 2015.

13  Dan developed key marketing concepts that Horbaczewski has prominently featured

14  in promoting and marketing the DRL – notably, referring to the DRL as Nascar for

15  the gaming generation, gamers, and/or drones.  Dan also contributed contacts and

16  potential business connections, including arranging an opportunity to showcase the

17  DRL at the Amazon AWS event in Las Vegas in October 2015, and a technology

18  partnership between the DRL and Avegant, which makes first person view goggles

19  for drones.

20      35.    The DRL invited Dan to Join the DRL's Slack channel on or about

21  May 4, 2015.  Slack is an instant messaging platform that allows the exchange of

22  messages and documents, organized into threads called "channels" devoted to

23  particular topics.  Dan was an active participant in the DRL's Slack channel and

24  contributed to the development of the DRL's business until his access to the DRL's

25  Slack channel was abruptly terminated in November/December 2015.  The DRL has

26  refused to produce messages and documents exchanged over the DRL's Slack

27  channel unless the Plaintiffs pays for their recovery from Slack, including

28  documents that Defendants should have been preserved after this litigation was

1   commenced.

2       36.     Justice, for example, introduced Horbaczewski to branding, marketing,

3   and public relations companies and provided detailed evaluation and analysis of

4   branding and marketing proposals for the DRL.  He introduced Horbaczewski to

5   contacts who had worked for potential technology partners like Facebook, Google,

6   and Microsoft.  Justice provided further help with fundraising efforts, arranging

7   meetings with several potential investors, advisors to startups, and an investment

8   bank for private technology companies.  He also identified and introduced

9   Horbaczewski to people who might be able to provide venues for DRL events.

10  Justice repeatedly introduced Horbaczewski to these people as his partner or one of

11  the "co-founders" of the DRL along with himself, and Horbaczewski never

12  disagreed.  For example, on or about February 18, 2015, Justice introduced

13  Horbaczewski as "my partner on our new Drone Racing League" to a marketing

14  agency that was interested in working with the DRL.  Horbaczewski did not object

15  to being characterized as a partner in the DRL along with Dan and Justice.

16      37.     Justice also gave input on how to address the technical challenges of

17  drone racing.  He provided substantial input and assistance on developing a

18  promotional video on drone racing to help introduce the DRL to the world.

19      38.     Justice helped Horbaczewski understand how to make the DRL cool

20  and culturally relevant.  For example, Justice came up with the idea of each drone

21  racing pilot having a code name or call sign.  He arranged a meeting with a famous

22  designer for movies and TV at which they conceived of the look and feel of the

23  DRL events and race courses, and costumes for the DRL participants, all of which

24  has been used to great benefit by the DRL.  Justice had the ideas to use neon lights

25  for the drones and race course features, smoke machines, and electronic music for

26  the accompaniment.  He also developed the ideas to use video that was fast cut but

27  felt handmade by the pilots, and to provide back stories for the pilots in order to

28  personalize them and help spectators connect with the DRL.

39.     Justice also worked with Defendants and responded to Defendants inquiries regarding how to market and promote the DRL to make it successful.  For example, on or about May 13, 2015, the DRL via Horbaczewski requested Justice's input regarding the cinematic techniques to make the DRL cool, asked for input regarding marketing and video production agencies, and requested that he be involved in the "creative development" of the video production for the DRL.  Justice responded to the DRL's request for input by providing detailed notes and analysis on or about May 14, 2015.

40.     Plaintiffs also conceived of how to make the DRL interactive for spectators by providing viewing through their phones, having multiple cameras throughout the race course, and allowing fans to shift their viewing experience individually on their devices.

41.     Horbaczewski clearly recognized Plaintiffs' key roles in and substantial contributions to the DRL.  In or about March/April 2015, Horbaczewski asked Justice and Dan for their biographies, headshots, and logos from their previous companies, which he then used to identify Plaintiffs as co-founders of the DRL in pitch decks shown to one or more potential investors.  Horbaczewski followed up with Plaintiffs seeking this information on multiple occasions in April 2015 in addition to requesting that Plaintiffs provide a "call sign" as a code name to identify themselves within the DRL.

42.     The DRL requested that Dan attend a meeting with the DRL's external intellectual property counsel on or about May 15, 2015.  Dan attended the meeting as requested to discuss the DRL's business with their external counsel.

