PATRICK M. RYAN (SBN 203215)
 *pryan@bzbm.com*
STEPHEN C. STEINBERG (SBN 230656)
 *ssteinberg@bzbm.com*
JOSEPH J. FRARESSO (SBN 289228)
 *jfraresso@bzbm.com*
GABRIELLA A. WILKINS (SBN 306173)
 *gwilkins@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:  (415) 956-1900
Facsimile:   (415) 956-1152

Attorneys for Plaintiffs
JUSTICE LAUB and DAN KANES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUSTICE LAUB and DAN KANES,<br><br>                 Plaintiffs,<br><br>        v.<br><br>NICHOLAS HORBACZEWSKI, DRONE RACING LEAGUE, INC., and DOES 1 TO 10,<br><br>                 Defendants.<br><br>_____<br><br>NICHOLAS HORBACZEWSKI,<br><br>                 Counter-Claimant,<br><br>        v.<br><br>DANIEL KANES,<br><br>                 Counter-Defendant | Case No. 2:17-cv-06210-JAK (KSx)<br><br>**PLAINTIFF DANIEL KANES' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT NICHOLAS HORBACZEWSKI'S COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Judge:   Hon. John A. Kronstadt<br>Date:    April 29, 2019<br>Time:    8:30 a.m.<br>Ctrm.:   10B<br><br>Action File:   July 10, 2017<br>Trial Date:     None Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to the Court's Order Re Stipulation Re Case Schedule (Dkt. No. 101), on April 29, 2019 at 8:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, located at 350 W. First Street, Courtroom 10B, Los Angeles, California 90012, before the Honorable John A. Kronstadt, Plaintiff Dan Kanes will move, and hereby does move, for an order specially striking Defendant Nicholas Horbaczewski's Counterclaim pursuant to California Code of Civil Procedure § 425.16.

Plaintiff Dan Kanes moves to specially strike Defendant Nicholas Horbaczewski's Counterclaim on the grounds that it arises from an act in furtherance of Mr. Kanes' right of free speech and that Mr. Horbaczewski cannot demonstrate a probability of prevailing on his Counterclaim for defamation.

This motion is based on this Notice of Motion and Motion, the supporting memorandum of points and authorities, the pleadings on file in this action, and on such other written or oral argument or evidence as may be presented on reply and at or before the time this motion is taken under submission.

DATED:  January 18, 2019          Respectfully submitted,

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation


By:  _____/s/ Patrick M. Ryan_____
     Patrick M. Ryan
     Attorneys for Plaintiffs
     JUSTICE LAUB and DAN KANES

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND .................................. 2

III. LEGAL STANDARD ......................................................................... 5

IV. ARGUMENT ................................................................................... 7

    A. Prong One: Kanes' Allegedly Defamatory Conduct is Protected by California's Anti-SLAPP Statute .......................................... 8

        1. Wikipedia Is a Public Forum .............................................. 8

        2. DRL Is an Issue of Public Interest ...................................... 9

        3. The Gravamen of Horbaczewski's Counterclaim is the Instant Suit .................................................................... 12

    B. Prong Two: Horbaczewski Cannot Demonstrate a Likelihood of Succeeding on His Defamation Counterclaim ...................... 14

        1. Kanes' Edits to the DRL Wikipedia Entry Were Not Defamatory ...................................................................... 14

            a. The Edited Wikipedia Text was not Defamatory ............. 14

            b. The Law.com Article Was Not Defamatory ................... 17

        2. Kanes Is Immune From Liability for Linking the Law.com Article ............................................................................ 19

        3. Horbaczewski Is a Limited Purpose Public Figure Who Cannot Prove Kanes' Edits to the Wikipedia Entry Were Made With Actual Malice as Required to Establish a Claim for Defamation ................................................... 21

    C. Kanes Is Statutorily Entitled to His Attorneys' Fees and Costs .......... 25

V. CONCLUSION ............................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Ampex Corp. v. Cargle*
   128 Cal.App.4th 1569 (Cal. Ct. App. 2005)....................................................... 9, 12

6
*Annette F. v. Sharon S.*
7
   119 Cal.App.4th 1146 (Cal. Ct. App. 2004)........................................................ 22

8
*Barnes-Hind, Inc. v. Sup. Ct.*
9
   181 Cal.App.3d 377 (Cal. Ct. App. 1986)...................................................... 15, 17

10
*Barrett v. Rosenthal*
11
   40 Cal.4th 33 (Cal. 2006) .............................................................8, 19, 20

12
*Beilenson v. Sup. Ct.*
13
   44 Cal.App.4th 944 (Cal. Ct. App. 1996).......................................................... 6

14
*Briggs v. Eden Council for Hope & Opportunity*
15
   19 Cal.4th 1106 (Cal. 1999) ..................................................................... 5

16
*Chapman v. Journal Concepts, Inc.*
   528 F.Supp.2d 1081 (D. Haw. 2007) ............................................................ 23

17
*Church of Scientology v. Wollersheim*
18
   42 Cal.App.4th 628 (Cal. Ct. App. 1996)........................................................ 10

19
*ComputerXpress, Inc. v. Jackson*
20
   93 Cal.App.4th 993 (Cal. Ct. App. 2001)...................................................... 8, 11

21
*Curtis Publishing Co. v. Butts*
22
   388 U.S. 130 (1967) ........................................................................... 22

23
*Damon v. Ocean Hills Journalism Club*
24
   85 Cal.App.4th 468 (Cal. Ct. App. 2000)......................................................... 8

25
*Erie Railroad Co. v. Tompkins*
   304 U.S. 64 (1938) ............................................................................ 6

26

27
*Friedman v. DirecTV*
   262 F.Supp.3d 1000 (C.D. Cal. 2015)........................................................... 10

28

*Gertz v. Robert Welch, Inc.*
   418 U.S. 323 (1974) ......................................................................... 21, 22

*Global Telemedia Int'l, Inc. v. Doe*
   132 F.Supp.2d 1261 (C.D. Cal. 2001)........................................*passim*

*Harte-Hanks Commun., Inc. v. Connaughton*
   491 U.S. 657 (1989) .............................................................................. 21

*Hecimovich v. Encinal Sch. Parent Teacher Org.*
   203 Cal.App.4th 450 (Cal. Ct. App. 2012)............................................ 9

*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*
   247 Cal.App.4th 87 (Cal. Ct. App. 2016)....................................*passim*

*Jacob B. v. County of Shasta*
   40 Cal.4th 948 (Cal. 2007) ................................................................. 18

*Kashian v. Harriman*
   98 Cal.App.4th 892 (Cal. Ct. App. 2002).......................................... 7, 13

*U.S. ex rel Klein v. Omeros Corp.*
   897 F.Supp.2d 1058 (W.D. Wa. 2012)................................................ 20

*Knievel v. ESPN*
   393 F.3d 1068 (9th Cir. 2005) ...................................................... 14, 18

*Kronemyer v. Internet Movie Database, Inc.*
   150 Cal.App.4th 941 (Cal. Ct. App. 2007)........................................ 8, 9

*Lin v. Rohm and Haas Co.*
   293 F.Supp.2d 505 (E.D. Pa. 2003)................................................ 15, 16

*MacLeod v. Tribune Pub. Co.*
   52 Cal.2d 536 (Cal. 1959) ...................................................... 15, 17, 18

*McGarry v. Univ. of San Diego*
   154 Cal.App.4th 97 (Cal. Ct. App. 2007).......................................17, 23

*Navellier v. Sletten*
   29 Cal.4th 82 (Cal. 2002) ............................................................... 7, 13

*New York Times Co. v. Sullivan*
   376 U.S. 254 (1964) ......................................................................21, 24

*New.Net, Inc. v. Lavasoft*
    356 F.Supp.2d 1090 (C.D. Cal. 2004) ................................................................ 8

*Newsham v. Lockheed Missiles & Space Co.*
    190 F.3d 963 (9th Cir. 1999) ............................................................................ 6

*Norse v. Henry Holt and Co.*
    991 F.2d 563 (9th Cir. 1993) ................................................................ 14, 15, 18

