KENNETH A. KUWAYTI (CA SBN 145384)
KKuwayti@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

Attorneys for Defendants
NICHOLAS HORBACZEWSKI and
DRONE RACING LEAGUE, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JUSTICE LAUB and DANIEL KANES, <br><br> Plaintiffs, <br><br> v. <br><br> NICHOLAS HORBACZEWSKI, DRONE RACING LEAGUE, INC., and DOES 1 TO 10, <br><br> Defendants. | Case No. 2:17-CV-06210 JAK (KSx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS NICHOLAS HORBACZEWSKI AND DRONE RACING LEAGUE, INC.'S MOTION RE: DISPUTED DOCUMENTS** <br><br> Date:          April 10, 2019 <br> Time:          10:00 a.m. <br> Courtroom: 580 <br><br> Hon. Karen L. Stevenson |
| NICHOLAS HORBACZEWSKI, <br><br> Counter-Claimant, <br><br> v. <br><br> DANIEL KANES, <br><br> Counter-Defendant. | **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 2

    A.    Defendants' Inadvertent Production And Plaintiffs' Failure to Destroy the Documents ................................................................................ 2

    B.    Plaintiffs Violate The Court's December 3 Order ............................... 3

    C.    Defendants' Request For Emergency Relief ....................................... 4

    D.    Defendants Complied With The Portion of the Court's Order Concerning the Notes Before the Order Was Vacated ....................... 6

ARGUMENT ............................................................................................................... 6

I.    PLAINTIFFS ARE NOT ENTITLED TO THE PRODUCTION OF ANY ADDITIONAL TEXT MESSAGES ...................................................... 6

    A.    Mr. Horbaczewski's Text Messages Are Not A Single Document .............................................................................................. 8

    B.    Plaintiffs Cannot Demonstrate A Compelling Need For The Production Of Mr. Horbaczewski's Private Texts ............................. 10

        1.    California Law Requires Litigants to Demonstrate a Compelling Need to Justify the Production of Information That Implicates Privacy Rights ................................................. 10

        2.    Plaintiffs Cannot Demonstrate a Compelling Need for Production of Additional Texts Between Mr. Horbaczewski and Ms. DeVito ....................................... 12

        3.    Plaintiffs Cannot Demonstrate a Compelling Need for Production of Additional Texts Between Mr. Horbaczewski and Mr. Mazzeo ...................................... 15

    C.    Plaintiffs Are Not Entitled to Any Additional Texts Between Mr. Horbaczewski and Mr. Gury, Mr. Smith, and Mr. Budding ........ 16

II.   PLAINTIFFS ARE NOT ENTITLED TO THE PRODUCTION OF ANY ADDITIONAL NOTES ................................................................... 17

III.   PLAINTIFFS' COUNSEL VIOLATED THE DEC. 3 COURT ORDER ............................................................................................................ 19

IV.   PLAINTIFFS SHOULD BE REQUIRED TO CERTIFY THAT ALL OF THE INADVERTENTLY PRODUCED DOCUMENTS HAVE BEEN DESTROYED ............................................................................. 20

CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coleman v. Jenny Craig, Inc.*,
   2013 WL 2896884 (S.D. Cal. 2013) ............................................................. 10, 11

*Denari v. Superior Ct of Kern County.*, 215 Cal. App. 3d 1488 (Cal.
   Ct. App. 1989) ............................................................................................... 10, 14

*Evon v. Law Offices of Sidney Mickell*,
   2010 WL 455476 (E.D. Cal., Feb. 3, 2010) ......................................................... 9

*Flintkote Co. v. General Acc. Assur. Co. of Canada*,
   2009 WL 1457974 (N.D. Cal. May 26, 2009) ................................................... 10

*Garcia v. City of Garden Grove*,
   2017 WL 2416207, at *3-4 (C.D. Cal. Feb. 28, 2017) ...................................... 11

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) ................................................. 10

*Live Nation Merchandise, Inc. v. Miller*,
   2014 U.S. Dist. LEXIS 65174 (N.D. Cal. May 9, 2014) ..................................... 9

*Sarieddine v. D&A Distribution, LLC*,
   2018 WL 5094937, at *2 (C.D. Cal. Apr. 6, 2018) ........................................... 17

*Toranto v. Jaffurs*,
   2018 WL 3752760 (S.D. Cal. Aug. 6, 2018) ....................................................... 9

*Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*,
   2016 U.S. Dist. LEXIS 184189 (C.D. Cal. Feb. 23, 2016) ................................. 9

**Statutes**

Fed. R. Civ. P. 26 ........................................................................................... 14, 16

1    Pursuant to the Court's February 12, 2019 Order, Defendants submit this

2    memorandum of points and authorities regarding the disputed text messages and

3    Notes that were inadvertently produced from the cell phone of Defendant Nicholas

4    Horbaczewski. (*See* Dkt No. 143.)

5    **INTRODUCTION**

6    Plaintiffs seek to exploit an inadvertent production of texts and Notes from

7    Mr. Horbaczewski's cell phone that contains privileged, highly personal, and

8    confidential information that has nothing to do with this lawsuit.

9    Although Plaintiffs agreed to limit the scope of the Court's review to texts

10   with five individuals for certain date ranges, the vast majority of these texts (over

11   3,700) consist of purely private communications between Mr. Horbaczewski and

12   his girlfriend at the time, Cristina DeVito, that do not in any way relate to the Drone

13   Racing League ("DRL"), Plaintiffs or any issue in this case.  Plaintiffs' requested

14   relief would also sweep in numerous texts between Mr. Horbaczewski and a college

15   friend, Matt Mazzeo, and more than 1,500 additional texts, many of which contain

16   confidential business information, that likewise have no relevance to this action.

17   This goes far beyond what Defendants agreed to produce, what the Court ordered to

18   be produced, and even what Plaintiffs requested, and is not in any way relevant,

19   much less proportional, to the needs of this case.