43.     In April-June 2015, including at 2-3 more meetings in Los Angeles, California, Plaintiffs repeatedly asked Horbaczewski for more formal documentation of their co-ownership of the DRL, as they had all agreed earlier that year.  Horbaczewski repeatedly dodged the issue, claiming that it could not be done until the company was formed and took in outside investment.

44.     In fact, these statements by Horbaczewski were false and/or misleading as he had incorporated the DRL in Delaware on April 17, 2015 without Plaintiffs' knowledge, without documenting their ownership stake in the DRL, and without issuing them any shares in the company.

45.     On or about May 27, 2015, Horbaczewski informed Dan and Justice that he was actively seeking but had not secured any funding from venture capital firms.  Horbaczewski then proposed to Dan and Justice that they meet the funding needs of the DRL by all putting in "money now on the same terms."

46.     Horbaczewski later sent Dan investment documents offering Dan the opportunity to invest in the DRL on or about August 19, 2015.  These documents offered Dan the opportunity to invest in the DRL on the same terms as outside investors without recognizing the prior agreement between Dan, Justice, and Horbaczewski that they would each own 1/3 of the DRL.

47.     These documents described the proposed corporate structure of the DRL and indicated that Horbaczewski, Ryan Gury, Trevor Smith, and Al Kelly were already existing shareholders in the DRL.

48.     Dan and Justice were previously unaware of the corporate structure and who owned what, if any, shares of the DRL.  The DRL is a private corporation and Dan and Justice did not have access to its records to determine who had an ownership interest in the DRL.  Prior to August 19, 2015, Dan and Justice could not have discovered the corporate structure and existing shareholders of the DRL with the exercise of reasonable diligence.

49.     On or about August 24, 2015, Dan declined to invest in the DRL on the same terms that were being offered to outside investors because the investment documents failed to recognize that he was a co-founder and already owned 1/3 of the DRL.

50.     On information and belief, the DRL completed a transaction that sold shares to outside investors on or about August 25, 2015.  This transaction failed to

recognize that Dan and Justice each owned 1/3 of the DRL and caused Dan and Justice damage by wrongfully depriving them of their agreed upon ownership interests in the DRL.

51.     Plaintiffs continued providing services to Horbaczewski and the DRL through the Summer and Fall of 2015 similar to the aforementioned contributions.

52.     But around November-December 2015, Horbaczewski cut off all further contact with Plaintiffs.

53.     Prior to November-December 2015, the DRL accepted the contributions, services, and the benefits of the services provided by Dan and Justice, including those described above in paragraphs 1-52.

## V.   LITIGATION HISTORY

54.     Justice filed a complaint against Horbaczewski and the DRL on July 10, 2017 in the Superior Court of California, Case No. BC667779  ("Superior Court Complaint").  The Superior Court Complaint alleges: claims for the breach of oral and written contracts that Justice, Dan, and Horbaczewski agreed be co-founders and partners in the DRL, with each owning 1/3 of the company; a common count that Justice provided requested services to Horbaczewski and the DRL but was not paid (*i.e.*, a claim for *quantum meruit*); fraud based on Horbaczewski's misrepresentations to Justice that he would get a 1/3 ownership stake in the DRL if he agreed to make Horbaczewski a co-founder and CEO of the DRL; breach of fiduciary duty based on Horbaczewski stealing Justice's ideas for the DRL without providing his partner Justice any ownership interest in the DRL; and exemplary damages.  A copy of the Superior Court Complaint is attached as Exhibit A.

55.      The Superior Court Complaint was removed to this Court on August 22, 2017 and on September 27, 2017, Dan and Justice filed an Amended Complaint in this litigation ("Amended Complaint").  The Amended Complaint included the

claims asserted in the Superior Court Complaint and added additional claims for breach of an implied-in-fact contract and intentional interference with prospective economic advantage.