*Nygard, Inc. v. Uusi-Kertula*
    159 Cal.App.4th 1027 (Cal. Ct. App. 2008) ...................................................... 9

*Oasis West Realty, LLC v. Goldman*
    51 Cal.4th 811 (Cal. 2011) ............................................................................... 7

*Okorie v. Los Angeles Unified School District*
    14 Cal.App.5th 574 (Cal. Ct. App. 2017) ........................................ 6, 7, 12, 13

*In re Philadelphia Newspapers, LLC*
    690 F.3d 161 (3rd Cir. 2012) .......................................................................... 20

*Ramona Unified School Dist. v. Tsiknas*
    135 Cal.App.4th 510 (Cal. Ct. App. 2005) ...................................................... 13

*Reader's Digest Assoc., Inc. v. Sup. Ct. of Marin County*
    37 Cal.3d 244 (Cal. 1984) .................................................................. 21, 22, 24, 25

*Robles v. Chalilpoyil*
    181 Cal.App.4th 566 (Cal. Ct. App. 2010) ....................................................... 5

*Rudnick v. McMillan*
    25 Cal.App.4th 1183 (Cal. Ct. App. 1994) ...................................................... 22

*Rusheen v. Cohen*
    37 Cal.4th 1048 (Cal. 2006) ......................................................................... 7, 18

*S.B. Beach Properties v. Berti*
    39 Cal.4th 374 (2006) .................................................................................. 7, 25

*Salyer v. Southern Poverty Law Center, Inc.*
    701 F.Supp.2d 912 (W.D. Ky. 2009) ............................................................... 21

*Shively v. Bozanich*
    31 Cal.4th 1230 (Cal. 2003) ........................................................................... 20

*Silvester v. ABC, Inc.*
  650 F.Supp. 766 (S.D. Fla. 1986) ........................................................................ 23

*St. Amant v. Thompson*
  390 U.S. 727 (1968) .............................................................................................. 24

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*
  Case No. 02-CV-2258, 2007 WL 935703 (S.D. Cal., Mar. 7, 2007).................... 20

*Troy Group v. Tilson*
  364 F.Supp.2d 1149 (C.D. Cal. 2005)....................................................... 11, 12, 18

*Vess v. Ciba-Geigy Corp USA*
  317 F.3d 1097 (9th Cir. 2003) .......................................................................... 7, 25

**Statutes**

47 United States Code
  § 230(a)(2) ............................................................................................................ 19
  § 230(b)(3) ............................................................................................................ 19
  § 230(c)(1) ...................................................................................................... 19, 20
  § 230(e)(3) ............................................................................................................ 19

California Civil Code
  § 45 ........................................................................................................ 14, 15, 20
  § 47(b) ................................................................................................................... 18

California Code of Civil Procedure
  § 425.16 .........................................................................................................*passim*
  § 425.16(a).................................................................................................... 6, 7, 14
  § 425.16(b)(1)........................................................................................................ 6
  § 425.16(c)................................................................................................... 7, 25
  § 425.16(e)............................................................................................................. 8

# I.    INTRODUCTION

The Court should strike Defendant Nicholas Horbaczewski's ("Horbaczewski") Counterclaim against Plaintiff Dan Kanes ("Kanes") pursuant to California's anti-SLAPP statute and award Kanes his attorneys' fees and costs in connection with this motion.

Kanes satisfies the first prong of the anti-SLAPP analysis that the allegedly defamatory statements relate to protected activity. Kanes' edits to the Wikipedia page for Defendant Drone Racing League ("DRL") are protected activity and relate to the allegations made in this litigation concerning the founding of the DRL. Wikipedia constitutes a public forum and Kanes' edits relate to an issue of public interest: the DRL, which is a popular sports league that undertakes extensive efforts to promote itself and is broadcast on major television networks, including ESPN. Horbaczewski is the CEO and one of the founders of the DRL, who has argued before this Court that statements relating to the DRL relate to him.

Because Kanes satisfies prong one of the anti-SLAPP analysis, the burden shifts to Horbaczewski in prong two to establish that his Counterclaim is likely to succeed on the merits. Horbaczewski cannot satisfy prong two because his Counterclaim is meritless and fails for multiple reasons.  First, none of the statements Kanes made in the edited Wikipedia entry are reasonably subject to a defamatory meaning as a matter of law. Second, Kanes cannot be held liable for the third-party law.com article linked in the Wikipedia page pursuant to Federal statute immunizing such conduct. Third, Horbaczewski is a public figure who cannot establish that Kanes' edits to the Wikipedia Entry were made with actual malice, even if these statements are reasonably subject to a defamatory meaning.

Because the conduct Horbaczewski complains about is protected under the anti-SLAPP statute, and because Horbaczewski cannot demonstrate a likelihood of prevailing on his Counterclaim, the Court should strike the Counterclaim in its entirety, and award Kanes his attorneys' fees and costs accordingly.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The instant case was originally filed nearly eighteen months ago in the Superior Court of California before being removed to this Court. Dkt. No. 1 at ¶ 1. On July 19, 2018, plaintiffs Justice Laub ("Laub") and Kanes (collectively, "Plaintiffs") filed the operative pleading, the Third Amended Complaint ("TAC") against defendants the DRL and Horbaczewski (collectively, "Defendants"). Dkt. No. 62. In relevant part, Plaintiffs allege in their TAC that they had "conceived of and began developing ideas for a televised drone racing league in 2014, long before Horbaczewski had ever even flown a drone or knew anything about them." Dkt. No. 62 at ¶ 2. Plaintiffs further allege that Horbaczewski, through various false promises to Plaintiffs, had induced them to disclose their ideas for and assign their rights to what would ultimately be incorporated as the DRL, and excluded them from sharing in any ownership stake in the DRL. Dkt. No. 62, ¶¶ 3, 16-53. Instead, Horbaczewski portrays himself as the sole founder of the DRL in media profiles, press releases, and interviews about or concerning the DRL. Dkt. No. 62, ¶ 4; *see also* Dkt. No. 106-6 (Business Insider article); Dkt. No. 106-7 at 17 (Crain article); Dkt. No. 106-8 at 3 (Techcrunch article); Dkt. No. 106-9 at 3 (Wall Street Journal article).

The DRL promotes its brand and its drone racing events around the world. Dkt. No. 90 (Counterclaim), ¶ 1. According to the DRL, it is "a private company and the premier drone racing league with events broadcast worldwide. A sports and media company, DRL combines world-class pilots, iconic locations, and proprietary technology to create engaging drone racing content with mass appeal." Dkt. No. 90, ¶ 1. The DRL's drone races have been broadcast by mainstream sports media companies, including ESPN, Sky Sports, and ProSiebenSat.1. Dkt. No. 106-5 (DRL Wikipedia page) at 3; *see also* Fraresso Decl.[1], Ex. A (Digiday article)

---

[1] "Fraresso Decl." refers to the Declaration of Joseph J. Fraresso In Support of

("Horbaczewski said that in 2017, 55 million people worldwide watched the inaugural DRL World Championship Season on TV while 100 million watched online, numbers he expects to increase in 2018."). Further, the DRL's investors include large media and sports companies with significant broadcast audiences, such as MGM Television, WWE, Sky, and Liberty Media. Dkt. No. 106-5 at 2-3; *see also* Dkt. No. 90, ¶ 40 ("DRL announced that it had completed a round of funding in which it received $20 million in private placement led by a number of significant telecommunications and media companies."). As of 2018, the DRL had millions of shares spread amongst its investors including, individuals, venture capital funds, and broadcast media corporations. Fraresso Decl., Ex. B. The DRL counts as its "Partners & Sponsors" companies such as Cox Media, Disney XD, and Fox Sports. Fraresso Decl., Ex. C (DRL webpage). The DRL relies on a mix of traditional press releases, media appearances, and social media presence to promote itself and its races. For example, the DRL boasts over 34,000 followers on Twitter[2]; over 1.4 million followers on Facebook[3]; over 130,000 followers on Instagram[4]; and nearly 100,000 subscribers on its dedicated YouTube channel[5]. The DRL, via its "Press" page, provides links to over 100 articles and videos from publications such as CNN, the New York Times, ABC News, Reuters, Forbes, and Wired. Fraresso Decl., Ex. H (https://thedroneracingleague.com/press/).