20   Plaintiffs also initially sought production of all of the entries from Mr.

21   Horbaczewski's Notes application dated after January 2015.  These entries consist

22   mostly of Mr. Horbaczewski's private and personal information, including

23   information relating to Mr. Horbaczewski's physical health, doctor's appointments,

24   TSA traveler number, passwords, and the private information of third parties.  The

25   production of this private and personal information, none of which has anything to

26   do with the case or Plaintiffs, would severely prejudice Mr. Horbaczewski and

27   violate his privacy interests as well as those of third parties.  It is not clear to

28   Defendants, however, whether the parties still have any remaining dispute over the

Notes.  Before the Court's January 30 Order was vacated, Defendants complied with that portion of the Order and produced the required Notes relating to DRL's formation, ownership structure, or investment capitalization for the specified time periods.   (*See* Dkt Nos. 128, 143.)  Nothing further should be required, and to the extent Plaintiffs seek additional Note entries, their request should be denied.

The California Constitution explicitly recognizes the right to privacy, and courts are required to conduct a balancing test before ordering production of material that implicates an individual's privacy rights.  Plaintiffs are required to demonstrate that they have a compelling need for Mr. Horbaczewski's private and personal text messages and Note entries that outweighs his privacy interests and those of other third parties.  They cannot do so here, as the additional information that they seek is not even relevant to this case.

## FACTUAL BACKGROUND

### A. Defendants' Inadvertent Production And Plaintiffs' Failure to Destroy the Documents

On July 24 and 25, 2018, Defendants inadvertently produced a set of six spreadsheets from Mr. Horbaczewski's phone that aggregated all of his texts, the entire contents of certain applications on iPhone (Notes, Whatsapp, Facebook Messenger, and Twitter), and portions of his Safari browser history.  The contents of each application had been aggregated into Excel spreadsheets solely for the purpose of review.  (Kuwayti Decl. ¶¶ 2-4.)  These lawyer-created files were subsequently produced by mistake, not because of responsiveness.  (*See id*.)

The protective order in this case sets forth a procedure to address "inadvertently produced material [that] is subject to a claim of privilege or other protection." Dkt. No. 65 ¶ 11.  Following that procedure, promptly after discovering the mistakes in October, Defendants sent letters to Plaintiffs providing replacement files, explaining that the originals had been inadvertently produced, and asking that the originals be destroyed.  (*See id.*; Kuwayti Decl. Exs 1-2.)

1   Plaintiffs never gave any indication that they would not comply.  (Kuwayti Decl.

2   ¶ 4.)

3        At Mr. Horbaczewski's November 30 deposition, however, Plaintiffs marked

4   (as Exhibit 119) a copy of the originally produced Notes spreadsheet containing the

5   entire contents of Mr. Horbaczewski's iPhone Notes application.  Defendants did

6   not recognize this document at the deposition, but when Defendants realized the

7   next day that it was the original, inadvertently produced document, Defendants

8   immediately wrote to Plaintiffs and requested return or destruction of the Notes

9   spreadsheet and the other files.  (*Id*. Ex. 3.)  When Plaintiffs refused, Defendants

10  obtained an order from Judge Krondstadt the next court day, December 3,

11  precluding Plaintiffs' counsel from reviewing the inadvertently produced files in

12  any respect pending this Court's resolution of the issue. (*Id*. ¶ 6; Dkt. No. 95.)

13  Judge Krondstadt's order also directed the parties to meet and confer over the issue.

14  (Dkt. No. 95.)

15          **B.      Plaintiffs Violate The Court's December 3 Order**

16       As part of the meet and confer process, to resolve the dispute, Defendants'

17  provided Plaintiffs with further revised replacement productions of several of the

18  inadvertently produced files, including a proposed replacement production for the

19  Notes application.  (Kuwayti Decl. ¶ 7.)  Plaintiffs eventually agreed to destroy the

20  Whatsapp, Facebook Messenger, Twitter, and Safari browser files.  (*Id.* ¶ 7.)  But

21  on December 13, Plaintiffs counsel's Steve Steinberg violated the December 3

22  order by reviewing the original, inadvertently produced Notes spreadsheet that was

23  the subject of Judge Krondstadt's order.  This became apparent when Mr. Steinberg

24  sent an email to Defendants referring to entries on twenty different pages in the

25  original production that Plaintiffs contended should have been included in

26  Defendants' replacement production.  Such a letter could only have been composed

27  by looking at the original document, which Plaintiffs' counsel was not permitted to

28  do.  (*Id.* ¶ 8 and Ex. 4.)

When contacted by Defendants regarding the violation of Judge Krondstadt's December 3 order, Mr. Steinberg admitted that he had looked at the originally produced version of the Notes that he had marked as a deposition exhibit. (*Id*. ¶ 8.) He attempted to justify this by stating that he thought that was permitted, but such an excuse rings hollow:  the deposition exhibit is the document that triggered the dispute and prompted Defendants to obtain the Court order on December 3, and Defendants had expressly asked that it be destroyed.  (*See* Kuwayti Decl. Ex. 3.) The exhibit also was the subject of correspondence between Defendants, Mr. Steinberg, and the court reporter after Judge Krondstadt's December 3 order in which Defendants asked the court reporter not to distribute that exhibit with the transcript or to the Plaintiffs.  *See id*. ¶ 9 and Ex. 3.  *See also id*. Ex. 5 (correspondence with court reporter asking not to distribute exhibit).  Defendants' counsel had also discussed the improper use of the exhibit at the deposition and Plaintiffs' refusal to return it in a draft email requesting a pre-motion telephone conference with the Court that Defendants sent to Plaintiffs on December 9, just days before Plaintiffs' counsel improperly reviewed the exhibit.  *See* Ex. 6 (Dec. 9 draft joint discovery dispute email prominently featuring Ex. 119).