56.     The Amended Complaint added Dan as a Plaintiff in addition to Justice.  Dan, Justice, and Horbaczewski were partners and co-founders who agreed to and did in fact work together to advance the business of the DRL.  The claims asserted by both Dan and Justice arise from the same conduct, transactions, and occurrences described above in Paragraphs 1-53.  The claims asserted herein by Dan and Justice against Horbaczewski and the DRL involve the same agreements and activities directed towards founding and establishing the business of the DRL.  The claims asserted by Dan and Justice in the Amended Complaint both seek the same redress against the same Defendants based same general set of facts and incidents that resulted in Dan and Justice being wrongfully deprived of their agreed upon ownership interests in the DRL by Horbaczewski and the DRL.  Dan and Justice were both parties to the same oral, written, and implied agreements related to the founding of the DRL and both suffered the same damage as a result of the breach of these agreements by Horbaczewski and the DRL.  Horbaczewski made and reneged on the same promise to Dan and Justice that they would be co-founders and each own 1/3 of the DRL.  Similarly, Dan and Justice both rendered services requested by Horbaczewski and the DRL related to the founding of the DRL and suffered the same harm when Horbaczewski failed to provide them with their promised ownership interest in the DRL.  Moreover, Dan and Justice were both similarly harmed by Horbaczewski's fraudulent misrepresentations, breach of fiduciary duties, and intentional interference with prospective economic advantage as detailed below.

# VI.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Breach of Oral Contract Against Horbaczewski and the DRL)

57.     Plaintiffs hereby incorporate by reference Paragraphs 1-56 above as if fully set forth herein.

58.     Beginning on January 22 and continuing through at least March 2015, Dan, Justice, and Horbaczewski discussed their ideas for the DRL.  On or about February-March, 2015, in the Business Plan circulated between the Parties through Google Docs and during meetings in Los Angeles Dan and Justice offered Horbaczewski the opportunity to be a co-founder of the DRL together with Dan and Justice with each of them owning 1/3 of the company.  On or about March 11-12, 2015, Horbaczewski orally accepted Dan and Justice's offer to be a co-founder of the DRL and that each of them would own 1/3 of the company.  This agreement created an oral contract between Dan, Justice, and Horbaczewski having the material terms noted above.  Dan, Justice, and Horbaczewski continued to work together as co-founders and partners based on the understanding that they each owned 1/3 of the DRL.

59.     To facilitate the development of their televised drone racing venture, Horbaczewski stated that he would invest $250,000 as seed money, serve as CEO, and work on business development.  Plaintiffs would provide ideas and concepts for the league, many of which they had already developed.  Plaintiffs also planned to provide services related to technical issues and race logistics, community outreach and marketing, strategy, location scouting, and competitor and fan interaction and experience, among other things.  Horbaczewski would serve as CEO and work on business development.  Dan also stated that he would invest $250,000 to match Mr. Horbaczewski's investment but Mr. Horbaczewski refused Dan's offer and insisted that Dan and Justice had done their part by bringing Horbaczewski into the venture and providing all of their ideas.

60.     The DRL accepted the contributions, services, and the benefits of the services provided by Dan and Justice, including those described above in paragraphs 1-59, until Horbaczewski prevented Dan and Justice from making additional contributions.  Dan and/or Justice continued to perform as agreed in the oral contract after the DRL was incorporated until November-December 2015.  Therefore, the DRL is bound by the oral contract between Dan, Justice, and Horbaczewski who acted as the promoter for the DRL prior to the incorporation of the DRL.

61.     On or about August 25, 2015, Horbaczewski and the DRL breached the oral agreement by accepting investment from outside investors without recognizing that Dan and Justice each owned 1/3 of the DRL.

62.     Justice and Dan performed their obligations to Horbaczewski except those obligations Plaintiffs were prevented or excused from performing.

63.     Plaintiffs suffered damages proximately caused by Horbaczewski's breach of the agreement in that they never received their ownership stake or shares in the DRL.

## SECOND CLAIM FOR RELIEF

### (Breach of Written Contract Against Horbaczewski and the DRL)

64.     Plaintiffs hereby incorporate by reference Paragraphs 1-63 above as if fully set forth herein.

65.     In or about February-March, 2015, Dan, Justice, and Horbaczewski collaborated on the Business Plan described above.  Plaintiffs would provide their ideas and concepts for the league, many of which they had already developed.  They also planned to provide services related to technical issues and race logistics, community outreach and marketing, strategy, location scouting, and competitor and fan interaction and experience, among other things.  Horbaczewski would serve as CEO and work on business development.