On November 19, 2018, Horbaczewski filed a Counterclaim against Kanes

---

Plaintiff Daniel Kanes' Special Motion to Strike Defendant Nicholas Horbaczewski's Counterclaim Pursuant to California Code of Civil Procedure § 425.16, filed concurrently herewith.

[2] Fraresso Decl., Ex. D (https://twitter.com/droneraceleague).

[3] Fraresso Decl., Ex. E (https://www.facebook.com/thedroneracingleague/).

[4] Fraresso Decl., Ex. F (https://www.instagram.com/thedroneracingleague/).

[5] Fraresso Decl., Ex. G (https://www.youtube.com/thedroneracingleague).

1  for defamation *per se* based on allegations that Kanes had edited a Wikipedia[6] entry

2  for the DRL (the "Wikipedia Entry"). Kanes edited the Wikipedia Entry to include

3  Kanes and Laub as the DRL's founders alongside Horbaczewski, and added a

4  hyperlink to a law.com article written by Scott Graham about this litigation in a

5  footnote. *See* Dkt. No. 90, ¶ 47; Dkt. No. 90-1 at 2-3[7]; Dkt. No. 90-2 (Law.com

6  article). Kanes does not dispute having edited the Wikipedia Entry, but does dispute

7  that such edits could reasonably be found to be defamatory in any way. *See* Dkt.

8  No. 99 (Kanes' Motion to Dismiss Counterclaim) at 10-19; Dkt. No. 106-3

9  (Plaintiffs' Responses to Defendants' First Set of Interrogatories) at 13. Neither

10  Laub nor Kanes authored or published the footnoted law.com article, and

11  Horbaczewski does not allege otherwise. Dkt. No. 90-2; Dkt. No. 99. According to

12  Horbaczewski, "the [DRL] Wikipedia entry received over 12,000 page views" over

13  a particular seven-month period. Dkt. No. 90, ¶ 53.

14        Horbaczewski further alleges that:

15        55.    [. . .] Mr. Kanes edited the Wikipedia entry for the Drone Racing
           League as described above, to state that he and Mr. Laub were cofounders of
16         DRL, that Mr. Kanes "wrote and created the original concept" for DRL, and
           that "Horbaczewski first heard of the concept of Drone Racing League from
17         Dan Kanes, who had written a detailed pitch deck for the league." [. . .]

18        56.    These statements were false, and Mr. Kanes knew or reasonably
19         should have known that the statements were false. Mr. Kanes deliberately
           linked these statements via a footnote to an article on law.com about this
20         lawsuit which, as described above and in Exhibit B includes Plaintiffs'

21  _____

22  [6] Wikipedia is a self-described "… web-based, free encyclopedia based on a model

23  of openly editable and viewable content… Overall, Wikipedia comprises more than
    40 million articles in 301 different languages and by February 2014 it had reached

24  18 billion page views and nearly 500 million unique visitors per month." *See* Dkt.
    No. 106-4 at 2 (Wikipedia's wiki page). Wikipedia's "open-door policy of allowing

25  anyone to edit had made Wikipedia the biggest and possibly the best encyclopedia

26  in the world." *Id*. Indeed, Horbaczewski characterizes Wikipedia as "the internet's
    encyclopedia." Dkt. No. 106 (Horbaczewski's Opposition to Kanes' Motion to

27  Dismiss Counterclaim) at 5:10-11.

28  [7] Page citations to docket entries will use the file-stamped page numbering.

accusations that Mr. Horbaczewski was "secretly cutting them out of the company," "intended to steal plaintiffs' ideas and the entire DRL for himself," and engaged in "a cynical plot to steal their ideas for a televised drone racing league, claim all the credit for himself, and cheat them out of their rightful ownership of two-thirds of the Drone Racing League."

Dkt. No. 90, ¶¶ 55-56.

Further, Horbaczewski takes the position that statements involving the DRL "can reasonably be viewed as concerning him" because Horbaczewski is the DRL's CEO and founder. Dkt. No. 106 (Horbaczewski's Opposition to Kanes' Motion to Dismiss Counterclaim) at 18:15-18.

On November 27, 2018, defendants the DRL and Horbaczewski deposed Kanes, and questioned him about editing the Wikipedia Entry. Fraresso Decl., Ex. I (Nov. 27, 2018 Kanes Dep. Tr. excerpts).

Kanes' counsel attempted in good faith to meet and confer with Horbaczewski's counsel concerning the Counterclaim's violation of the anti-SLAPP statute. The meet-and-confer efforts were unsuccessful and Kanes was forced to file this motion. Fraresso Decl., ¶ 11; Ex. J.

## III.   LEGAL STANDARD

The California Legislature enacted Code of Civil Procedure section 425.16—the "anti-SLAPP" statute—to combat "a disturbing increase" in Strategic Lawsuits Against Public Participation ("SLAPPs"). *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1109 n.1 (Cal. 1999). "A SLAPP is a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Robles v. Chalilpoyil*, 181 Cal.App.4th 566, 572 (Cal. Ct. App. 2010).

Section 425.16 allows a SLAPP defendant "to dismiss a lawsuit if the alleged bad acts arose from his or her exercise of free speech 'in connection with a public issue' and if the [SLAPP] plaintiff cannot show a probability of success on the claims." *Global Telemedia Int'l, Inc. v. Doe*, 132 F.Supp.2d 1261, 1265 (C.D. Cal. 2001) (finding disputed speech was issue of public interest and granting motion).

1   The Legislature dictated that "this section shall be construed broadly." Cal. Code of
2   Civ. Proc. § 425.16(a).

3        The Ninth Circuit recognizes that the anti-SLAPP statute constitutes
4   substantive law under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64
5   (1938); thus, the statute applies to all cases arising under California law that are
6   litigated in federal court. *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d
7   963, 972-973 (9th Cir. 1999).

8        The anti-SLAPP statute invokes a two-step analysis. First, the SLAPP
9   defendant must establish that the complained-of conduct arises from an act in
10  furtherance of the SLAPP defendant's rights of petition or free speech in connection
11  with a public issue; this is the first prong of the test. *Id.*; Cal. Code of Civ. Proc.
12  § 425.16(b)(1). This requirement is satisfied if the suit "potentially impairs the right
13  of free speech." *Beilenson v. Sup. Ct.*, 44 Cal.App.4th 944, 950 (Cal. Ct. App.
14  1996). In determining whether the anti-SLAPP statute applies, the Court determines
15  whether the principal thrust or gravamen of the plaintiff's cause of action is based
16  on protected activity. *Okorie v. Los Angeles Unified School District*, 14 Cal.App.5th
17  574, 591 (Cal. Ct. App. 2017) (internal quotations omitted). Second, if the defendant
18  demonstrates that the SLAPP plaintiff's claim arises from protected activity, the
19  burden shifts to the SLAPP plaintiff to demonstrate the probability of succeeding on
20  the merits of the claim. *Newsham*, 190 F.3d at 971; Cal. Code of Civ. Proc.
21  § 425.16(b)(1).

22       As to the first prong of the test, the anti-SLAPP statute protects any "act in
23  furtherance of a person's right of petition or free speech under the United States or
24  California Constitution in connection with public issue" which includes "any written
25  or oral statement or writing made in a place open to the public or a public forum in
26  connection with an issue of public interest." *Okorie*, 14 Cal.App.5th at 591.  In
27  determining whether a statement or writing is "in connection with an issue of public
28  interest," courts have considered factors such as whether a party has made itself a

matter of public interest by means of numerous press releases. *Global Telemedia*, 132 F.Supp.2d at 1265. Whether something is an issue of public interest must be construed broadly. Cal. Code of Civ. Proc. § 425.16(a).