### C.   Defendants' Request For Emergency Relief

On December 18, 2018, Defendants filed a request for an emergency pre-motion telephonic conference regarding Defendants' inadvertent production of materials from Mr. Horbaczewski's cell phone.  On December 18, 2018 the parties held a telephonic conference with this Court.  (Dkt. No. 103.)  The Court ordered Plaintiffs to provide to the Court by December 28 all of the disputed materials for *in camera* review along with a memorandum of no more than five pages outlining why Plaintiffs contend that any or all of the disputed documents should be deemed relevant.  (*Id*. at 2.)  The Court also ordered Defendants to provide to the Court by December 28 proposed redactions to the disputed documents as well as a memorandum of no more than five pages supporting their positions.  (*Id*.)

1   On December 21, 2018, the parties made an appearance before this Court for

2   a settlement conference and further discussed the disputed materials.  The Court

3   amended the December 18, 2018 order by no longer requiring Defendants to

4   provide proposed redactions due to the volume of text messages at issue.  (Dkt. No.

5   105.)  The parties met and conferred in person after the December 21, 2018 hearing

6   and by phone and in writing afterwards, and ultimately agreed that the disputed text

7   messages should be limited to Mr. Horbaczewski and five other individuals: Mr.

8   Gury, Mr. Smith, Mr. Budding, Mr. Mazzeo, and Ms. DeVito, who was Mr.

9   Horbaczewski's girlfriend at the time.  The parties also agreed that the time period

10  for the disputed text messages would be limited to January 2015 to September

11  2015, and June 30, 2017 through July 31, 2017.  (Kuwayti Decl. ¶ 14 and Ex. 14.)

12  This set of text messages still consists of 5,690 texts.  (*Id*. ¶ 15.)  Approximately

13  3,970 of these are texts that were exchanged between Mr. Horbaczewski and Ms.

14  DeVito.  (*Id*.)  Plaintiffs also agreed that only the Notes dated after January 1, 2015

15  should be submitted to the Court for review.  (*Id*. ¶ 16.)  This consisted of

16  approximately 100 Notes.  (*Id*. ¶17.)

17  On December 28, 2018, the parties submitted their respective memorandums

18  concerning the disputed documents.  On January 30, 2019, the Court issued an

19  order requiring Defendants to produce all non-privileged text messages between

20  Mr. Horbaczewski and Mr. Gury, Mr. Smith, Mr. Budding, Mr. Mazzeo, and Ms.

21  DeVito for the agreed-upon time period.  (Dkt. No. 128.)  As for the iPhone Notes,

22  the Court recognized that they included hundreds of entries over a large time period

23  that were personal in nature and irrelevant to the current action.  (*Id*. 128 at 8-9.)

24  The Court concluded that "[s]uch information simply does not fall within the scope

25  of discoverable information."  (*Id*.)  The Court further acknowledged that the

26  Protective Order would not adequately protect Mr. Horbaczewski from the severe

27  prejudice that would result from the disclosure of such personal information.  (*Id*. at

28  8.)  The Court ordered Defendants to "produce any and all iNotes reflecting

1   communications with or about Plaintiffs, or with Cristina DeVito, Matt Mazzeo,

2   Ryan Gury, Trevor Smith, and Tony Budding concerning the DRL's formation,

3   ownership structure, or investment capitalization for the agreed periods." (*Id*. at

4   10.)

5   The Court vacated its order on February 12 and invited further briefing on

6   this issue. (*See* Dkt. No. 143.)

7

8   **D.   Defendants Complied With The Portion of the Court's Order Concerning the Notes Before the Order Was Vacated**

9   The Court's January 30 Order required production of texts and Notes within

10   five days of the Order. (*See* Dkt. No. 128 at 10.)  Because Defendants intended to

11   seek review of the portion of the Court's Order regarding the texts, they requested a

12   stay of that portion of the order, which was granted by the Court. (*See* Dkt. Nos.

13   137, 138.).  However, because Defendants were not seeking review of the portion

14   of the Court's order regarding the Notes, they complied with that portion of the

15   Order on February 4.  (Kuwayti Decl. ¶ 18).  Defendants believed they were

16   already in compliance with the portion of the order regarding the Notes at the time

17   the Order issued. (*Id*. ¶ 18).  However, to err on the side of caution, Defendants

18   produced one additional Note entry on February 4. (*Id.*)

19   In addition, as required by the Court, Plaintiffs certified on February 4 that

20   they had destroyed the original versions of the files that contained the texts and the

21   Notes.  (Kuwayti Decl. Ex. 17.)  Plaintiffs did not, however, certify that they had

22   also destroyed "any portions" of the disputed documents, as the Order required.

23   (*See* Dkt. No. 128 at 10).

24   **ARGUMENT**

25

26   **I.   PLAINTIFFS ARE NOT ENTITLED TO THE PRODUCTION OF ANY ADDITIONAL TEXT MESSAGES**

27   Plaintiffs are not entitled to the production of any text messages beyond those

28   that have already been produced by Defendants in replacement versions of the

1   original spreadsheets.  Contrary to Plaintiffs' contention, Mr. Horbaczewski's texts

2   are not all part of one document.  They were aggregated into a single spreadsheet

3   solely for purposes of review by Defendants' counsel, but are stored on the phone

4   as separate, individual entries in a database.  Plaintiffs cannot meet the burden of

5   showing a compelling need for the further production of Mr. Horbaczewski's

6   private texts and Notes that outweighs the privacy interest of Mr. Horbaczewski and

7   third parties, and Defendants have already produced the texts that are relevant and

8   proportional to the needs of this litigation.

9       Defendants have prepared nine Excel spreadsheets containing the text

10  messages between Mr. Horbaczewski and the five agreed upon individuals for the

11  specified time periods January 1, 2015 to September 30, 2015, and June 30, 2017 to

12  July 31, 2017.[1]  These spreadsheets were provided to the Court *in camera* as part of

13  Defendants' previous submission, attached to an email from Nicholas Fung that

14  was sent on December 29 at 12:09 a.m.[2]  Defendants have highlighted in yellow the

15

16  _____

17  [1] These Excel files are as follows: (1) Exhibit A — text messages with Tony
    Budding from January 1, 2015 to September 30, 2015; (2) Exhibit B—text

18  messages with Tony Budding from June 30, 2017 to July 31, 2017; (3) Exhibit C –
    text messages with Cristina DeVito from January 1, 2015 to September 30, 2015.