66.     The Business Plan, which constitutes the Parties written agreement, was hosted by Horbaczewski in the cloud using the Google Docs platform.  The

materials terms of the Business Plan specify that the company's cap structure would be: "Cap Structure: [] At this Time we are thinking 33% Dan [Kanes], 33% Justice [Laub], and 33% Nick [Horbaczewski]. We want to give Matt [Mazzeo] the additional 1% for introducing us." This language was initially inputted by Dan and Justice in February 2015 and constituted their offer to contract with Horbaczewski. Between February 11, 2015 and March 12, 2015, Dan, Justice, and Horbaczewski all had access to the Business Plan in Google Docs.

67.    At no time prior to March 12, 2015 or any time prior June 30, 2017, did Horbaczewski remove or disagree with the this language contained in the Business Plan.

68.    At their March 11-12, 2015 meetings, Horbaczewski orally accepted Dan's and Justice's offer contained the Business Plan forming a written contract. And, at their meetings on March 11-12, 2015, Dan, Justice, and Horbaczewski confirmed their agreement that they would each be co-founders of the DRL and confirmed their agreement to the terms set out in the Business Plan. Dan, Justice, and Horbaczewski discussed that the language describing the material terms set forth in the Business Plan was intended by the Parties to mean that each of them would work together as co-founders to commercialize Dan and Justice's ideas for a televised drone racing league and own 33% of the DRL. The Parties further discussed that this language was intended by the Parties to mean that the Parties had an option to grant Matt Mazzeo 1% of the DRL for introducing Dan and Justice to Horbaczewski. The option did not include a fixed period of time during which it was required to be exercised and accordingly was required to be exercised within a reasonable period of time. The Parties did not exercise the option to grant Matt Mazzeo 1% of the DRL within a reasonable period of time.

69.    The Business Plan does not specifically contemplate how the 1% of the DRL that was available to grant to Matt Mazzeo would be divided if the option wasn't exercised within a reasonable period of time. Instead, the Business Plan

includes an implied term that the 1% of the DRL that was the subject of the option to grant to Matt Mazzeo would be split equally between Dan, Justice, and Horbaczewski because they had equal ownership shares in the DRL (i.e., they each owned 33% or 1/3 of the 99% of the DRL that the Parties agreed to allocate between themselves).  Pursuant to this implied term, Dan, Justice, and Horbaczewski each acquired an additional 1/3% ownership interest in the DRL when the option to grant Matt Mazzeo 1% of the DRL was not exercised within a reasonable period of time. The result is that Dan, Justice, and Horbaczewski increased their respective ownership interests from 33% to 1/3 of the DRL when the option to grant Matt Mazzeo 1% of the DRL was not exercised.

70.     In light of the proffered parol evidence and the nature and circumstances surrounding the agreement, the written terms in the Business Plan are reasonably susceptible to Plaintiffs' proffered interpretation that they would each own 1/3 of the DRL after the option to grant Matt Mazzeo 1% of the DRL was not exercised within a reasonable period of time.  The conduct of the Parties immediately after the agreement, and prior to any disputes arising, confirms the intent of the Parties as Dan, Justice, and Horbaczewski proceeded to act together as partners and co-founders to continue the development of their drone racing venture.

71.     In the alternative, Dan, Justice, and Horbaczewski accepted the terms set out in the Business Plan by continuing to work together as partners and co-founders of the DRL and taking steps to build and promote the business of the DRL, without Horbaczewski expressing any disagreement either orally or in writing to the terms set out in the Business Plan.

72.     The DRL accepted the contributions, services, and the benefits of the services provided by Dan and Justice, including those described above in paragraphs 1-71 until Horbaczewski prevented Dan and Justice from making additional contributions.  Dan and/or Justice continued to perform as agreed in the written contract after the DRL was incorporated until November-December 2015.

1   Therefore, the DRL is bound by the written contract between Dan, Justice, and

2   Horbaczewski who acted as the promoter for the DRL prior to the incorporation of

3   the DRL.

4       73.     On or about August 25, 2015, Horbaczewski and the DRL breached the

5   written agreement by accepting investment from outside investors without

6   recognizing that Dan and Justice each owned 1/3 of the DRL.

7       74.     Justice and Dan performed their obligations to Horbaczewski except

8   those obligations Plaintiffs were prevented or excused from performing.

9       75.     Plaintiffs suffered damages proximately caused by Horbaczewski's

10  breach of the agreement in that they never received their ownership stake or shares

11  in the DRL.