The second prong of the anti-SLAPP analysis, in which the burden of proof shifts to the SLAPP plaintiff, has been described as a "summary-judgment-like" procedure, where a court must determine whether the SLAPP plaintiff's "complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (Cal. 2006) (citations omitted); *see Okorie*, 14 Cal.App.5th at 590. At this stage, the Court does not weigh evidence or resolve conflicting factual claims, but accepts the plaintiff's evidence as true, evaluating the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 819-820 (Cal. 2011) (citations omitted). Courts consider only admissible evidence. *Kashian v. Harriman*, 98 Cal.App.4th 892, 906 (Cal. Ct. App. 2002).

A claim that satisfies both prongs of the anti-SLAPP analysis—"i.e., that arises from protected speech or petitioning *and* lacks even minimal merit"—will be stricken under the statute. *Okorie*, 14 Cal.App.5th at 591 (quoting *Navellier v. Sletten*, 29 Cal.4th 82, 89 (Cal. 2002)) (emphasis in original).

The anti-SLAPP statute dictates that "a defendant who is the 'prevailing [party] on' such a motion is 'entitled to recover his attorney's fees and costs.'" *S.B. Beach Properties v. Berti*, 39 Cal.4th 374, 377 (2006) (quoting Cal. Code of Civ. Proc. § 425.16(c)); *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1110-1111 (9th Cir. 2003) (affirming district court's award of attorneys' fees to prevailing SLAPP defendants, and awarding costs on appeal accordingly).

## IV.   ARGUMENT

Kanes' alleged misconduct involved a public forum (Wikipedia) and concerned a matter of public interest (the DRL and its founding), and is therefore

protected under California's anti-SLAPP statute. Horbaczewski's Counterclaim fails for three separate reasons: (1) Kanes' edits to the Wikipedia page in question, with or without the law.com article, are not reasonably subject to a defamatory meaning as a matter of law; (2) Kanes is immune from liability for linking to the law.com article pursuant to Federal statute and cannot be held liable for its contents; and (3) Horbaczewski is a limited purpose public figure who cannot demonstrate by clear and convincing evidence that Kanes' edits were made with actual malice. Accordingly, the Counterclaim must be stricken pursuant to section 425.16 and Kanes should be awarded his attorneys' fees and costs in bringing this motion.

## A. Prong One: Kanes' Allegedly Defamatory Conduct is Protected by California's Anti-SLAPP Statute

To be protected under the anti-SLAPP statute, a defendant must demonstrate that (1) the allegedly wrongful statements occurred in a public forum, and (2) that the statements concerned public interest. Cal. Code of Civ. Proc. § 425.16(e).

### 1. Wikipedia Is a Public Forum

A public forum "includes a communication vehicle that is widely distributed to the public and contains topics of public interest, regardless whether the message is 'uninhibited' or 'controlled.'" *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 478 (Cal. Ct. App. 2000) (homeowner's association newsletter deemed a public forum for purposes of anti-SLAPP statute). Under its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication." *Id*. at 476. For this reason, "websites accessible to the public are 'public forums' for purposes of the anti-SLAPP statute." *Kronemyer v. Internet Movie Database, Inc.*, 150 Cal.App.4th 941, 950 (Cal. Ct. App. 2007) (*citing Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n.4 (Cal. 2006)); *accord ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1006-1007 (Cal. Ct. App. 2001) (publicly accessible website qualified as a public forum); *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1107-1108 (C.D. Cal. 2004) ("[C]ourts have

uniformly held or, deeming the proposition obvious, simply assumed that internet venues to which members of the public have relatively easy access constitute a 'public forum' or a place 'open to the public' within the meaning of section 425.16."); *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (Cal. Ct. App. 2005)(internet message boards were public forums).

As a website "accessible to the public," Wikipedia constitutes a public forum for purposes of section 425.16. *See, e.g., Kronemyer*, 150 Cal.App.4th at 950. Wikipedia is known widely for allowing the type of public participation (*i.e.*, contributing to the millions of articles found on the site) contemplated by section 425.16. Indeed, "Wikipedia comprises more than 40 million articles in 301 different languages and by February 2014 it had reached 18 billion page views and nearly 500 million unique visitors per month." Dkt. No. 106-4 at 2 (Wikipedia's wiki page). Wikipedia's "open-door policy of allowing anyone to edit had made Wikipedia the biggest and possibly the best encyclopedia in the world." *Id*. Accordingly, Kanes' edits to the Wikipedia Entry were made on a public forum.

## 2.  DRL Is an Issue of Public Interest

"Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal.App.4th 450, 464 (Cal. Ct. App. 2012). "*[A]ny issue in which the public is interested*" qualifies—"the issue need not be 'significant'… it is enough that it is one in which the public takes interest." *Nygard, Inc. v. Uusi-Kertula*, 159 Cal.App.4th 1027, 1042 (Cal. Ct. App. 2008) (emphasis in original).

The court must consider various factors, such as the conduct of the parties and the content of the speech at issue, to determine whether something is "in connection with a public issue." *See, e.g.*, *Global Telemedia*, 132 F.Supp.2d at 1265-1266 (considering size and media presence of plaintiff company in finding that defendants' Internet postings were "in connection with a public issue"). Whether a party has "inserted itself into the public arena and made itself a matter of public

1   interest" is informed by whether such party has promoted itself through "numerous

2   press releases." *Id*. (finding that company with the potential to impact market sectors

3   was of public interest, "particularly so when the company voluntarily trumpets its

4   good news through the media in order to gain the attention of current and

5   prospective investors."). Other examples of matters of public interest "are product

6   liability suits, real estate or investment scams, etc." *Church of Scientology v.*

7   *Wollersheim*, 42 Cal.App.4th 628, 650-651 (Cal. Ct. App. 1996) (finding that

8   plaintiff organization was a matter of public interest, "as evidenced by media

9   coverage and the extent of the [organization's] membership and assets."). Matters of

10  public interest may include "activities that involve private persons and entities,

11  especially when a large powerful organization may impact the lives of many

12  individuals." *Wollersheim*, 42 Cal.App.4th at 650.

13       The public interest requirement extends as a matter of law to speech

14  concerning the creation and promotion of new sports leagues and related ventures.

15  In *Friedman v. DirecTV*, 262 F.Supp.3d 1000 (C.D. Cal. 2015), the court granted

16  the defendant's anti-SLAPP motion finding that the plaintiff's suit, which alleged

17  that the defendant improperly used "plaintiffs' ideas" in the creation of a television

18  channel focused on fantasy sports constituted "an issue of public interest" because

19  of the "public interest in fantasy football and fantasy sports." *Id*. at 1004. Here, the

20  record not only demonstrates a similar public interest in drone racing, it also shows

21  that Horbaczewski and the DRL went to great efforts to cultivate such interest.

22       Horbaczewski equates himself with the DRL and argues that statements about

23  the DRL also relate to him. Dkt. 106 (Horbaczewski's Opposition to Kanes' Motion

24  to Dismiss) at 18:8-18 (Horbaczewski "is the founder and CEO of DRL … and even

25  if the statements could be construed as being about the company they can

26  reasonably be viewed as concerning him." *Id*. at 18:15-18.) Thus, the DRL's efforts

27  to promote itself are applicable to Horbaczewski in his capacity as CEO and one of

28  the founders of the DRL.

The DRL and Horbaczewski promote themselves extensively through various traditional and social media. The DRL posts links to over 100 articles and videos from established news organizations on its "Press" page, many of which articles identify Horbaczewski as the DRL's founder and CEO. *See, e.g.*, Fraresso Decl., Ex. H (https://thedroneracingleague.com/press/); *see also* Dkt. No. 106-6 (Business Insider article); Dkt. No. 106-7 at 17 (Crain article); Dkt. No. 106-8 at 3 (Techcrunch article); Dkt. No. 106-9 at 3 (Wall Street Journal article). The DRL's social media presence is also substantial, and the company boasts a significant following across a variety of social media, counting over 1.4 million followers on Facebook, over 130,000 followers on Instagram, over 34,000 followers on Twitter, and nearly 100,000 subscribers on its YouTube channel.[8] Fraresso Decl., Exs. D-G. The DRL's races are broadcast by traditional sports media channels, with Horbaczewski admitting that "55 million people worldwide watched the inaugural DRL World Championship Season on TV while 100 million watched online." Dkt. No. 106-5; Fraresso Decl., Ex. A (Digiday article). The DRL has forged investment and business ties with various investors, partners, and sponsors.[9] Dkt. No. 106-5 at 2-3; *see also* Dkt. No. 90, ¶ 40 ("DRL announced that it had completed a round of funding in which it received $20 million in private placement led by a number of

---

[8] DRL's YouTube videos have been viewed over 10 million times since 2015. Fraresso Decl., Ex. G (DRL's YouTube page—the About section).