19  (There were no text messages between Mr. Horbaczewski and Ms. DeVito from
    June 30, 2017 to July 31, 2017); (4) Exhibit D – text messages with Ryan Gury

20  from January 1, 2015 to September 30, 2015; (5) Exhibit E – text messages with
    Ryan Gury from June 30, 2017 to July 31, 2017; (6) Exhibit F – text messages with

21  Matt Mazzeo from January 1, 2015 to September 30, 2015; (7) Exhibit G – text
    messages with Matt Mazzeo from June 30, 2017 to July 31, 2017; (8) Exhibit H—

22  text messages with Trevor Smith from January 1, 2015 to September 30, 2015; (9)
    Exhibit I – text messages with Trevor Smith from June 30, 2017 to July 31, 2017.

23

24      These Excel spreadsheets were created by using the Excel filter functionality
    to filter for the relevant individual in Defendants' original production of text

25  messages, DRL00007428 by specifying the individual's last name in the "Remote
    party" field, specifying the relevant time period in the "Time stamp" field, and

26  copying the resulting filtered text messages into a new Excel file for each individual
    and time period.

27      [2] Defendants assume the Court still has access to these materials and did not

28  want to burden the Court with a duplicate set of documents for *in camera* review.

1  texts in these spreadsheets that have already been produced to Plaintiffs.

2  Defendants have highlighted in red texts between Mr. Horbaczewski and Ms.

3  DeVito that are personal in nature and do not concern DRL, Plaintiffs, or drone

4  racing.  Defendants have highlighted in orange the texts within this time period that

5  are privileged.

6

### A.   Mr. Horbaczewski's Text Messages Are Not A Single Document

7

8        Contrary to Plaintiffs' contention, the text messages produced by Defendants

9  are not a single document.  Rather, they were stored as separate individual entries

10  or data elements within a database on Mr. Horbaczewski's phone.  (Blackshear

11  Decl. ¶ 4.)  Further, the texts exchanged with a particular individual are not stored

12  in a separate portion of the database, but are co-mingled with texts exchanged with

13  other individuals.  (*Id.*)  The texts between Mr. Horbaczewski and the five

14  individuals at issue here—Ms. DeVito, Mr. Mazzeo, Mr. Gury, Mr. Smith, and

15  Mr. Budding—comprise thousands of unrelated messages over nine months that

16  would have been scattered throughout the database.

17        The texts were compiled into an Excel spreadsheet solely for the purpose of

18  review by defense counsel to determine which were responsive to Plaintiffs' request

19  or subject to attorney-client privilege.  (Blackshear Decl. ¶ 4.)  This is not how they

20  were intended to be produced.  (*Id.* ¶¶ 4, 6.)

21        Plaintiffs' fundamental premise—that Defendants need to justify

22  "redactions" to an aggregated spreadsheet prepared solely for review purposes—is

23  wrong.  Instead, the threshold issue is whether Plaintiffs are entitled to the

24  individual text messages, each of which comprises its own, unique document.

25  Plaintiffs have no such entitlement.

26

27  If the Court requires a further copy, Defendants request permission to resubmit the
documents *in camera*.

28

1    Recognizing the unique nature of text messages, courts do not normally order

2    production of all texts from a phone.  For example, in *Toranto v. Jaffurs*, where the

3    parties had a dispute over the production of texts, the Court ordered the production

4    of only those texts, from a total of ten people, that were responsive to the moving

5    party's requests for production.  2018 WL 3752760 at *2-3 (S.D. Cal. Aug. 6,

6    2018.)

7    Notably, contrary to their present position, Plaintiffs did not produce all of

8    the texts from their own phones (Kuwayti Decl. ¶ 10 and Ex. 7.)  Indeed, they have

9    not produced <u>any</u> texts between Mr. Kanes and Mr. Laub individually or texts

10   between them and certain other key people.  (*Id.* ¶ 10.)  Plaintiffs have produced

11   little or no metadata for the texts, and have produced a number of the texts as

12   screenshots only.  (*Id.*)  In at least one instance these screenshots give no indication

13   who the recipient (or sender) of the text was, other than a first name, and appear to

14   have been selected from a broader set of texts that were not produced.  (See *id.* and

15   Ex. 11.)  Defendants have raised the issues relating to Plaintiffs' production of texts

16   before this Court and it is now the subject of a separate round of briefing and

17   hearing.  (ECF No. 140.)

18   Because the text messages were stored on Mr. Horbaczewski's cell phone as

19   individual data entries in the phone's database (i.e., each a separate document), and

20   were only compiled into a single Excel spreadsheet for purposes of review by

21   defense counsel, the cases Plaintiffs have previously cited do not apply.  *Live*

22   *Nation Merchandise, Inc. v. Miller*, 2014 U.S. Dist. LEXIS 65174 at *7-8 (N.D.

23   Cal. May 9, 2014), for example, concerned redaction of a settlement agreement.  In

24   *Toyo Tire*, the court held only that a party "may not redact otherwise responsive

25   documents because those documents contain irrelevant material."  *Toyo Tire &*

26   *Rubber Co. v. CIA Wheel Group*, 2016 U.S. Dist. LEXIS 184189 at *6-7 (C.D. Cal.

27   Feb. 23, 2016).  *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476 (E.D.

28   Cal. Feb. 3, 2010) concerned the production of multi-volume manuals.  There, the

court held that, while an "integral document which is not separated by express designations" must be produced in full, for multi-volume manuals or large documents separated by express designations, "if entire sections are clearly and convincingly irrelevant, they may be redacted." *Id.* at *2.