12                      **THIRD CLAIM FOR RELIEF**

13   **(Breach of Implied-in-Fact Contract Against Horbaczewski and the DRL)**

14      76.     Plaintiffs hereby incorporate by reference Paragraphs 1-75 above as if

15  fully set forth herein.

16      77.     In the alternative, Justice, Dan, and Horbaczewski entered into an

17  implied-in-fact contract that was formed on or about March 11-12, 2015, whereby

18  the three individuals acted together as equal partners and co-founders of the DRL

19  with each of them owning 1/3 of the DRL. Justice and Dan brought Horbaczewski

20  into the televised drone racing business venture they were pursuing and the parties

21  worked together to advance the business of the DRL during, at least, the period from

22  February 2015 to May 2015.  Justice, Dan, and Horbaczewski manifested their

23  agreement to an implied contract to be partners and co-founders of the DRL with

24  each of them owning 1/3 of the DRL by their conduct working together as partners

25  and co-founders and accepting the contributions to the DRL made by each of

26  Justice, Dan, and Horbaczewski to further the business of the DRL during this

27  period.

28

78.     Examples of the Parties' conduct that demonstrates an implied contract was formed between Dan, Justice, and Horbaczewski and that the Parties accepted each other's contributions and acted as partners and co-founders of the DRL are provided below.

79.     On or about February 12, 2015, Justice discussed and provided Horbaczewski an offer from Blank Paige Productions to produce a drone racing league TV show that Dan and Justice originated.  This email stated that Dan and Justice were happy to have the ownership in the drone racing league TV show that they originated be owned by the new company that Dan, Justice, and Horbaczewski were starting together so their interests would be aligned.

80.     On or about February 16, 2015, Horbaczewski responded and urged Plaintiffs to reject the Blank Paige Productions proposal, stating that the DRL should control all TV rights, and that the DRL would ultimately make more money for all three of them if they rejected the Blank Paige Productions offer. Horbaczewski did not disagree that he was starting a new company with Dan and Justice and instead responded that "I'm positive we'd regret agreeing" to the terms proposed by Blank Paige Productions "if drone racing takes off quickly."  Based on this understanding, Plaintiffs provided ideas and services to Horbaczewski and the DRL, rejected an earlier TV production deal, and assigned their rights to a drone racing league TV show to the yet-to-be-formed DRL, among other things.

81.     On or about February 18, 2015, Justice introduced Horbaczewski as "my partner on our new Drone Racing League" to a marketing agency that was interested in working with the DRL.  Horbaczewski did not object to being characterized as a partner in the DRL with Dan and Justice and engaged with the marketing agency that Justice suggested the DRL work with.  Additionally, Justice and Dan repeatedly introduced Horbaczewski to third parties as one of their co-founders in the DRL.  Horbaczewski did not object to being characterized as a co-founder with Justice and Dan because the three of them were developing the DRL as

co-founders and equal owners of the DRL.

82.    In or about February-March, 2015, Dan, Justice, and Horbaczewski collaborated on a Business Plan describing, for example, how the Parties proposed to advance the business of the DRL together as partners and co-founders based upon the drone racing concepts contributed by Dan and Justice.

83.    On or about April 1, 2015, Horbaczewski requested that Dan provide input on a request for proposal that the DRL sent to video production companies to create a video that would be used to promote the DRL.

84.    In or about March/April 2015, Horbaczewski asked Justice and Dan for their biographies, headshots, and logos from their previous companies, which he then used to identify Plaintiffs as co-founders of the DRL in pitch decks shown to one or more potential investors.  Horbaczewski followed up with Plaintiffs seeking this information on multiple occasions in April 2015 in addition to requesting that Plaintiffs provide a "call sign" as a code name to identify themselves within the DRL.

85.    On or about May 3, 2015, Dan introduced the concept of a network-connected drone simulator which would serve as a marketing platform, recruitment tool for league pilots, and reduce the barriers to entry for people who were new to drone racing by alleviating much of the expense and risk involved for novices.  The DRL accepted Dan's contribution and currently offers a drone racing simulator to promote the DRL on its website.

86.    On or about May 4, 2015, the DRL invited Dan to join the DRL's Slack channel.  Dan was an active participant in the DRL's slack channel and contributed to the development of the DRL's business for many months until his access to the DRL's slack channel was abruptly terminated in November/December 2015.