[9] Although courts have weighed whether a party is a public corporation or a privately held entity as part of a public interest analysis, courts have also declined to draw a brightline rule as to how many investors or shares satisfies the public interest requirement. *See, e.g., ComputerXpress*, 93 Cal.App.4th at 1007-1008 (an unknown number of shareholders with outstanding shares "vary[ing] from 12,000,000 to 24,000,000"; public interest found); *Troy Group*, 364 F.Supp.2d at 1154 ("although [courts] did refer to companies' numerous outstanding shares, in neither case did the court establish a strict cut-off on the number of shareholders required for a company's transactions to be of public interest" and rejecting the plaintiff's argument that the number of shareholders distinguished precedent). Here, DRL has millions of issued shares (*see, e.g.*, Fraresso Decl., Ex. B).

significant telecommunications and media companies."); Fraresso Decl., Ex. C (https://thedroneracingleague.com/). Moreover, the DRL's purpose—of becoming the "the Formula 1, NASCAR and MotoGP of drone racing"—along with its numerous broadcast media alliances and sponsors (*e.g.*, ESPN, Fox Sports, Sky Sports) underscores the fact that the DRL is a matter of public interest because the DRL made it so. *See* Dkt. No. 106-5. That the DRL (and by extension Horbaczewski) made itself into a matter of public concern should be beyond reasonable debate. *See Global Telemedia*, 132 F.Supp.2d at 1265 (noting that SLAPP plaintiff company generated over 30,000 postings in an unregulated chatroom); *Troy Group v. Tilson,* 364 F.Supp.2d 1149, 1154 (C.D. Cal. 2005) (finding that SLAPP plaintiff company was a matter of public interest due to "press releases in its efforts to promote [itself], the stock" and other transactions, notwithstanding the limited number of actual investors); *Ampex*, 128 Cal.App.4th at 1577 ("Ampex inserted itself into the public area via press releases issued by the company and made available on the Internet.").

Accordingly, because the DRL has and continues to promote itself via press releases, media appearances, and social media, and taking into account the size of the DRL's media reach, Court should find that the DRL and Horbaczewski are matters of public interest for purposes of section 425.16, and that Kanes has satisfied his burden under prong one of the anti-SLAPP statute. Indeed, DRL and Horbaczewski cannot credibly argue otherwise for if the DRL were not a matter of public interest, its entire business model would be undermined.

### 3. The Gravamen of Horbaczewski's Counterclaim is the Instant Suit

To determine whether a cause of action is based on protected activity, courts "examine the *principal thrust or gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies." *Okorie*, 14 Cal.App.5th at 591 (citing *Ramona Unified School Dist. v. Tsiknas*, 135 Cal.App.4th 510, 519-520 (Cal.

Ct. App. 2005) (italics in original)). The gravamen is assessed by identifying the allegedly wrongful and injury-producing conduct that provides the foundation for the claim. *Okorie*, 14 Cal.App.5th at 586.

Although Horbaczewski tries to frame his Counterclaim as concerning Kanes' edits to the Wikipedia Entry, it is clear that what Horbaczewski actually takes issue with are the statements in the pleadings filed in this litigation. *See* Dkt. No. 90 (Counterclaim) at ¶¶ 47, 48, 56. Indeed, none of the language that Horbaczewski complains about (*e.g.*, "secretly cutting them out of the company," "[t]he truth was that Horbaczewski intended to steal plaintiffs' ideas and the entire DRL for himself," "a cynical plot to steal their ideas for a televised drone racing league, claim all credit for himself, and cheat them out of their rightful ownership of two-thirds of the Drone Racing League") appears in the Wikipedia Entry itself. *See* Dkt. No. 90, ¶ 47; Dkt. No. 90-1 (Wikipedia Entry) at 3. Rather, those words only appear in the third party law.com article written about this lawsuit.[10] The law.com article summarizes plaintiffs' claims using the third party author's own words[11], or quotes directly from the then-operative First Amended Complaint. *Compare* Dkt. Nos. 13 (First Amended Complaint) and 90-2 (Law.com article). Indeed, the gravamen of the entire Counterclaim concerns statements made by the plaintiffs in the First Amended Complaint, not the Wikipedia Entry.

The constitutional right of petition encompasses filing a complaint and statements made during litigation. *Navellier*, 29 Cal.4th at 90; *Kashian*, 98 Cal.App.4th at 908 ("Filing a lawsuit is an exercise of one's constitutional right of

---

[10] The law.com article also contains Horbaczewski's counsel's, as well as DRL's, "vehement" denials of plaintiffs' allegations. *See* Dkt. No. 90-2 at 3.

[11] The quote "[i]nstead, Horbaczewski absorbed their ideas for making drone racing compelling TV while secretly cutting them out of the company, they allege" appears to be the law.com author's summary of plaintiffs' claims. *See* Dkt. No. 90-2 at 3. Kanes cannot be liable for a third party's characterization of this litigation.

petition, and statements made in connection with or in preparation of litigation are subject to section 425.16."). What constitutes protected speech must be broadly construed. Cal. Civ. Proc. Code § 425.16(a). Thus, the statements made by Kanes and Laub in their complaint—which were quoted in the law.com article—are protected speech under section 425.16.

**B.    Prong Two: Horbaczewski Cannot Demonstrate a Likelihood of Succeeding on His Defamation Counterclaim**

Because Kanes satisfies prong one of the anti-SLAPP analysis, Horbaczewski must establish that his Counterclaim is likely to succeed. Horbaczewski cannot do so and the Court should strike his Counterclaim in its entirety.

**1.    Kanes' Edits to the DRL Wikipedia Entry Were Not Defamatory**

**a.    The Edited Wikipedia Text was not Defamatory**

Horbaczewski asserts a single Counterclaim for defamation *per se* based on written edits to the Wikipedia Entry for the DRL. Dkt. No. 90, ¶¶ 54-63. Accordingly, Horbaczewski's counterclaim is a claim for libel *per se*. *See also* Dkt. No. 99 (Kanes' Motion to Dismiss) at 12-13.

The California Civil Code § 45 defines libel as: "[A] false and unprivileged publication by writing… which exposes any person to hatred, contempt, ridicule, or obloquy, or which cases him to be shunned or avoided, or which has a tendency to injure him in his occupation." The elements of a defamation claim are: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage." *J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal.App.4th 87, 97 (Cal. Ct. App. 2016). A party's claim that certain statements are defamatory will fail if such statements are not reasonably susceptible to being interpreted as defaming the party. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1073-1074 (9th Cir. 2005); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 567 (9th Cir. 1993). Whether a statement is reasonably susceptible to

a defamatory meaning is made from the perspective of an ordinary reader taking into account the entire context in which the statement was made. *MacLeod v. Tribune Pub. Co.*, 52 Cal.2d 536, 546-547 (Cal. 1959); *Norse*, 991 F.2d at 567; *J-M Manufacturing*, 247 Cal.App.4th at 100 (defamation actions cannot be based on snippets taken out of context because context can dull even the most volatile language). If no reasonable ordinary reader would perceive a meaning which tended to injure a person's reputation, no libel can be found. *Barnes-Hind, Inc. v. Sup. Ct.*, 181 Cal.App.3d 377, 386 (Cal. Ct. App. 1986).