The texts that are at issue are not part of an integral document. They are also not part of a single conversational thread, but consist of hundreds of different threads. Moreover, courts have permitted redaction of irrelevant information even within an integral document. *See, e.g., Flintkote Co. v. General Acc. Assur. Co. of Canada*, 2009 WL 1457974 at * 7 (N.D. Cal. May 26, 2009) (redaction of business information "that is not relevant to this litigation"); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *5 (N.D. Cal. Sept. 15, 2014) (redactions to financial spreadsheets).

As explained further below, Defendants have produced all relevant texts as part of their replacement productions, and Plaintiffs are not entitled to any additional text messages between Mr. Horbaczewski and the five individuals at issue.

### B. Plaintiffs Cannot Demonstrate A Compelling Need For The Production Of Mr. Horbaczewski's Private Texts

#### 1. California Law Requires Litigants to Demonstrate a Compelling Need to Justify the Production of Information That Implicates Privacy Rights

"The California Constitution explicitly recognizes the right to privacy and the state courts recognize the right as supplying a qualified privilege to a discovery demand." *Denari v. Superior Ct of Kern County*, 215 Cal. App. 3d 1488, 1500 (Cal. Ct. App. 1989). This right applies equally in federal litigation. As a result, when a discovery demand implicates privacy rights, the court must conduct a balancing test. As the court explained in *Coleman v. Jenny Craig, Inc.*, when California's constitutional right of privacy is involved, the "party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must

1  be so strong as to outweigh the privacy right when these two competing interests

2  are balanced."  2013 WL 2896884, at *10 (S.D. Cal. June 12, 2013)  (citing *Artis v.*

3  *Deere*, 276 F.R.D. 348, 352 (N.D. Cal. 2011).

4  Importantly, "[c]ompelled discovery within the realm of the right of privacy

5  cannot be justified solely on the ground that it may lead to relevant information."

6  *Id.* (citing *Wiegel v. Fedex Ground Package Sys.*, 2007 WL 628041, at *2 (S.D.

7  Cal. Feb. 8, 2007) (internal quotation omitted).  In addition, "[e]ven when

8  discovery of private information is found directly relevant to the issues of ongoing

9  litigation, it will not be automatically allowed; there must then be a careful

10  balancing of the compelling public need for discovery against the fundamental right

11  of privacy."  *Id.* (citing *Wiegel* at *2) (internal quotation omitted).

12  The *Coleman* case is instructive.  In *Coleman*, a class action lawsuit, the

13  Plaintiffs sought production, prior to class certification, of the contact information

14  of putative class members, other records pertaining to putative class members such

15  as payroll records, work schedules, and time cards, and records of the internal

16  discussion board used by Defendants' employees.  2013 WL 2896884, at *2.  The

17  court found that the requested contact information and payroll records, work

18  schedules, and time cards were relevant, but then proceeded to conduct a balancing

19  test to determine if the need for this discovery outweighed the privacy rights of the

20  individuals involved.  *Id.* at *10.  The court held that production of the contact

21  information, work schedules, and time cards would be permitted subject to a

22  protective order, but found that privacy concerns justified withholding Defendants'

23  payroll records from production altogether.  *Id.* at *11.  Significantly, despite the

24  availability of a protective order in *Coleman*, the Court still withheld the payroll

25  records from production due to its concerns about privacy.  *Id.*; *see also Garcia v.*

26  *City of Garden Grove*, 2017 WL 2416207, at *3-4 (C.D. Cal. Feb. 28, 2017)

27  (denying production of personal identifying information, finding the requested

28  discovery was not relevant and that "a simple confidentiality designation would be

insufficient to ameliorate the Court's concerns about the privacy of the implicated individuals, especially given that Plaintiff has not adequately explained why he is entitled to this discovery").

### 2. Plaintiffs Cannot Demonstrate a Compelling Need for Production of Additional Texts Between Mr. Horbaczewski and Ms. DeVito

Plaintiffs cannot demonstrate a compelling need for the production of any additional texts between Mr. Horbaczewski and Ms. DeVito that outweighs the privacy interests of these individuals as required by California law. A review of the texts at issue demonstrates why wholesale production of their texts during the time periods at issue would be inappropriate.  Of the 3,970 texts between Mr. Horbaczewski and Ms. DeVito during this time, over 3,700 are personal and do not relate to Plaintiffs or the DRL at all.  (*See* Ex. C (red highlights indicating personal texts).)  Many of these texts are extremely private, as one would expect. *See, e.g.*, Ex. C at row 312 (entry at 9/10/2015 10:51:59 AM); row 1229 (entry at 7/10/2015 11:46:40 AM); row 2771 (entry at 3/19/2015 8:10:24 PM).  The production of these texts implicates the privacy rights not only of Mr. Horbaczewski, but also of Ms. DeVito (who is not a party to this case).

Earlier in this case Plaintiffs demanded that Defendants produce "[a]ll communications between Mr. Horbaczewski and Ms. DeVito concerning the DRL." (*See* Kuwayti Dec., Ex. 19.)  Although even that would have been a much narrower set of documents than the thousands of texts at issue here, the Court denied Plaintiff's motion.  (*See* ECF No. 86 at 4.)  The Court accepted that Defendants had drawn an appropriate line as to those communications by agreeing to produce all such communications that refer to Plaintiffs, the business plan, or whether Plaintiffs would receive any ownership interest in the DRL.  (*Id.* at 4; Kuwayti Decl. Ex. 19.) Plaintiffs had proposed a series of broad search terms as part of its motion, and Defendants argued to the Court at the time that such search terms would have captured many non-responsive documents, which raised significant privacy

1   concerns since Ms. DeVito was Mr. Horbaczewski's girlfriend at the time and also

2   performed human resources work for DRL.  (*Id.*)  The Court agreed, finding the

3   request "overly broad and not proportional to the needs of the case in that it would

4   require a further search and review of volumes of communications that have no

5   relationship to Plaintiffs' claims." (Dkt. No. 86 at 4.)  The Court specifically noted

6   in its order that Ms. DeVito worked in human resources for DRL and had a

7   personal relationship with Mr. Horbaczewski.  (*Id.*)

8   Defendants have produced all of the texts required by the Court's prior order.

9   (*See* Ex. C (yellow highlights).)  Under the balancing test required by California

10  courts, Plaintiffs cannot demonstrate that any purported need for personal and

11  private texts between Mr. Horbaczewski and Ms. DeVito, which do not pertain to

12  the topics previously ordered by the Court or to DRL at all—is so compelling that it

13  outweighs their privacy interests.