87.    On or about May 13, 2015, the DRL via Horbaczewski requested Justice's input regarding the cinematic techniques to make the DRL cool, asked for input regarding marketing and video production agencies, and requested that he be

involved in the "creative development" of the video production for the DRL. Justice responded to the DRL's request for input by providing detailed notes and analysis on or about May 14, 2015.

88.    On or about May 15, 2015, Dan attended a meeting, upon by request from the DRL, with the DRL's external intellectual property counsel to discuss the DRL's business related to potential intellectual property issues.

89.    On or about May 27, 2015, Horbaczewski proposed to meet the funding needs of the DRL by Dan, Justice, and Horbaczewski all putting in "money now on the same terms." Horbaczewski's request that he, Dan, and Justice put money in on the same terms confirms that he manifested his assent to be equal partners and co-founders in the DRL with Dan and Justice.

90.    The above conduct demonstrates that Dan, Justice, and Horbaczewski acted as partners and co-founders to advance the business of the DRL. It also establishes that the actions of Horbaczewski and the DRL manifested their consent to an implied contract that Dan, Justice, and Horbaczewski would each own 1/3 of the DRL and work together to advance the business of the DRL as co-founders because the Parties did exactly that.

91.    Horbaczewski and the DRL accepted and used these ideas, services, and rights from Plaintiffs.

92.    Horbaczewski and the DRL knew, or had reason to know, that Plaintiffs interpreted the parties' conduct, for example, the parties conduct described above between February and May 2015 as an agreement to enter into a contract that was formed on or about March 11-12, 2015.

93.    The DRL accepted the contributions, services, and the benefits of the services provided by Dan and Justice, including those described above in Paragraphs 1-92 until Horbaczewski prevented Dan and Justice from making additional contributions. Dan and/or Justice continued to perform as agreed in the implied contract after the DRL was incorporated until November-December 2015.

1   Therefore, the DRL is bound by the implied contract between Dan, Justice, and

2   Horbaczewski who acted as the promoter for the DRL prior to the incorporation of

3   the DRL.

4          94.     On or about August 25, 2015, Horbaczewski and the DRL breached the

5   implied contract by accepting investment from outside investors without

6   recognizing that Dan and Justice each owned 1/3 of the DRL.

7          95.     Justice and Dan performed their obligations to Horbaczewski and the

8   DRL except those obligations Plaintiffs were prevented or excused from

9   performing.

10         96.     Plaintiffs suffered damages proximately caused by Horbaczewski's and

11  the DRL's breach of the agreement in that they never received their ownership stake

12  or shares in the DRL.

13                        **FOURTH CLAIM FOR RELIEF**

14  **(*Quantum Meruit* for Services Rendered Against Horbaczewski and the DRL)**

15         97.     Plaintiffs hereby incorporate by reference Paragraphs 1-96 above as if

16  fully set forth herein.

17         98.     In or about January 22-March, 2015, Dan, Justice, and Horbaczewski

18  agreed to be partners and co-founders of the DRL and work together to build the

19  drone racing business of the DRL.  To facilitate the development of their proposed

20  drone racing business, Horbaczewski and the DRL requested, by words and conduct,

21  that Justice and Dan perform services for the benefit of Horbaczewski and the DRL.

22         99.     The Plaintiffs performed the services requested by Horbaczewski and

23  the DRL.  For example, Plaintiffs: shared their ideas and plans to develop a televised

24  competitive drone racing league; outlined the existing market landscape,

25  technologies, and challenges of drone racing; provided narrative cinematographic

26  techniques to increase the production quality and value of a competitive drone race;

27  introduced the idea of a network-connected drone simulator to assist in marketing

28  the DRL; provided input for drone specifications and race course features; filmed

1  promotional footage for the DRL; assisted in arranging for opportunities to

2  showcase the DRL at technology related events; provided branding and marketing

3  assistance for the DRL; provided assistance to overcome technical challenges;

4  assisted in finding venues to hold drone races; and provided ideas for interactive

5  content experiences for spectators.  These services benefitted both Horbaczewski

6  and the DRL.

7       100.   Horbaczewski and the DRL promised to compensate the Plaintiffs for

8  their contributions by providing each of them with ownership of 1/3 of the company,

9  the reasonable value of which is to be determined at trial.

10      101.   On or about August 25, 2015, Horbaczewski and the DRL failed to

11  provide the agreed compensation to the Plaintiffs by accepting investment from

12  outside investors without recognizing that Dan and Justice each owned 1/3 of the

13  DRL.  Horbaczewski and the DRL have not compensated the Plaintiffs for the

14  services they provided.