Horbaczewski complains about three edits to the Wikipedia Entry: (1) a statement that Kanes and Laub were cofounders of the DRL; (2) a statement that Kanes "wrote and created the original concept" for the DRL; and (3) a statement that "Horbaczewski first heard of the concept of Drone Racing League from Dan Kanes, who had written a detailed pitch deck for the league." Dkt. No. 90, ¶ 55. None of these statements exposes Horbaczewski to "hatred, contempt, ridicule, or obloquy" or has a tendency to cause him to "be shunned or avoided, or which has a tendency to injure him in his occupation." *See* Cal. Civ. Code. § 45. Indeed, none of these statements suggests that Horbaczewski has committed a crime or done anything improper or unethical. None of the statements attacks Horbaczewski's character, morals, or actions, and do not belittle Horbaczewski or his contributions to the DRL. Rather, the statements can only be reasonably interpreted as setting forth Kanes' and Laub's contributions to the founding of the DRL. Horbaczewski's Counterclaim fails to explain how an ordinary reader of the statements could reasonably perceive them as attacks on Horbaczewski's reputation. *Barnes-Hind*, 181 Cal.App.3d at 386.

*Lin v. Rohm and Haas Co.*, 293 F.Supp.2d 505 (E.D. Pa. 2003) demonstrates that Horbaczewski's claim has no merit. In *Lin*, the plaintiff, the alleged "sole inventor" of a device, sued alleging that her former employer defamed her by submitting a patent application which "listed multiple co-inventors" whom she

1   alleged "did not contribute to the invention." *Id*. at 519. The court dismissed

2   plaintiff's claim as a matter of law. *Id*. at 520.

3       As the *Lin* court noted, a defamation claim only sounds if "the

4   communication complained of is capable of a defamatory meaning"—*i.e.*, "it tends

5   to harm the individual's reputation so as to lower him in the estimation of the

6   community or deter third persons from associating or dealing with him." *Id*. at 519.

7   The mere fact that a plaintiff "did not receive all of the credit she alleges she

8   deserves" or was forced to share credit with others who "did not contribute" does

9   not "lower [the plaintiff] in the estimation of the community or deter third persons

10  from associating or dealing with [the plaintiff]." *Id*. at 519-520. This is not

11  defamation, and the law does not provide any remedy for such bruised egos. *Id*.

12      Here, Kanes' edits to the Wikipedia Entry add statements regarding Plaintiffs'

13  contributions to the founding of the DRL. Simply because such edits "fail to

14  advance [Horbaczewski's] reputation" as much as he would like does not make the

15  statements defamatory. *Id*.; *see also J-M Manufacturing*, 247 Cal.App.4th at 97.

16  Accordingly, statements that Plaintiffs are co-founders of the DRL and that Kanes

17  conceived of the DRL are not reasonably susceptible to a defamatory meaning.

18      The third statement—that Horbaczewski first heard of the concept for DRL

19  from Kanes—is also not defamatory. Horbaczewski does not explain how such a

20  statement could conceivably defame him. Indeed, Horbaczewski does not claim to

21  have invented the sport of organized drone racing. *See, e.g.*, Dkt. No. 90, ¶¶ 11-12;

22  Dkt. No. 106-6 at 2 (Business Insider article) ("It was in a field behind a warehouse

23  in Long Island, New York that founder and chief executive of the Drone Racing

24  League (DRL) Nick Horbaczewski first saw a drone race back in 2015."); Dkt.

25  No. 106-8 at 3 (TechCrunch article) ("As a refresher, Drone Racing League was

26  founded in 2015 to capitalize on the trend of amateur drone racing."). Thus, the third

27  statement—like the first two statements at issue—cannot be found to be defamatory.

28      Further, libel *per se* requires a defamatory meaning that is apparent to a

reader from the language itself without the need for explanation or extrinsic facts. *MacLeod*, 52 Cal.2d at 548-549; *Barnes-Hind*, 181 Cal.App.3d at 384-385, 387. To establish libel *per se*, the defamatory nature of the statement must be as apparent to the Court as it is to the ordinary reader. *Barnes-Hind*, 181 Cal.App.3d at 387. Here, the defamatory nature of the statements that Horbaczewski complains of is apparent to no one. There is no support for Horbaczewski's allegation that Kanes' edits to the Wikipedia Entry "would cause readers to believe that Mr. Horbaczewski is lying about founding DRL by himself and that he stole the concept for DRL from Plaintiffs and cheated them out of an ownership share." Dkt. No. 90, ¶ 57. The Wikipedia Entry says nothing about theft or ownership and a reasonable reader would not interpret the Wikipedia Entry to be defamatory as alleged. Moreover, the founding of the DRL—and whether it was team effort or a solo labor—is not a fact that is widely known to an ordinary reader of the Wikipedia Entry. Accordingly, Horbaczewski's Counterclaim fails.[12] *Barnes-Hind*, 181 Cal.App.3d at 386-387.

### b.      The Law.com Article Was Not Defamatory

Kanes cannot be liable for the law.com article but the law.com article is not defamatory in any event. *Infra*, § B.2. Horbaczewski cherry-picks various statements from the law.com article and presents them as defamatory, without an acknowledgement of the context in which those statements were made. *See* Dkt.

---

[12] The law recognizes two species of defamation, libel *per se* and libel *per quod*. *McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 111 (Cal. Ct. App. 2007). Libel *per se* occurs where the defamatory nature of the defendant's statement is patently evident and would be understood by the general public "without the need for explanatory matter." *Id*. In contrast, "if the listener would not recognize the defamatory meaning without knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons . . . the matter is deemed defamatory *per quod*. *Id*. Here, Horbaczewski's Counterclaim alleges libel *per se*. But even if his Counterclaim were construed to allege libel *per quod*, he still fails because such a claim requires "pleading and proof of special damages." *Id*. Horbaczewski's Counterclaim alleges no such damages.

1 No. 90, ¶¶ 47-48, 56. Horbaczewski's approach is legally unsound.

2     To support a finding that a writing is defamatory, the Court should consider

3 the entire context of the allegedly defamatory material. *MacLeod*, 52 Cal.2d at 547;

4 *Norse*, 991 F.2d at 567; *Troy Group*, 364 F.Supp.2d at 1156 ("It is easy to see that

5 context can dull the literal meaning of even the most volatile language."). Out-of-

6 context statements cannot support a finding of defamation where the context makes

7 clear the non-defamatory nature of the statements at issue. *J-M Manufacturing*, 247

8 Cal.App.4th at 100; *see also Knievel*, 393 F.3d at 1074.

9     Even a cursory review of the law.com article confirms it is not defamatory.

10 The law.com article (Dkt. No. 90-2) is merely a summary of the First Amended

11 Complaint in this litigation.[13] Not only does the article ascribe the various

12 statements at issue to plaintiffs and their counsel, but the article also includes DRL's

13 and its counsel's "vehement" denials. Dkt. No. 90-2 at 2-3. The article makes no

14 assertion regarding the truth or falsity of either side's statements and is not

15 reasonably subject to a defamatory meaning. *MacLeod*, 52 Cal.2d at 547; *Norse*, 991

16 F.2d at 567. To be certain, this is a case where the context dulls the literal meaning

17 of the cherry-picked language. *Troy Group*, 364 F.Supp.2d at 1156; *see also*

18 *Knievel*, 393 F.3d at 1074 (context clarified that allegedly libelous language was

19 meant to be complimentary).

20     More telling is the fact that Horbaczewski has not sued law.com or the

21 article's author for defamation, which has been accessible to the public since late

22 2017. Having failed to do so, or at a minimum demanded a retraction, it is clear that

---

24 [13] In any event, the statements made in Plaintiff's pleadings are protected by

25 California's absolute litigation privilege, Civil Code § 47(b), which extends to "any

communication (1) made in judicial or quasi-judicial proceedings … that ha[s] some

26 connection or logical relation to the action." *Rusheen*, 37 Cal.4th at 1057. The

privilege is absolute and broadly applied, regardless of any malice. *Jacob B. v.*

27 *County of Shasta*, 40 Cal.4th 948, 955 (Cal. 2007) (applying privilege to any

28 publication required or permitted by law in the course of a judicial proceeding).