14  Plaintiffs have tried to justify the production of these thousands of additional

15  texts on the basis that they are needed for "context."  But the unproduced text

16  messages are not part of the same conversation and lend no "context" to the

17  responsive text messages that were produced.  There are large series of hundreds of

18  texts spanning weeks at a time and multiple conversational threads where there is

19  no mention of the DRL or Plaintiffs at all—such as the over 800 texts that were

20  exchanged between Mr. Horbaczewski and Ms. DeVito from January 23, 2015 to

21  March 10, 2015.  (*See* Ex. C rows 2926-3740.)[3]

22  In the case of Mr. Horbaczewski' iPhone Notes, in its vacated January 30

23

24      [3] In the now vacated January 30 order, the Court pointed to DRL 007427 as a
25  replacement for "certain text messages" and an example of the way texts should not
    be produced, noting that it "simply shows a date time stamp, and a single text
26  message," and gave "no indications of who the recipient was and no context for the
    conversation at issue."  (Dkt. No. 128 at 6.)  This document was actually one of the
27  entries from Mr. Horbaczewski's iPhone Notes, which is why it did not include this
    type of information.  (Kuwayti Decl. ¶ 21.)
28

Order, the Court recognized that personal communications that are unrelated to this litigation "simply do[] not fall within the scope of discoverable information." (Dkt. No. 128 at 8-9.)  Defendants ask that the Court adopt this approach to Mr. Horbaczewski's texts as well, and limit the production to communications about Plaintiffs or "the DRL's formation, ownership structure, or investment capitalization for the agreed periods." (*Id.* at 10.)  Defendants believe they have already produced all such texts.

Plaintiffs also cannot claim entitlement to the texts simply because they were mistakenly produced.  The Protective Order provides a procedure for the return or destruction of inadvertently produced documents that is not limited to attorney-client privileged material alone.  Paragraph 11 of the Protective Order is entitled "INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL" and provides that: "When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege *or other protection*, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B)." (ECF No. 65 ¶ 11 (emphasis added).)[4]  The inclusion of the terms "otherwise protected material" and "or other protection" clearly indicate that the provision extends beyond attorney-client privileged documents.  As noted above, the California Constitution recognizes the right to privacy, and documents that implicate privacy rights are entitled to a "qualified privilege" under California law. *Denari*, 215 Cal. App. 3d at 1500.  Defendants were entitled to the return or destruction of the inadvertently produced texts, which contain extremely personal information that implicates the privacy rights of  Mr. Horbaczewski and third parties.  The Court also indisputably has the power to limit production of the documents under Federal Rule of Civil

---

[4] The reference to Rule 26(b)(5)(B) concerns the process to be followed in the event of inadvertent production.  It does not limit Paragraph 11 of the Protective Order solely to "privileged" or "trial-preparation" materials.

1    Procedure 26(c).

2               **3.      Plaintiffs Cannot Demonstrate a Compelling Need for
                          Production of Additional Texts Between**
3                         **Mr. Horbaczewski and Mr. Mazzeo**

4           Plaintiffs similarly cannot demonstrate a compelling need for the production

5    of all text messages between Mr. Horbaczewski and Mr. Mazzeo during the time

6    periods at issue.  As the Court has recognized, Mr. Horbaczewski and Mr. Mazzeo,

7    a third party like Ms. DeVito, "have been friends since college and, therefore, share

8    communications unrelated to the DRL and/or this lawsuit." (Dkt No. 128 at 6.)

9           Plaintiffs previously moved to compel all communications with Mr. Mazzeo.

10   Defendants only agreed to produce communications that referred to Plaintiffs,

11   Plaintiffs' role in the formation of the DRL, the possibility of giving Mr. Mazzeo a

12   share of the DRL, or a potential investment by Mr. Mazzeo personally in the DRL.

13   (See Ex. 20, Aug. 20, 2018 joint discovery dispute email.)  The Court agreed with

14   Defendants' proposed scope of production and denied Plaintiffs' request for

15   additional communications.  (Dkt. No. 69 at 2-3.)

16          Plaintiffs also sought all communications between DRL and Lower Case

17   Capital, LLC, Mr. Mazzeo's former venture capital firm, concerning potential

18   investment by Lowercase Capital in the DRL.  (*See* Ex. 13, RFP No. 37.)

19   Defendants indicated that all such communications had been produced, and the

20   Court did not order any further production.  (Dkt. No. 86 at 3.)

21          Plaintiffs have more than complied with the Court's prior orders.  There were

22   77 texts between Mr. Horbaczewski and Mr. Mazzeo during the specified time

23   period.  (*See* Exs. F-G.)  While Defendants initially limited their production of texts

24   with Mr. Mazzeo to those that had been ordered by the Court, to resolve a dispute

25   between the parties relating to the events that took place at the December 3 hearing.

26   Defendants expanded that production shortly before Mr. Mazzeo's deposition to

27   include all text messages that related to DRL.  (*See* Kuwayti Decl. ¶ 11.)

28   Defendants have produced 33 of the 77 texts, which comprise all text messages

1  pertaining to the DRL or Plaintiffs.  (*See* Exs. F-G (yellow highlights indicating

2  produced texts).)  The text messages that were not produced have no relation to

3  DRL or Plaintiffs.  Any purported need for the text messages does not outweigh the

4  privacy interests of Mr. Horbaczewski and Mr. Mazzeo.