15

16                      **FIFTH CLAIM FOR RELIEF**

17                    **(Fraud Against Horbaczewski)**

18      102.   Plaintiffs hereby incorporate by reference Paragraphs 1-101 above as if

19  fully set forth herein.

20      103.   Horbaczewski made representations of material fact.  Specifically, at a

21  meeting with Plaintiffs on or about January 22, 2015, in the written Business Plan

22  they co-wrote in February-March 2015, and at another meeting with Plaintiffs on or

23  about March 11-12, 2015, Horbaczewski represented that he and Plaintiffs would be

24  co-founders of and equal partners in the DRL.  He represented that Plaintiffs would

25  each get a 1/3 ownership stake in the company if they provided ideas and services as

26  described above, and if they agreed to make him a co-founder and CEO of the DRL.

27      104.   These representations were in fact false.  The truth was that

28  Horbaczewski intended to steal Plaintiffs' ideas and the entire DRL for himself.

105. When Horbaczewski made these false representations, he knew they were false.

106. Horbaczewski also concealed materials facts. Specifically, on the aforementioned dates in January-March 2015, he concealed his intent to steal Plaintiffs' ideas and the DRL, and he then concealed his incorporation of the DRL in April 2015 without providing any shares to Plaintiffs.

107. Horbaczewski concealed facts that he had a duty to disclose, and by repeatedly telling Plaintiffs that he could not document their ownership stake in the DRL until it was formed, he misled them and prevented them from discovering the concealed facts.

108. Horbaczewski also made promises about material matters without any intention of performing them. Specifically, he promised each of Plaintiffs a 1/3 share of ownership in the DRL if they provided their ideas and services as described above, and if they agreed to make Horbaczewski a co-founder and CEO of the DRL.

109. Horbaczewski made these false representations, concealed these facts, and made these promises without any intention of performance and with the intent to defraud Plaintiffs and induce them to act as described above. At the time Plaintiffs acted, they were unaware that Horbaczewski's representations were false and unaware of the concealed facts and Horbaczewski's intention not to perform his promises. Plaintiffs acted in justifiable reliance on Horbaczewski's conduct.

110. In justifiable reliance on Horbaczewski's conduct, Plaintiffs were induced to share their ideas for the DRL with Horbaczewski, reject a lucrative offer to develop a drone racing league TV show that was originated prior to Horbaczewski's involvement and assign their rights to the DRL instead, and provide substantial services to Horbaczewski to get the DRL started.

111. As a result of Plaintiffs' reliance on Horbaczewski's conduct, Plaintiffs were damaged in that they received no ownership stake or share in the DRL nor any compensation whatsoever from Horbaczewski, and they rejected a written offer to

develop a drone racing league TV show that would have generated substantial income.

112.   Horbaczewski's aforementioned acts were undertaken with malice, oppression, and fraud; therefore, Plaintiffs are entitled to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duties Against Horbaczewski)

113.   Plaintiffs hereby incorporate by reference Paragraphs 1-112 above as if fully set forth herein.

114.   Horbaczewski was partners with Justice and Dan in the DRL and owed fiduciary duties of good faith and undivided loyalty to Plaintiffs.

115.   Horbaczewski breached his fiduciary duties to Plaintiffs by acting against their interests in not providing them with any ownership stake or shares in the DRL, and by stealing Plaintiffs' ideas and the entire DRL for himself.

116.   Justice and Dan were harmed and Horbaczewski's conduct was a substantial factor in causing Plaintiffs' harm.

117.   Horbaczewski's aforementioned conduct was undertaken with malice, oppression, and fraud; therefore, Plaintiffs are entitled to an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage Against Horbaczewski)

118.   Plaintiffs hereby incorporate by reference Paragraphs 1-117 above as if fully set forth herein.

119.   Justice and Dan were in an economic relationship with Blank Paige Productions that probably would have resulted in an economic benefit to Plaintiffs.

120.   Horbaczewski knew of the relationship.

121.   Horbaczewski engaged in fraud as detailed above, by which he

intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

122.   The relationship between Dan, Justice, and Blank Paige Productions was disrupted, and Plaintiffs were harmed as a result.