Horbaczewski cannot find any defamatory material in the law.com article itself.

**2.      Kanes Is Immune From Liability for Linking the Law.com Article**

Federal law immunizes Kanes from liability for hyperlinking the law.com article in a footnote of the Wikipedia Entry. In the *Communications Decency Act* of 1996, Congress declared: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). In *Barrett v. Rosenthal*, the California Supreme Court applied the immunity conferred by the statute to individual users like Kanes. *Barrett*, 40 Cal.4th at 58-62. In *Barrett*, the SLAPP defendant, an individual, had reposted articles written by others that the plaintiffs had found objectionable on several Internet newsgroups. *Id*. at 41. The *Barrett* plaintiffs sued for defamation, and the defendant moved to strike the complaint under the anti-SLAPP statute. *Id*. at 40. The California Supreme Court also held that a "[u]ser plainly refers to someone who uses something, and the statutory context makes it clear that Congress meant someone who uses an interactive computer service." *Id*. at 58-59. The Court noted that the statute defined "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet" and that the statute specifically referred to individuals. *Id*. at 59; 47 U.S.C. §§ 230(a)(2), (b)(3). Accordingly, the Court found that:

> The statutory immunity serves to protect online freedom of expression and to encourage self-regulation, as Congress intended. Section 230 has been interpreted literally. It does not permit Internet service providers or users to be sued as "distributors," nor does it expose "active users" to liability.

Plaintiffs are free under section 230 to pursue the originator of a defamatory

1  | Internet publication. Any further expansion of liability must await

2  | congressional action.

*Barrett*, 40 Cal.4th at 63.

3  | Kanes used the Internet to edit Wikipedia to include a hyperlink to the

4  | law.com article that originated with someone else. Therefore, Kanes is immune from

5  | any liability for defamation related to adding a hyperlink to the law.com article.

6  | *Barrett*, 40 Cal.4th at 60; 47 U.S.C. § 230(c)(1).

7  | Additionally, Kanes is not liable for adding a hyperlink to the law.com article

8  | because linking does not constitute republication as a matter of law. Publication is

9  | an essential element of a libel claim. Cal. Civ. Code § 45; *J-M Manufacturing*, 247

10 | Cal.App.4th at 97. California adheres to the single publication rule that deems a

11 | publication to occur when a writing is first generally distributed to the public.

12 | *Shively v. Bozanich*, 31 Cal.4th 1230, 1245-47 (Cal. 2003). Subsequent distributions

13 | of the same article do not constitute a distinct publication capable of supporting a

14 | claim for libel. *Id.*; *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, Case

15 | No. 02-CV-2258, 2007 WL 935703 at *6 (S.D. Cal., Mar. 7, 2007).

16 | Here, Horbaczewski alleges that Kanes edited the Wikipedia Entry to include

17 | a footnoted hyperlink that "links the reader to an article on Law.com entitled 'Drone

18 | Racing League Was Our Idea, Tech Enthusiasts Say.'" Dkt. No. 90, ¶ 47. But it is

19 | well-settled law that simply including a link does not republish the original article.

20 | *Sundance Image Tech.*, 2007 WL 935703 at *7 ("[T]he court finds that such linking

21 | is more reasonably akin to the publication of additional copies of the same edition of

22 | a book, which is a situation that does not trigger the republication rule."); *In re*

23 | *Philadelphia Newspapers, LLC*, 690 F.3d 161, 175 (3rd Cir. 2012) ("[T]hough a

24 | link and reference may bring readers' attention to the existence of an article, they do

25 | not republish the article."); *U.S. ex rel Klein v. Omeros Corp.*, 897 F.Supp.2d 1058,

26 | 1074 (W.D. Wa. 2012) ("[a] mere reference does not directly publish the

27 | defamatory material to a new audience. Instead, it tells the new audience where the

28 |

1  defamatory material can be found… [A URL] tells the reader the address where she

2  can find the material on the Web" and finding that "mere reference or URL is not a

3  publication of the contents of the materials referred to."); *Salyer v. Southern Poverty*

4  *Law Center, Inc.*, 701 F.Supp.2d 912, 918 (W.D. Ky. 2009) (finding that hyperlinks

5  did not restate the allegedly defamatory statements and did not alter the substance of

6  the linked article). Accordingly, Horbaczewski cannot premise his Counterclaim on

7  the inclusion of the link to the law.com article.

8          **3.**     **Horbaczewski Is a Limited Purpose Public Figure Who**
                 **Cannot Prove Kanes' Edits to the Wikipedia Entry Were**

9                   **Made With Actual Malice as Required to Establish a Claim**
                 **for Defamation**

10

11       Assuming, *arguendo*, that Horbaczewski manages to demonstrate that Kanes'

12  edits to the Wikipedia Entry were factually erroneous (they were not),

13  Horbaczewski still fails to demonstrate that he is likely to prevail on his defamation

14  Counterclaim. Horbaczewski is a public figure who must set forth clear and

15  convincing evidence of actual malice on Kanes' part in making the edits to the

16  Wikipedia Entry to prevail on his defamation claim.

17       The First Amendment commands that "[a] public figure may not recover

18  damages for a defamatory falsehood without clear and convincing proof that the

19  false 'statement was made with actual malice—that is, with [actual knowledge] that

20  it was false or with reckless disregard of whether it was false or not.'" *Harte-Hanks*

21  *Commun., Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *New York Times*

22  *Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964); *accord Reader's Digest Assoc., Inc.*

23  *v. Sup. Ct. of Marin County*, 37 Cal.3d 244, 266 (Cal. 1984) (finding no evidence of

24  actual malice, and no liability, where plaintiff public figure complained of

25  inaccuracies in an article written by defendants).

26       *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) recognized two different

27  categories of public figures. *Id.* at 351. "The first is the 'all purpose' public figure

28  who has 'achiev[ed] such pervasive face or notoriety that he becomes a public figure

for all purposes and in all contexts.'" *Annette F. v. Sharon S.*, 119 Cal.App.4th 1146, 1163 (Cal. Ct. App. 2004) (quoting *Gertz*, 418 U.S. at 351). The second type "is the 'limited purpose' or 'vortex' public figure who 'voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Annette F.*, 119 Cal. App. 4th at 1164 (quoting *Gertz*, 418 U.S. at 345). "A plaintiff can do so [simply] by discussing [a] matter with the press or by being quoted by the press, thus thrusting himself into the vortex of a public issue." *Rudnick v. McMillan*, 25 Cal.App.4th 1183, 1190 (Cal. Ct. App. 1994).

Whether a party is a public figure is a question of law which is crucial to the proper resolution of a libel claim. *Reader's Digest*, 37 Cal.3d at 252; *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967). "[P]ublic figures are generally less vulnerable to injury from defamation because of their ability to resort to effective 'self help'" and the fact that such figures typically enjoy "greater access than private individuals to the media and other channels of communication." *Reader's Digest*, 37 Cal.3d at 253 (discussing *Gertz*, 418 U.S. 323). More importantly, public figures "are less deserving of protection than private persons because public figures … have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them." *Gertz*, 418 U.S. at 345. In determining whether an individual is a public figure, courts look for evidence of affirmative actions by which the individual has thrust himself or herself into the public eye, and consider the totality of the circumstances comprising an individual controversy. *Reader's Digest*, 37 Cal.3d at 254-255 (finding that plaintiff organization and founder had thrust themselves into the public eye via myriad attempts to promote their case and their business in general). "While any person or organization has the right to engage in publicity efforts and to attempt to influence the public and media opinion regarding their cause, such significant, voluntary efforts to inject oneself into the public arena require that such a person or organization to be classified as a public figure in any related defamation actions." *Id*. at 256 (plaintiffs' sponsorship of

1  "massive publicity and self-promotion efforts over a period of many years" had
2  "voluntarily exposed themselves to increased risk of injury from unfavorable
3  commentary about them").