5  **C.  Plaintiffs Are Not Entitled to Any Additional Texts Between
      Mr. Horbaczewski and Mr. Gury, Mr. Smith, and
6      Mr. Budding**

7  Mr. Gury, Mr. Smith, and Mr. Budding all work for the DRL.  Not

8  surprisingly, Mr. Horbaczewski's texts with them relate to the DRL, and pertain to

9  many different issues concerning the company.  Defendants never agreed to

10  produce all of Mr. Horbaczewski's communications with these DRL employees

11  regarding the DRL.  Plaintiffs never served such a broad request, nor would such a

12  request have been proportional to the needs of the case given the extent of the

13  involvement of these three individuals with the company, which goes well beyond

14  the issues relevant to the litigation.

15  Defendants agreed to search Mr Horbaczewski's texts with Mr. Gury, Mr.

16  Smith and Mr. Budding in response to specific requests only.  (*See* Kuwayti Decl.

17  Ex. 8 (Resp. to RFP No. 2) at 5 ("Defendants will supplement their response to this

18  request by undertaking a reasonable search for non-privileged text/SMS messages

19  exchanged between Plaintiffs and Nicholas Horbaczewski, Trevor Smith, and Ryan

20  Gury.")  Mr. Horbaczewski did not even agree to produce all texts that referred to

21  the Plaintiffs (*see Id.* Ex. 8 (Resp. to RFP No. 2), at 5) although he has since done

22  so.  (*See* Exs. A-B, D-E, H-I (yellow highlights indicating production).)

23  Plaintiffs have not demonstrated any need for the production of additional

24  texts with Mr. Gury, Mr. Smith, and Mr. Budding that have nothing to do with

25  Plaintiffs, simply because such texts may relate to some aspect of the DRL or drone

26  racing.  Although Plaintiffs have alleged that production of additional texts is

27  needed to provide context to the texts that have already been produced, the vast

28  majority of the texts between Mr. Horbaczewski and Mr. Gury, Mr. Smith, and Mr.

Budding that were not produced have nothing to do with Plaintiffs or the issues

relevant to this litigation.  They again include dozens, if not hundreds, of

conversational threads that have nothing to do with Plaintiffs or the issues in the

lawsuit (*See* Exs. A-B, D-E, H-I.)  Such a broad scope of production is not

proportional to the needs of the case and would include texts that contain highly

confidential information relating to the DRL that has nothing to do with this case

and that would harm the DRL if disclosed.  (Horbaczewski Decl. at ¶ 6.)  While the

production of confidential information may be required when it is relevant to the

case, that information should be protected when it is not pertinent to the issues and

its production is not proportional to the needs of the case.  *See Sarieddine v. D&A

Distribution, LLC*, 2018 WL 5094937, at *2 (C.D. Cal. Apr. 6, 2018) (denying

production of international sales information as not relevant and not proportional).

At most, the production of any additional texts with these three individuals should

be limited to the same scope the Court previously ordered for the Note entries in its

January 30, 2019 Order–i.e., texts "reflecting communications . . . about Plaintiffs"

or "concerning the DRL's formation, ownership structure, or investment

capitalization for the agreed periods."  (ECF No. 128 at 10.)

## II.   PLAINTIFFS ARE NOT ENTITLED TO THE PRODUCTION OF ANY ADDITIONAL NOTES

Plaintiffs are not entitled to the production of any additional Notes.

Defendants have produced all Note entries reflecting communications with or about

Plaintiffs, or with Cristina DeVito, Matt Mazzeo, Ryan Gury, Trevor Smith, and

Tony Budding concerning the DRL's formation, ownership structure, or investment

capitalization for the time periods January 1, 2015 to September 30, 2015, and June

30, 2017 through July 31, 2017.  (Kuwayti Decl. ¶ 18.)  Plaintiffs never asked Mr.

Horbacewski to produce all of his documents regarding "DRL" or "drone racing"

nor could they permissibly have done so, as any such request would be overly

broad and unduly burdensome and would result in the production of nearly all

business-related documents in Mr. Horbaczewski's possession given his position as CEO of the DRL.

Plaintiffs also cannot demonstrate a compelling need for additional Note entries that outweighs the privacy rights of Mr. Horbaczewski and third parties. As this Court properly recognized in its January 30, 2019 Order, the Note entries are largely personal in nature (ECF No. 128, at 8-9) and consist of three years of entries made by Mr. Horbaczewski primarily for personal reasons. (*See* Horbaczewski Decl. at ¶ 11.) These entries include Mr. Horbaczewski's medical information, doctor's appointments, TSA and frequent flier IDs, a wedding speech, Mr. Horbaczewski's vitamin regime, and other private material, including the private information of third parties. (*See id.* ¶¶ 11, 13.) The production of this private and personal information, none of which have anything to do with the case or Plaintiffs, would severely prejudice Mr. Horbaczewski and violate his privacy interests as well as those of third parties. (*See id.* ¶ 11.) Other Note entries that are unrelated to the Plaintiffs or the DRL's formation, ownership structure, or investment capitalization are highly confidential and could harm the DRL if disclosed. (*See id.* at ¶¶ 13-14.) In addition, two of the entries are privileged. (*Id.* at ¶ 12.) Plaintiffs cannot demonstrate why the production of these additional Note entries is proportional or relevant to any claim or defense. Accordingly, to the extent Plaintiffs are seeking the production of additional Notes (beyond what Defendants have already produced, including in response to the Court's now-vacated January 30 Order), that request should be denied.