123.   Horbaczewski's conduct was a substantial factor in causing Plaintiffs' harm.

124.   Horbaczewski's aforementioned conduct was undertaken with malice, oppression, and fraud; therefore, Plaintiffs are entitled to an award of punitive damages.

## EIGHTH CLAIM FOR RELIEF

### (Promissory Estoppel Against Horbaczewski)

125.   Plaintiffs hereby incorporate by reference Paragraphs 1-124 above as if fully set forth herein.

126.   On or about March 11-12, 2015, Horbaczewski orally promised that Dan and Justice would each own 1/3 of the DRL if Dan and Justice would be co-founders and work together with him to advance the drone racing venture that Dan and Justice presented to him.  This promise was clear and unambiguous in its terms.

127.   Dan and Justice worked together with Horbaczewski as co-founders to advance the business of the DRL as requested by Horbaczewski, but Horbaczewski reneged on his promise that Dan and Justice would be 1/3 owners of the DRL.  On or about August 25, 2015, Horbaczewski breached his promise by accepting investment from outside investors without recognizing that Dan and Justice each owned 1/3 of the DRL.

128.   Dan and Justice relied on Horbaczewski's promise by contributing their ideas and working together as co-founders to further the business of the DRL, for example: sharing their ideas and plans to develop a televised competitive drone racing league; outlining the existing market landscape, technologies, and challenges of drone racing; providing narrative cinematographic techniques to increase the

production quality and value of a competitive drone race; introducing the idea of a network-connected drone simulator to assist in marketing the DRL; providing input for drone specifications and race course features; filming promotional footage for the DRL; assisting in arranging for opportunities to showcase the DRL at technology related events; providing branding and marketing assistance for the DRL; providing assistance to overcome technical challenges; assisting in finding venues to hold drone races; and providing ideas for interactive content experiences for spectators.

129.   Dan and Justice's reliance on Horbaczewski's promise was reasonable and foreseeable.  Dan and Justice had already conceived of and refined the idea of a televised drone racing league and subsequently presented the idea to Horbaczewski as a potential investor and partner.  Dan and Justice undertook significant efforts as co-founders of the DRL by providing services to support the development of the DRL into a viable business over the course of many months.  Under these circumstances any reasonable person would have contemplated that Dan and Justice would expect to receive the 1/3 ownership interest in the DRL that they were each promised and that their significant contributions could not be perceived as a gift provided to Horbaczewski to facilitate Horbaczewski excluding them from the drone racing league venture that they originated and presented to him without any compensation.

130.   Dan and Justice relied on Horbaczewski's promise to their detriment.  Dan and Justice acted as co-founders and provided services to advance the business of the DRL (described above) but were swindled out of the 1/3 ownership interest in the DRL that they were promised by Horbaczewski in exchange for their contributions.  Dan and Justice also declined an opportunity to develop their drone racing league venture with Blank Paige Productions based on Horbaczewski's promise that they would be 1/3 owners of the DRL.  This caused Dan and Justice further harm by preventing them from pursuing a lucrative opportunity that was

likely to be commercially successful given its substantial similarity to the DRL.

131.   Enforcing Horbaczewski's promise is necessary to avoid injustice. Otherwise, Horbaczewski would be unjustly enriched at Dan and Justice's expense by being permitted to retain the 2/3 equity interest in the DRL that he usurped from them by failing to honor his promise.  Without enforcement of Horbaczewski's promise, the significant contributions to the development of the DRL made by co-founders Dan and Justice would unfairly accrue to Horbaczewski without any compensation to Dan and Justice for their invaluable contributions to the development and success of the DRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.   Judgment in favor of Plaintiffs and against Defendants;

b.   Injunctive relief, including, but not limited to, an order compelling specific performance by Defendants;

c.   Compensatory damages according to proof;

d.   A constructive trust that Dan and Justice each own 1/3 of the DRL;

e.   Punitive damages in an amount sufficient to punish Defendants and deter similar conduct;

f.   Pre- and post-judgment interest;

g.   Costs of suit; and

h.   Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

1

DATED:  July 19, 2018

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

2

3

4

By: _____/s/ Stephen C. Steinberg_____

5

STEPHEN C. STEINBERG

6

Attorneys for Plaintiffs
JUSTICE LAUB and DAN KANES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30    Case No. LA CV 2:17-06210 JAK (KSx)
THIRD AMENDED COMPLAINT