4       It is well-settled that those who make "the voluntary decision to pursue a
5  career in sports" renders such persons "at least limited purpose public figures."
6  *McGarry*, 154 Cal.App.4th at 115. This principle is not limited to the big-four
7  legacy leagues—the NFL, MLB, NBA, and NHL. *Chapman v. Journal Concepts,*
8  *Inc.,* 528 F.Supp.2d 1081 (D. Haw. 2007) (finding plaintiff was a "public figure"
9  with respect to "a subsection of the surfing community, namely mature (over 40
10 years of age) surfing enthusiasts").

11      Rather, the public-figure designation implicates individuals who participate in
12 the creation and promotion of new sports ventures. For example, in *Silvester v. ABC,*
13 *Inc.*, 650 F.Supp. 766 (S.D. Fla. 1986), the court found that the "president and
14 majority shareholder" of Florida professional jai alai league and his league both
15 constituted limited purpose public figures. *Id.* at 768. The court found that the
16 president and his league "voluntarily injected themselves into … public
17 controversies surrounding their own jai alai businesses and thereby became public
18 figures for this limited range of issues." *Id.* at 777. This finding stemmed from the
19 fact that the plaintiff and his league "chose to engage in professional sports" and
20 "promoted their business ventures in the hearty spirit of capitalism." *Id.* at 776.
21 Importantly, the *Silvester* plaintiffs achieved public-figure status based on the
22 league's sheer "attendance" despite failing to secure lucrative contracts for
23 television coverage enjoyed by more prominent sports leagues. *Id.* at 774.

24      Here, both the DRL and Horbaczewski likewise "voluntarily injected
25 themselves into … public controversies surrounding their own [drone racing]
26 businesses" by the sheer fact of "[choosing] to engage in professional sports" and by
27 "promot[ing] their business ventures in the hearty spirit of capitalism." *See id.* at
28 776–777. They engaged in a years-long media campaign to promote themselves and

KANES' SPECIAL MOTION TO STRIKE HORBACZEWSKI'S COUNTERCLAIM
PURSUANT TO CODE CIV. PROC. § 425.16

1  drone racing in general via press releases, newsletters, media appearances, videos,

2  and social media presence. *See, e.g.*, Fraresso Decl., Ex. H. Horbaczewski has been

3  interviewed and profiled numerous times. *Id*. Accordingly, the Court should find

4  that Horbaczewski is a public figure. *Reader's Digest*, 37 Cal.3d at 254-255.

5       Because Horbaczewski is a public figure, he can only prevail on his

6  Counterclaim if he can demonstrate, by clear and convincing evidence, actual

7  malice on Kanes' part. *Id*. at 256 (citing *New York Times*, 376 U.S. at 285-286).

8  Actual malice is "knowledge that [an allegedly libelous statement] was false or with

9  reckless disregard of whether it was false or not." *Id*. (citing *New York Times*, 376

10 U.S. at 279-280). To find that a defendant recklessly disregarded the truth or falsity

11 of a statement, courts must find "sufficient evidence to permit the conclusion that

12 the defendant in fact entertained serious doubts as to the truth of his publication.

13 Publishing with such doubts shows disregard for truth or falsity and demonstrates

14 actual malice." *Id*. at 256-257 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731

15 (1968)). This is a subjective test from the defendant's viewpoint as to his or her

16 belief concerning the truthfulness of the statement. *Id*. at 257 ("the defendant's

17 actual belief concerning the truthfulness of the publication is the crucial issue.").

18 Indeed, Horbaczewski recognizes that he must demonstrate actual malice in order to

19 prevail. Dkt. No. 90 (Counterclaim) at ¶ 60 ("Mr. Kanes acted with malice when he

20 published these statements on Wikipedia. He knew that the statements were false

21 and acted with reckless disregard as to their falsity, and was motivated by ill will in

22 publishing them, hoping to damage Mr. Horbaczewski's reputation.").

23      But Horbaczewski cannot demonstrate any evidence of malice, let alone by

24 clear and convincing evidence. On the contrary, Kanes' testimony confirms that he

25 had no doubt of his contributions to the founding of the DRL, and that his edits to

26 the Wikipedia Entry were simply to set the record straight:

27      Q.  Why did you modify the Wikipedia entry for the DRL?

28      A.  Because I thought it would be reasonable and fair for the world to

know that I'm the original creator of the Drone Racing League concept.

   . . .

   Q.  . . . Why did you need to let the world – why did you need to attach the article to the Wikipedia entry?

   Why did you need to link to the article in the Wikipedia entry if your purpose was just to let the world know that you were the one that came up with the concept?

   A.  Yeah, my belief and understanding when I went to edit the Wikipedia page, which is not before us today, but I'm well aware that I did edit the Wikipedia page.

   You have to cite some sort of published article or reference material that may state that information is possibly true so that there's a foundational relationship between a published article and an assertion on a Wikipedia page so that people don't just randomly make things up.

Fraresso Decl., Ex. I (Nov. 27, 2018 Kanes Dep. Tr. at 315:11-16, 316:1-17); *see also* Dkt. No. 31-20 (Kanes Declaration), ¶ 7 (discussing Plaintiffs' contributions to the DRL).

Kanes believes that his edits to the Wikipedia Entry were truthful, and Horbaczewski's Counterclaim fails. *Reader's Digest*, 37 Cal.3d at 257.

### C.    Kanes Is Statutorily Entitled to His Attorneys' Fees and Costs

Because Kanes, as the SLAPP defendant, has demonstrated that the conduct that Horbaczewski complains about in his Counterclaim is protected under California's anti-SLAPP statute, and Horbaczewski cannot demonstrate a likelihood of success on the merits of his Counterclaim, the Court should strike the Counterclaim in its entirety. Accordingly, Kanes is entitled to recover his attorneys' fees and costs in connection with bringing the instant motion. Cal. Code of Civ. Proc. § 425.16(c); *S.B. Beach Properties*, 39 Cal.4th at 377; *Vess*, 317 F.3d at 1110-1111. Kanes intends to submit a full accounting of his fees and costs incurred in connection with this special motion to strike following the Court's ruling.

## V.    CONCLUSION

Horbaczewski's Counterclaim relates to protected activity and is meritless. For the foregoing reasons, the Court should strike Horbaczewski's Counterclaim in its entirety and award Kanes his attorneys' fees and costs in bringing this motion.

1 | DATED:  January 18, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation


By:      */s/ Patrick M. Ryan*
          Patrick M. Ryan
          Attorneys for Plaintiffs
          JUSTICE LAUB and DAN KANES

## PROOF OF SERVICE

### Laub v. Horbaczewski, et al.
### USDC, Central District of California Case No. 2:17-cv-06210 JAK (KSx)

At the time of service, I was over 18 years of age and not a party to this action.  My business address is One Embarcadero Center, Suite 800, San Francisco, CA 94111.

On January 18, 2019, I served a true copy of the following document(s) described as **PLAINTIFF DANIEL KANES' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT NICHOLAS HORBACZEWSKI'S COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address spearson@bzbm.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 18, 2019, at San Francisco, California.

_/s/ Stephanie D. M. Pearson_
Stephanie D. M. Pearson

1

**SERVICE LIST**
**Laub v. Horbaczewski, et al.**

2

**USDC, Central District of California Case No. 2:17-cv-06210 JAK (KSx)**

3

| | |
|---|---|
| 4<br>5<br>6<br>7<br>8 | Kenneth A. Kuwayti, Esq.<br>MORRISON & FOERSTER LLP<br>775 Page Mill Rd.<br>Palo Alto, CA  94304-1018<br>Tel:  (650) 813-5600<br>Fax:  (650) 494-0792<br>Email:  KKuwayti@mofo.com | *Attorneys for Defendants<br> Nicholas Horbaczewski and Drone<br>Racing League, Inc.* |
| 9<br>10<br>11<br>12<br>13 | Nicholas Rylan Fung, Esq.<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, California 90017-3543<br>Tel: (213) 892-5200<br>Fax: (213) 892-5454<br>Email:  NFung@mofo.com | *Attorneys for Defendants<br>Nicholas Horbaczewski and Drone<br>Racing League, Inc.* |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28