Plaintiffs have previously mischaracterized the Notes in an attempt to argue that Defendants selectively redacted relevant information. Plaintiffs in particular pointed to a January 13, 2015 entry that states "I've also been contacted by a VC firm I know about a co-founder role in a start-up focused on content on consumer tech. Further meetings next week." (Dkt. No. 128 at 14, Plaintiffs' Statement at 3.) Plaintiffs allege that this is highly relevant, and supports their contention that they

were co-founders of DRL, because their meeting with Mr. Horbaczewski occurred the following week.  (*Id.*)  Plaintiffs are incorrect.  It is clear from the face of the entry that it does not relate to the formation of a drone racing league, which cannot be described as "a start-up focused on content on consumer tech."  Moreover, Mr. Horbaczewski has explained unequivocally that this entry "does not relate to Mr. Laub, Mr. Kanes, Mr. Mazzeo, or drone racing, but instead refers to a meeting [he] had with Rezven Partners, a venture capital firm in Newport Beach, California, in regards to a job offer for a co-founder role in a media company related to consumer technology and amateur sports, including gymnastics."  (Horbaczewski Decl. at ¶ 16.)  Emails confirm that on January 11, shortly before the January 13 Note entry was made, Mr. Horbaczewski agreed to meet with individuals associated with Rezven Partners in Orange County on January 21.  (*See id.* ¶ 16, Exs. A-C.)

### III.   PLAINTIFFS' COUNSEL VIOLATED THE DEC. 3 COURT ORDER

Plaintiffs' counsel violated the Court's December 3 Court order by reviewing the original copy of the iPhone Notes that was originally produced on or around December 13.

The December 3 order broadly referred to "documents and text messages from Defendant's cell phone that were produced inadvertently."  (Dkt No. 95 at 1.) The Order provided that "pending determination by Judge Stevenson as to whether additional restrictions will be set, Plaintiff's counsel shall not review the disputed documents[.]"  (*Id.*)[5]  As reflected in the transcript of the December 3 hearing, Defendants expressly identified the original, inadvertently produced version of the Notes that was marked as an exhibit at Mr. Horbaczewski's deposition as one of the

---

[5] The Order also required Defendants' counsel to confirm that the disputed production did not include texts from Mr. Mazzeo's phone that had not been produced.  (Dkt. No. 95 at 1.)  This issue is not relevant to Plaintiffs' counsel's improper review of the Notes on December 13, and is addressed in detail in the Kuwayti Declaration at ¶ 11.

inadvertently produced documents that needed to be destroyed, and that Plaintiffs' counsel should be precluded from reviewing until the dispute could be formally resolved by the Court. *See Kuwayti Decl. Ex.* 18 at 30-32.

There is no dispute that Plaintiff's counsel reviewed the original, inadvertently produced document in detail on or about December 13 to identify portions of the Notes that he contended should be produced. *See* Kuwayti Decl. Ex. 4 (identifying 20 different entries spread out through the Notes). Plaintiff's counsel admitted that he reviewed the document. (*See id.* ¶ 8.) The fact that the Notes had been marked as an exhibit at Mr. Horbaczewski's deposition is not an excuse for reviewing them. The deposition exhibit is what triggered the parties' dispute and was identified as an inadvertently produced document in Defendants' December 1 letter, at the December 3 hearing, and in correspondence with the court reporter asking that the document not be shared with Plaintiffs' counsel, and it was prominently featured in a draft joint email concerning the dispute that was sent to Plaintiffs on December 9. (*See* Kuwayti Decl. ¶¶ 5-9 and Exs. 3-4, 6.)

This violation of the protective order caused Defendants to incur significant expense in bringing an emergency motion before the Court, and was a violation of privacy rights given the sensitive personal information that Plaintiffs' counsel knew was contained in the Notes. There was no legitimate reason to review this information when the Court had set a process for meet and confer and resolution of any dispute over the Notes before the Court.

This was the second violation of a court order with respect to these documents. Plaintiffs also violated the Protective Order by failing to return the inadvertently produced documents containing protected information when they were asked to do so in October of 2015. (*See* Dkt No. 65 ¶ 11).

## IV.   PLAINTIFFS SHOULD BE REQUIRED TO CERTIFY THAT ALL OF THE INADVERTENTLY PRODUCED DOCUMENTS HAVE BEEN DESTROYED

Defendants ask that Plaintiffs be ordered to provide written certification of

the destruction of all six files in the form provided in section 13 of the protective order. (*See* ECF No. 65 ¶ 13.) This certification would be required at the end of the case in any event, and it is appropriate to provide it now given the sensitivity of the files and Plaintiffs' violation of the protective order and December 3 order.

In its January 30 Order, with respect to the Notes and the Texts, the Court required Plaintiffs to "certify by signed declaration or affidavit that all copies of the Disputed Production or any portions thereof in Plaintiffs' possession, custody or control, have been destroyed." (Dkt No. 128 at 10.) Plaintiffs' counsel provided a certification with respect to the originally produced Notes and texts, but not with respect to "any portions thereof" in their possession, custody, or control. Plaintiffs should be required to provide this further certification as to all portions of the documents, except any replacement documents provided by Defendants or ordered by the Court.

In addition, Defendants ask that Plaintiffs be required to provide the same certification with respect to the four other spreadsheets containing the contents of the other four applications that were inadvertently produced. Defendants have relied upon Plaintiffs' representation that these other documents have been destroyed in not filing a motion concerning them. (Kuwayti Decl. ¶ 7.) If Plaintiffs have destroyed these documents as they have represented, they should have no difficulty providing the certification.

## CONCLUSION

Defendants have already produced all of the texts and Notes to which Plaintiffs are entitled. The additional information that Plaintiffs seek is not proportional to the needs of the case or relevant, and encompasses a massive amount of information that is highly personal and private, as well as information that is privileged and confidential. Defendants should not be required to produce anything further.

1    Dated:  February 25, 2019             MORRISON & FOERSTER LLP

2

3                                          By: /s/ Kenneth A. Kuwayti
                                              Kenneth A. Kuwayti

4                                          Attorneys for Defendants
                                           NICHOLAS HORBACZEWSKI and
5                                          DRONE RACING LEAGUE, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28