1  KENNETH A. KUWAYTI (CA SBN 145384)
   KKuwayti@mofo.com
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California  94304-1018
   Telephone: 650.813.5600
4  Facsimile: 650.494.0792

5  NICHOLAS RYLAN FUNG (CA SBN 312400)
   NFung@mofo.com
6  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
7  Los Angeles, California  90017-3543
   Telephone: 213.892.5200
8  Facsimile: 213.892.5454

9  Attorneys for Defendants
   NICHOLAS HORBACZEWSKI and
10 DRONE RACING LEAGUE, INC.

11

12                 UNITED STATES DISTRICT COURT

13               CENTRAL DISTRICT OF CALIFORNIA

14                      WESTERN DIVISION

15

16 JUSTICE LAUB and DANIEL            Case No. 2:17-CV-06210 JAK (KSx)
   KANES,
17                                    **REPLY BRIEF IN SUPPORT OF
                 Plaintiffs,          DEFENDANTS NICHOLAS
18                                    HORBACZEWSKI AND DRONE
        v.                            RACING LEAGUE, INC.'S
19                                    MOTION RE: DISPUTED
   NICHOLAS HORBACZEWSKI,             DOCUMENTS**
   DRONE RACING LEAGUE, INC.,
20 and DOES 1 TO 10,

21               Defendants.

22 NICHOLAS HORBACZEWSKI,

23                                    Date:      April 10, 2019
                 Counter-Claimant,    Time:      10:00 a.m.
24                                    Courtroom: 580
        v.
25                                    Hon. Karen L. Stevenson
   DANIEL KANES,
26                                    **JURY TRIAL DEMANDED**
                 Counter-Defendant.

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.     PLAINTIFFS ARE NOT ENTITLED TO THE PRODUCTION OF ANY ADDITIONAL TEXT MESSAGES ..................................................... 2

      A.     This Is Not A Motion For Reconsideration .......................................... 2

      B.     Mr. Horbaczewski's Text Messages Are Not A Single Document ............................................................................................. 3

      C.     Plaintiffs Are Not Entitled To Any Additional Production Of Mr. Horbaczewski's Private Texts ..................................................... 6

           1.     Plaintiffs Do Not Dispute That California Law Requires Litigants to Demonstrate a Compelling Need For Discovery That Implicates Privacy Rights ................................. 6

           2.     Defendants Did Not Waive Their Privacy Objections ............... 7

           3.     Plaintiffs Cannot Demonstrate A Compelling Need For The Production Of Additional Texts Between Mr. Horbaczewski and Ms. DeVito or Mr. Mazzeo ......................... 9

           4.     A Protective Order Is Insufficient to Protect the Privacy Rights of Mr. Horbaczewski's and Third Parties ..................... 13

      D.     Plaintiffs Are Not Entitled to Any Additional Texts Between Mr. Horbaczewski and Mr. Gury, Mr. Smith, and Mr. Budding ........ 16

II. THE PARTIES AGREE ON THE SCOPE OF PRODUCTION OF THE NOTES ......................................................................................................... 17

III.    PLAINTIFFS' COUNSEL VIOLATED THE DEC. 3 COURT ORDER ...................................................................................................... 18

IV.    PLAINTIFFS SHOULD BE REQUIRED TO CERTIFY THAT ALL OF THE INADVERTENTLY PRODUCED DOCUMENTS HAVE BEEN DESTROYED ................................................................................... 22

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Farber & Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006) ........................................................................ 15

*Coleman v. Jenny Craig, Inc.*,
  2013 WL 2896884 (S.D. Cal. June 12, 2013) ............................................... 13, 14

*Evon v. Law Offices of Sidney Mickell*,
  2010 WL 455476 (E.D. Cal. Feb. 3, 2010) .......................................................... 4

*Flintkote Co. v. General Acc. Assur. Co. of Canada*,
  2009 WL 1457974 (N.D. Cal. May 26, 2009) ...................................................... 6

*Garcia v. City of Garden Grove*,
  2017 WL 2416207 (C.D. Cal. Feb. 28, 2017) ..................................................... 13

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
  2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) ..................................................... 6

*Live Nation Merchandise, Inc. v. Miller*,
  2014 U.S. Dist. LEXIS 65174 (N.D. Cal. May 9, 2014) ...................................... 4

*Mas v. Cumulus Media Inc.*,
  2010 WL 4916402 (N.D. Cal. Nov. 22, 2010) ...................................................... 5

*Nguyen v. Baxter Healthcare Corp.*,
  275 F.R.D. 503 (C.D. Cal. 2011) ........................................................................ 14

*Oppenheimer v. City of La Habra*,
  2016 WL 9223801 (C.D. Cal. Aug. 16, 2016) ...................................................... 5

*Toranto v. Jaffurs*,
  2018 WL 3752760 (S.D. Cal. Aug. 6, 2018) ........................................................ 4

*Toyo Tire & Rubber Co. v. CIA Wheel Group*,
  2016 U.S. Dist. LEXIS 184189 (C.D. Cal. Feb. 23, 2016) ................................... 4

*Vind v. Prudential Insurance Co. of Am.*,
  2009 WL 10673372 (C.D. Cal. Oct. 13, 2009) ..................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Product*
    *Liab. Litig.*,
    914 F.3d 623 (9th Cir. 2019) ............................................................... 2, 3

*Zuniga v. Western Apartments*,
    2014 WL 2599919 (C.D. Cal. Mar. 25, 2014) .................................... 15

**Other Authorities**

California Constitution ................................................................................ 6, 7

Federal Rule of Civil Procedure 26(c) ...................................................... 6

**INTRODUCTION**

Plaintiffs' opposition treats this motion as though it is a motion for reconsideration of the Court's prior order.  It is not.  That order was vacated, and Defendants do not have the burden to show that reconsideration of the vacated order is "warranted" as Plaintiffs repeatedly claim.  Defendants have already produced all of the texts that pertain to the issues in this case.  Plaintiffs fail to provide any substantive reason why they are entitled to the production of thousands of additional irrelevant texts—the vast majority of which are highly personal and private communications between Mr. Horbaczewski and his former girlfriend.

Plaintiffs do not dispute that under California law a party is required to show a compelling need for the production of such private information that outweighs the privacy rights of Mr. Horbaczewski and third parties.  Plaintiffs have no hope of meeting this standard because the texts do not relate to the issues in this case (or even to the DRL).  So Plaintiffs instead try to argue that Defendants' privacy rights have been waived.  But the document requests that they rely upon did not call for the production of the private information at issue here, so there was no need to make a privacy objection.  When Plaintiffs did seek the production of private information—notably communications with Ms. DeVito—Defendants immediately raised a privacy objection and prevailed before the Court.

Plaintiffs have no answer to the fact that the texts are not stored as a single document on the phone.  They cite no authority for their contention that all the texts must now be produced because they were consolidated for litigation review, and their claim that all of the texts are required for context is demonstrably false.  They are also in no position to complain since the individual plaintiffs searched their own texts for production and have yet to produce a single text between themselves.

Plaintiffs' opposition does reveal that the parties have no dispute over the scope of the Court's prior order regarding the Notes.  The parties agree that the portion of the vacated order governing the Notes should be reinstated.

**ARGUMENT**

## I.   PLAINTIFFS ARE NOT ENTITLED TO THE PRODUCTION OF ANY ADDITIONAL TEXT MESSAGES

### A.   This Is Not A Motion For Reconsideration

Plaintiffs apply the wrong legal standard.  Plaintiffs treat this motion as though it seeks reconsideration of the Court's prior order.  It does not.  The Court vacated its prior order to allow the parties to fully brief this issue.  (Dkt. No. 143.) Defendants do not have the burden to show that the vacated order is incorrect.

This erroneous legal standard permeates Plaintiffs' opposition brief. Plaintiffs have an entire section entitled "DEFENDANTS HAVE NOT ARTICULATED ANY REASON TO JUSTIFY THE COURT'S MODIFYING ITS PRIOR ORDER." (Dkt. No. 171 at 8) (capitalization in original).  Similarly, throughout their brief Plaintiffs mistakenly argue that Defendants must prove that reconsideration is warranted. *See, e.g., id.* ("Defendants present no cogent reason that would justify reconsideration of the prior order"); *id.* at 9 ("No intervening events have occurred that would justify reconsideration of the Prior Order"); *id.* at 5 ("Defendants provide no reason for the Court to reconsider its prior holding"); *id.* at 14 ("Defendants have provided no authority or argument to warrant reconsideration of the Prior Order.")

Because they misconstrue the standard, many times the only argument Plaintiffs make in their opposition is that the vacated order decided a point in their favor.  This passage is typical: "Again, the Court has already rejected this argument and Defendants have provided no basis for reconsideration."  (Dkt. No. 171 at 8.) But once an order is vacated, it no longer has any effect. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Product Liab. Litig.*, 914 F.3d 623, 647 (9th Cir. 2019) ("The district court already vacated the Lien Order and its injunction, and so they are no longer in effect.").  There is no ruling to reconsider, and no holding rejecting an argument to overturn.  Plaintiffs even

contend that Defendants are precluded from presenting arguments based on the vacated order.  (*See, e.g., id.* at 8: "Defendants' improper attempt to reargue the facts should not be countenanced by the Court.")  But the whole point of the Court's order was to allow the parties to brief this issue again, comprehensively.  (*See* Dkt. No. 143.)  It cannot be "improper" to do so.

This motion should be decided on the merits, with the benefit of the full briefing that the Court did not previously have.  Plaintiffs' opposition fails to establish, on the merits, that they are entitled to any additional texts.

## B.   Mr. Horbaczewski's Text Messages Are Not A Single Document

Defendants submitted a declaration from the electronic discovery manager who was involved with the production of the texts from Mr. Horbaczewski's phone explaining how the texts are not contained in a single document and are instead stored as separate individual entries or data elements spread throughout a database on the phone.  (Dkt. No. 149-27 ¶¶ 4, 6.)  Texts exchanged with a particular individual are not stored in a distinct portion of the database, but are co-mingled with the texts exchanged with other individuals.  (*Id.*) In this case the texts were compiled into an Excel spreadsheet solely for the purpose of review by defense counsel to determine which were responsive to Plaintiffs' request or subject to attorney-client privilege.  (*Id.* ¶¶ 4, 6.)

Plaintiffs do not challenge this testimony and did not submit any evidence in rebuttal.  Instead, they argue that the text messages should be considered as a single document and cannot now be "redacted" because they were "already produced in a single document." (Dkt. No. 171 at 10-11.)  Plaintiffs have not cited any case law that supports their erroneous position.  Plaintiffs cite to a portion of the Court's now vacated January 30 order that discusses the redaction of documents, but the Court did not previously have the benefit of Defendants' evidence and forensic declaration demonstrating that the texts are not all part of a single document.  (*See*

1   Dkt. No. 128 at 3 (stating Court did not consider Defendants' supporting

2   declarations and exhibits).)

3       In their December brief, Plaintiffs cited to several cases discussing the

4   propriety of making redactions to a single, integrated document, which the Court

5   also cited in its now vacated order.  (*See* Dkt. No. 128 at 12, Plaintiffs' Statement at

6   1; Dkt. No. 128 at 7.)  The rationale of these cases does not apply to individual text

7   messages that were compiled into a spreadsheet solely for purposes of document

8   review for litigation.  *See Live Nation Merchandise, Inc. v. Miller*, 2014 U.S. Dist.

9   LEXIS 65174 at *7-8 (N.D. Cal. May 9, 2014) (addressing redaction of a

10  settlement agreement); *Toyo Tire & Rubber Co. v. CIA Wheel Group*, 2016 U.S.

11  Dist. LEXIS 184189 at *6-7 (C.D. Cal. Feb. 23, 2016) (simply holding that a party

12  "may not redact otherwise responsive documents because those documents contain

13  irrelevant material"); *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at

14  *2 (E.D. Cal. Feb. 3, 2010) (addressing multi-volume manuals and holding that

15  multi-volume manuals or large documents separated by express designations may

16  be redacted "if entire sections are clearly and convincingly irrelevant").  Defendants

17  addressed each of these cases in their opening brief.  (*See* Dkt. No. 149-1 at 9-10.)

18  Plaintiffs have no response.

19      Here not only are the texts not part of an integral document, they are also not

20  part of a single conversational thread.  They consist of hundreds of different

21  conversational threads that took place over many months, which are linked only by

22  the fact that the texts were exchanged with the same individual.  Just as a party is

23  not required to produce all of its emails with an individual because one email is

24  relevant, a party does not have to produce all of its texts with an individual because

25  one text is relevant.  *See, e.g., Toranto v. Jaffurs*, 2018 WL 3752760 at *2-3 (S.D.

26  Cal. Aug. 6, 2018) (ordering the production of only those texts responsive to party's

27  requests for production).  Plaintiffs' contention that "unilateral redactions on the

28  basis of relevance are improper" simply does not apply here.  (*See* Dkt. No. 171 at

11.)  The issue is whether Plaintiffs are entitled to each of the individual text messages in the first place.  Plaintiffs' position is also particularly hypocritical given that Plaintiffs' counsel apparently left it to Plaintiffs themselves to search through their own texts and produce only what they deemed to be relevant. (Dkt. No. 152-1 at 23.)

Moreover, even if the texts were somehow considered to be part of a single, integrated document—despite the fact that all the evidence is to the contrary— Plaintiffs' cases only address the issue of redactions solely for relevance.  Courts routinely permit redaction of private and personal information from documents. *See Vind v. Prudential Insurance Co. of Am.*, 2009 WL 10673372, at *5 n.6 (C.D. Cal. Oct. 13, 2009) (referring to order permitting defendant to "withhold from production those portions of the claims files which are not directly relevant to the calculation of the amount of benefits and offsets to benefits, including purely medical information" and stating that defendant "may redact all personal identifying information from the claims files prior to production."); *Mas v. Cumulus Media Inc.*, 2010 WL 4916402, at *2 (N.D. Cal. Nov. 22, 2010) (permitting redactions for confidential or private information from calendar documents and personal expenses from expense documents); *Oppenheimer v. City of La Habra*, 2016 WL 9223801, at *2 (C.D. Cal. Aug. 16, 2016) ("Because such personal identifying and financial information is not relevant, the Court finds that such redactions are appropriate and may be made.")  Such redactions are particularly appropriate for texts on a phone.  In *People v. Valdivia,* even in the context of a probation order for an individual convicted of felony domestic violence, the court refused to allow blanket searches of the defendant's cell phone, emphasizing the "potential for a significant intrusion into defendant's private affairs," including "intimate correspondence with family and friends."  *See*, 16 Cal. App. 5th 1130, 1144-45 (2017).  Plaintiffs have no right to the production of Mr. Horbaczewski's private and personal information here.

In addition— although again, "redaction" is not the issue here—even when it comes to relevance, courts have permitted redaction of irrelevant information within an integrated document.  *See Flintkote Co. v. General Acc. Assur. Co. of Canada*, 2009 WL 1457974 at * 7 (N.D. Cal. May 26, 2009) (redaction of business information "that is not relevant to this litigation"); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *5 (N.D. Cal. Sept. 15, 2014) (redactions to financial spreadsheets).  Defendants cited to these cases in its opening brief.  (Dkt. No. 149-1 at 10.)  Plaintiffs have not responded to this authority either.[1]

### C.   Plaintiffs Are Not Entitled To Any Additional Production Of Mr. Horbaczewski's Private Texts

#### 1.   Plaintiffs Do Not Dispute That California Law Requires Litigants to Demonstrate a Compelling Need For Discovery That Implicates Privacy Rights

The parties are in agreement on the law that applies generally to the production of private information in California.  Defendants explained in their opening brief that the California Constitution "explicitly recognizes the right to privacy and the state courts recognize the right as supplying a qualified privilege to a discovery demand."  (Dkt. No. 149-1 at 10 (citing *Denari v. Superior Ct of Kern*

---

[1] As Defendants stated in their opening brief, the Court has the inherent power to limit the production of documents under Federal Rule of Civil Procedure 26(c), and Paragraph 11 of the Protective Order explicitly requires the return of inadvertently produced material that is subject to a claim of privilege "*or other protection*." (Dkt. No. 65 ¶ 11 (entitled "INADVERTENT PRODUCTION OF PRIVILEGED *OR OTHERWISE PROTECTED MATERIAL*") (emphasis added).) (Dkt. No. 149-1 at 14.)  The highlighted language would be superfluous if the protective order only governed inadvertently produced attorney-client privileged documents. (*Id.*)  Plaintiffs do not even try to reconcile this language with their position that the Protective Order only refers to attorney-client privileged documents.  The Order at least protects private communications that are subject to California's "qualified" privilege and confidential business information that was inadvertently produced.  It cannot be that there is no recourse for the inadvertent electronic production of such information.

*County*, 215 Cal. App. 3d 1488, 1500 (Cal. Ct. App. 1989)).)  As a result, when California's constitutional right of privacy is involved, the "party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are balanced." (*Id*. (citing *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *10 (S.D. Cal. June 12, 2013)).)  Plaintiffs do not dispute these legal principles.

As discussed below, Plaintiffs cannot demonstrate a compelling need for the production of any additional texts between Mr. Horbaczewski and Ms. DeVito or Mr. Mazzeo that outweighs their privacy rights as required by California law.

**2.      Defendants Did Not Waive Their Privacy Objections**

Plaintiffs argue that Defendants waived their privacy rights by not objecting to Plaintiffs' requests for production.  (Dkt. No. 171 at 9-10, 10 n.2.)  But Defendants did not have a reason to object on privacy grounds to Plaintiffs' requests for production because the requests did not seek the production of the private (and irrelevant) texts that are at issue here.  The texts were only produced by mistake.

Plaintiffs point to Requests for Production Nos. 1, 2, 4, 6, 7, 9, 10, 14, 16, and 22.  (Dkt. No. 171 at 9-10, 10 n.2.)  Request No. 1 ("all documents concerning Plaintiffs"), Request No. 2 ("all documents concerning communications between you and Plaintiffs") and Request No. 4 ("all documents concerning services provided to Plaintiffs to you") all relate to Plaintiffs.  Defendants are not raising any privacy objection to texts that relate to the Plaintiffs.  In response to these requests, Defendants agreed to produce emails from Mr. Horbaczewski and three DRL employees—Trevor Smith, Ryan Gury, and Anthony Budding—for any communications concerning Plaintiffs for Request No. 1 (Dkt. No. 171-3 at 3-4), all communications between Mr. Horbaczewski, Mr. Smith, and Mr. Gury with Plaintiffs, including text messages, for Request No. 2  (*id.* at 4-5) and documents from the emails of Mr. Horbaczewski, Mr. Smith, Mr. Gury, and Mr. Budding that

concern Plaintiffs, for request No. 4.  (*Id.* at 6.)

Other requests sought business information relating to the DRL.  Request No. 6 sought "all documents concerning any business plans, whether in draft or final form, related to drone racing and/or DRL," and, as stated in Defendants' response to this request, after meet and confer, Defendants understood this request to only seek production of business plan documents and produced such documents.  (*Id.* at 7.)  Other requests identified by Plaintiffs are similar.  (*See* (Dkt. No. 171-3 at 10, 14, 19 (Request Nos. 9 and 10 (travel by Mr. Horbaczewski or the DRL to California since January 1, 2015); Request No. 14 (all documents concerning any offer, plan, or agreement to develop, produce, and/or broadcast any content concerning drone racing, including with ESPN); Request No. 22 (all documents concerning any potential, proposed, or actual meetings with Plaintiffs)).)

The one exception on this list is Request No. 16, which sought "all documents concerning communications with Matthew Mazzeo." (*Id.* at 15.) Defendants refused to produce Mr. Mazzeo's personal information in response to this request.  Defendants specifically objected to the request as overbroad and not proportional to the needs of the case to the extent that it sought all communications with Mr. Mazzeo regardless of subject matter or their relation to the events at issue in the lawsuit and on the grounds that Mr. Mazzeo was a personal friend of Mr. Horbaczewski.  (*Id.*)  Defendants later supplemented their response to agree to produce communications between Mr. Horbaczewski and Mr. Mazzeo regarding Plaintiffs.  (*Id.*)  And over the course of the parties' meet and confer, Defendants expanded this to include communications that referred to Plaintiffs' role in the formation of the DRL, the possibility of giving Mr. Mazzeo a share of the DRL, or a potential investment by Mr. Mazzeo in the DRL.  (*See* Dkt. No. 149-22, Kuwayti Decl. Ex. 20, Aug. 20, 2018 joint discovery dispute email.)  The Court agreed with Defendants' proposed scope of production and denied Plaintiffs' request for additional communications.  (Dkt. No. 69 at 2-3.)

1    Notably, Plaintiffs do not make any reference to request No. 44, the request

2    directed to Mr. Horbaczewski's communications with Ms. DeVito.  That request

3    was limited to communications "concerning the DRL" (Dkt. No. 149-11 at 15)—a

4    much narrower set of documents than the thousands of personal and private texts at

5    issue here, and did not require a privacy objection.  But when Plaintiffs demanded

6    that defendants conduct an electronic search in response to this request using broad

7    search terms (such as "role," and "partner") that could potentially bring in personal

8    and private communications, Defendants immediately raised a privacy objection, as

9    reflected in the parties' joint email to the Court.  (*See* Dkt. No. 149-21 at 4.)  The

10   Court denied Plaintiffs' request, and accepted that Defendants had drawn an

11   appropriate line as to those communications by agreeing to produce all such

12   communications that refer to Plaintiffs, the business plan, or whether Plaintiffs

13   would receive any ownership interest in the DRL.  (Dkt. No. 149-1 at 12; Dkt. No.

14   86 at 4.)  The Court found that Plaintiffs' request was "overly broad and not

15   proportional to the needs of the case in that it would require a further search and

16   review of volumes of communications that have no relationship to Plaintiffs'

17   claims." (Dkt. No. 86 at 4.)  Moreover, the Court specifically noted in its order that

18   Ms. DeVito worked in human resources for DRL and had a personal relationship

19   with Mr. Horbaczewski.  (*Id.*)

20   Because the requests to which Defendants did not object did not seek the

21   personal and private communications of Mr. Horbaczewski that are at issue, the

22   cases cited by Plaintiffs do not apply.  Moreover, these requests also implicate the

23   privacy rights of Ms. DeVito and Mr. Mazzeo, who are not parties to this case and

24   did not have an opportunity to object to the requests.

25           **3.    Plaintiffs Cannot Demonstrate A Compelling Need
              For The Production Of Additional Texts Between Mr.
26           Horbaczewski and Ms. DeVito or Mr. Mazzeo**

27   Defendants have already produced to Plaintiffs all texts between Mr.

28   Horbaczewski and Ms. DeVito that refer to Plaintiffs, the business plan, or whether

1    Plaintiffs would receive any ownership interest in the DRL, as well as all texts

2    between Mr. Horbaczewski and Mr. Mazzeo that relate to Plaintiffs or the DRL.

3    Defendants produced these texts to Plaintiffs in replacement versions of the original

4    spreadsheets.  Plaintiffs already have in their possession all of the relevant texts

5    between Mr. Horbaczewski and Ms. DeVito and Mr. Mazzeo, and Plaintiffs cannot

6    demonstrate a compelling need for the production of any additional texts between

7    them that outweighs the privacy interests of these individuals as required by

8    California law.

9         The additional texts that Plaintiffs now seek comprise thousands of personal

10   and private texts between Mr. Horbaczewski and two third parties that have nothing

11   to do with Plaintiffs.  Plaintiffs are incorrect in arguing that "Defendants have

12   submitted no evidence" to establish that these texts contain private information.

13   (Dkt. No. 171 at 14.)  As set forth in Defendants' opening brief, a review of the

14   texts at issue demonstrates why wholesale production of their texts during the time

15   periods at issue would be inappropriate.  Of the 3,970 texts between Mr.

16   Horbaczewski and Ms. DeVito during this time, over 3,700 are personal and do not

17   relate to Plaintiffs or the DRL at all.  (Dkt. No. 149-1 at 12 (citing Ex. C submitted

18   to the court for *in camera* review with the personal texts highlighted in red).)  As

19   the Court can see from its review of the texts between Mr. Horbaczewski and Ms.

20   DeVito, many of these texts are extremely private and disclose sensitive details of

21   Mr. Horbaczewski's and Ms. DeVito's relationship.  (*Id.* (citing specific entries in

22   Ex. C).)  These texts also disclose Mr. Horbaczewski's medical and health

23   information.  (*See, e.g.*, Ex. C at row 314 (entry at 9/10/2015 10:51:09 AM); row

24   1410 (entry at 6/26/2015 2:43:30 PM).)  The production of these texts implicates

25   the privacy rights not only of Mr. Horbaczewski, but also of Ms. DeVito (who is

26   not a party to this case).  The production of these texts would also violate the

27   medical privacy rights of Mr. Horbaczewski.

28        The additional texts that Plaintiffs seek between Mr. Horbaczewski and Mr.

Mazzeo similarly have nothing to do with Plaintiffs or even the DRL.  As part of the compromise reached after the December 3, 2018 hearing, Defendants produced all texts between Mr. Horbaczewski and Mr. Mazzeo that related to the DRL—a far broader scope of production than they had ever agreed to produce.  (*See* Dkt. No. 149-2, Kuwayti Decl. ¶ 11.)  Any purported need for the additional text messages, which have nothing to do with Plaintiffs, DRL, or any claim or defense in this case, does not outweigh the privacy interests of Mr. Horbaczewski and Mr. Mazzeo, who has been a personal friend of Mr. Horbaczewski since college and, as this Court recognized, "share communications unrelated to the DRL and/or this lawsuit." (Dkt No. 128 at 6.)

The only basis Plaintiffs have offered for the production of these thousands of additional private and personal text messages that have nothing to do with the DRL or Plaintiffs is that these texts are needed to provide "context."  (Dkt. No. 171 at 7, 11.)  But as Defendants demonstrated, the unproduced text messages are not part of the same conversation and lend no "context" to the responsive text messages that were produced.  There are hundreds of different conversations that took place over this time period.  And there are large series of hundreds of texts spanning weeks at a time and multiple conversational threads where there is no mention of the DRL or Plaintiffs at all—such as the over 800 texts that were exchanged between Mr. Horbaczewski and Ms. DeVito from January 23, 2015 to March 10, 2015 (Dkt. No. 149-1 at 13 (citing Ex. C rows 2926-3740)), or the over 200 texts that were exchanged between Mr. Horbaczewski and Ms. DeVito from August 27, 2015 to September 10, 2015.  (Ex. C rows 298-514.)  Plaintiffs simply cannot show any need—let alone a "compelling need"—for the production of this information.

Once again Plaintiffs merely cite to this Court's now vacated January 30 order to contend that these documents must be produced.  (*See* Dkt. No. 171 at 7 (citing the Court's Jan. 30 Order at 6-7).)  However, the Court did not have the benefit of Defendants' supporting declarations, or exhibits when it issued its

January 30 order.  (Dkt. No. 128, at 3 n.3.)  Those exhibits show exactly which texts have been produced by Defendants, as well as highlight private and privileged communications, so that the Court can more easily see whether any further production of texts is actually required for context.  Moreover, in the now vacated January 30 order, the Court pointed to DRL 007427 as a replacement for "certain text messages" and an example of the way texts should not be produced, noting that it "simply shows a date time stamp, and a single text message," and gave "no indications of who the recipient was and no context for the conversation at issue." (Dkt. No. 128 at 6.)  As Defendants noted in their opening brief, this document was actually one of the entries from Mr. Horbaczewski's iPhone Notes, which is why it did not include this type of information.  (Dkt. No. 149-1 at 13 n.3.)  There was no opportunity to explain this previously because there was no hearing on the issue.

Contrary to Plaintiffs' allegations, Defendants have never taken the position that they are "insulated" from producing responsive communications "[m]erely because these same parties have also exchanged personal communications." (*See* Dkt. No. 171 at 11.)  Defendants have already produced all the responsive texts to Plaintiffs with these five individuals—and more—as part of Defendants' replacement productions notwithstanding the fact that other texts are private.  The dispute is over whether Plaintiffs are entitled to any additional non-responsive and irrelevant texts, including over 3,700 texts between Mr. Horbaczewski and Ms. DeVito that are personal and do not relate to the Plaintiffs or the DRL at all.  (Dkt. No. 149-1 at 12.)

Plaintiffs are not entitled to the production of any additional text messages beyond those texts Defendants have already produced.  At most, the Court should adopt the same approach it used in its now vacated January 30 order for Mr. Horbaczewski's iPhone Notes, where the Court recognized that personal communications that are unrelated to this litigation "simply do[] not fall within the

1  scope of discoverable information" (Dkt. No. 128 at 8-9), and limited the

2  production of any additional texts to communications about Plaintiffs or "the

3  DRL's formation, ownership structure, or investment capitalization for the agreed

4  periods." (Dkt. No. 128 at 10.) Defendants believe they have already produced all

5  such texts.

6      Defendants also believe that they have produced all of the texts that provide

7  "context" for these responsive texts as part of their production. Should the Court

8  determine that there is a compelling need for the production of additional text

9  messages for context, any such text messages should be limited to texts in the same

10  conversational thread.

11                 **4.**     **A Protective Order Is Insufficient to Protect the**

12                      **Privacy Rights of Mr. Horbaczewski's and Third**
                    **Parties**

13      Plaintiffs are incorrect that a Protective Order is sufficient to protect the

14  privacy rights of Mr. Horbaczewski and third parties Ms. DeVito and Mr. Mazzeo.

15  Courts have permitted the redaction of private information and have withheld

16  documents from discovery on privacy grounds even when a protective order was

17  available. *See Coleman*, 2013 WL 2896884, at *2. Similarly, in *Garcia v. City of*

18  *Garden Grove*, 2017 WL 2416207, at *3-4 (C.D. Cal. Feb. 28, 2017), the court

19  denied the production of personal identifying information, finding the requested

20  discovery was not relevant and that "a simple confidentiality designation would be

21  insufficient to ameliorate the Court's concerns about the privacy of the implicated

22  individuals, especially given that Plaintiff has not adequately explained why he is

23  entitled to this discovery." (*See also* cases cited in section I.A. above (permitting

24  redaction prior to production).) As in *Garcia*, plaintiffs can articulate no clear

25  explanation as to why they should be entitled to the production of such a massive

26  quantity of Mr. Horbaczewski's purely personal texts here.

27      Plaintiffs attempt to factually distinguish the *Coleman* case, contending that

28  the "rationale" for the court in *Coleman* to withhold the production of employee

payroll records was because the Plaintiffs "could obtain this information independently from employees that chose to participate in the litigation." (Dkt. No. 171 at 13.) However, the portion of *Coleman* that Plaintiffs refer to is actually a quotation from a *different* case, *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503 (C.D. Cal. 2011). Moreover, Plaintiffs omit a critical portion of the court's holding in *Nguyen* that was cited by the court in *Coleman*: "Plaintiff's counsel can still obtain this information from any individual employee who chooses to participate in this litigation ***and voluntarily provides such information***." *Coleman*, 2013 WL 2896884 at *11 (citing *Nguyen*, 275 F.R.D. at 512-13) (emphasis added). There was thus no guarantee even in *Nguyen* that Plaintiffs' counsel would be able to obtain the information at issue either, and that case simply recognizes that private information may be obtained if the person holding the privacy interest voluntarily chooses to disclose it.

The production of such a large amount of personal and highly sensitive information to an opposing party's counsel raises genuine privacy concerns. As this Court previously recognized with respect to Mr. Horbaczewski's Notes entries, the "largely personal communications" that are of a "clearly nonresponsive nature" in Mr. Horbaczewski's Notes are cause for a "greater concern for prejudice to Defendant Horbaczewski with respect to the wholesale disclosure of the iNotes notwithstanding the Protective Order." (Dkt. No. 128 at 8-10.) Thus, despite the existence of a Protective Order in this case, this Court ordered Defendants to provide a replacement production of the Notes entries limited to those entries "reflecting communications with or about Plaintiffs, or with Cristina DeVito, Matt Mazzeo, Ryan Gury, Trevor Smith, and Tony Budding concerning the DRL's formation, ownership structure, or investment capitalization for the agreed periods." (*Id.* at 10.)

The same rationale applies here. Mr. Horbaczewski's texts with Ms. DeVito and Mr. Mazzeo, especially his private communications with Ms. DeVito, are just

as personal and as clearly nonresponsive as many of Mr. Horbaczewski's Notes entries, and the production of such information to Plaintiffs, even under a Protective Order, would cause just as much prejudice, if not more, to Mr. Horbaczewski and these third parties.  As with the Notes entries, the fact that a Protective Order exists is not sufficient to protect the privacy rights of Mr. Horbaczewski and these third parties.

The cases cited by Plaintiffs do not support the wholesale production that they seek here of Mr. Horbaczewski's irrelevant private and personal texts.  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006) concerned the production of financial records that were relevant to plaintiff's civil RICO claims, and there the Court found that the plaintiff's need for such financial documents outweighed the defendant's claim of privacy.  *Id.* at 191.  Here, the additional personal and private communications between Mr. Horbaczewski and Ms. DeVito that Plaintiffs seek are unrelated to the Plaintiffs and concern highly personal and intimate texts.  Similarly, the additional communications between Mr. Horbaczewski and Mr. Mazzeo that Plaintiffs seek are unrelated to the Plaintiffs or DRL, and have no possible relevance to any claim or defense in the case.  In *Zuniga v. Western Apartments*, 2014 WL 2599919 (C.D. Cal. Mar. 25, 2014), also cited by Plaintiffs, the Court affirmed the need to "balance the need for the information sought against the privacy right asserted" and ***expressly permitted redactions*** of personal and private information in documents despite the availability of a protective order.  *Id.* at *6 ("[T]he following information may be redacted: names of tenants/proposed tenants, contact information except telephone numbers, birth years of all proposed occupants, number of intended occupants, any description of marital/family status (e.g., whether proposed occupants have children, number of children, age of children, etc.).").

**D.    Plaintiffs Are Not Entitled to Any Additional Texts Between Mr. Horbaczewski and Mr. Gury, Mr. Smith, and Mr. Budding**

Defendants have already produced all texts between Mr. Horbaczewski and Mr. Gury and Mr. Budding that relate to Plaintiffs, and any additional texts that are required to provide context to these communications.[2]  Plaintiffs now contend that they are entitled to any additional texts that relate to the DRL or even drone racing. Plaintiffs never served such a broad request, and Defendants never agreed to produce all of Mr. Horbaczewski's communications with these DRL employees regarding the DRL or drone racing.  Nor would such a request have been proportional to the needs of the case given the extent of the involvement of these three individuals with the company, which goes far beyond the issues relevant to the litigation.  Many of the additional texts also contain highly confidential information relating to the DRL that has nothing to do with this case and that would harm the DRL if disclosed, including, for example, harming the DRL's relationships with an outside vendor and a government agency.  (Dkt. No. 149-23, Horbaczewski Decl. ¶ 6.)

Plaintiffs once again rely primarily on the Court's vacated order, arguing that "Defendants have provided no authority or argument to warrant reconsideration of the prior Order."  (Dkt. No. 171 at 14.)  The only substantive argument that Plaintiffs offer for the production of these texts is that "Messrs. Gury, Smith, and Budding are all early employees of the DRL that were involved in the formation and development of the DRL along with Plaintiffs."  (*Id.*)  But, while that may be an argument for the production of the texts that have already been provided that relate to Plaintiffs, it does not justify the production of more than 1,500 additional

---

[2] There are no texts between Mr. Horbaczewski and Mr. Smith that relate to Plaintiffs for the time period agreed to between the parties.

texts concerning irrelevant, and often confidential, subject matter that does not relate to the case.

A review of the text messages that Defendants submitted for *in camera* review shows that the vast majority of these texts have nothing to do with the Plaintiffs or the ownership issues that are relevant to this litigation, and include dozens of unrelated and irrelevant conversational threads.  (Dkt. No. 149-1 at 17 (citing Exs. A-B, D-E, H-I).)  As just one example, for the time period June 30, 2017 through July 31, 2017, which Plaintiffs insisted be submitted to the Court for in camera review even though they have refused to produce documents dated after June 30, 2017 themselves, there is not a single text between Mr. Horbaczewski and Mr. Smith or Mr. Budding that refers to Plaintiffs at all.  (*See* Exs. B, I.) That is not surprising because even Plaintiffs do not claim that they provided any services to DRL after October 2015.  Plaintiffs only included this time period because they hoped (incorrectly) that they would discover a text discussing Mr. Laub's demand letter or the filing of this lawsuit that might be helpful to their case.  They should not be entitled to all of the texts between Mr. Horbaczewski and these key employees relating to their work for DRL during the July 2017 time period.  These texts do not provide any "context" to communications relating to the issues in this case.  Plaintiffs can hardly claim that they are entitled to the production of all of these texts—particularly since Plaintiffs have thus far failed to produce even a single communication between themselves.

## II.   THE PARTIES AGREE ON THE SCOPE OF PRODUCTION OF THE NOTES

The parties do not dispute that the Court's now vacated January 30 order should be reinstated as to the production of Notes entries from Mr. Horbaczewski's phone.  Defendants have already complied with the portion of the order regarding the Notes and had produced all Note entries reflecting communications with or about Plaintiffs, or with Cristina DeVito, Matt Mazzeo, Ryan Gury, Trevor Smith,

and Tony Budding concerning the DRL's formation, ownership structure, or investment capitalization for the time periods January 1, 2015 to September 30, 2015, and June 30, 2017 through July 31, 2017.  (Dkt. No. 149-1 at 17.)

As explained in Defendants' opening brief, Plaintiffs have previously mischaracterized the Notes in an attempt to argue that Defendants selectively redacted relevant information.  Defendants submitted additional evidence, including a declaration from Mr. Horbaczewski, explaining why Plaintiffs' characterization of the unproduced Notes entries is not accurate.  (Dkt. No. 149-1 at 18-19; Dkt. No. 149-23 ¶ 16.)  Plaintiffs do not contest this evidence and instead repeat their boilerplate argument that Defendants production "omitted numerous relevant notes concerning the DRL, Plaintiffs, and drone racing."  (Dkt. No. 171 at 18.)  In any event, Plaintiffs' argument does not concern the scope of the Court's order, but rather presents only a factual dispute over compliance with it.

### III.   PLAINTIFFS' COUNSEL VIOLATED THE DEC. 3 COURT ORDER

In their opening brief, Defendants showed how Plaintiffs' counsel violated the Court's December 3 Order by reviewing Mr. Horbaczewski's iPhone Notes, and explained how the excuse that Plaintiffs' offered at the time—that the Notes had been marked as a deposition exhibit—made no sense.  (*See* Dkt. No. 149-1 at 19-20.)  Plaintiffs have now switched tactics and argue that, although Plaintiffs' counsel cannot remember ever saying this, it was "implied" that he could review the Notes during the meet and confer process.  (*See* Dkt. No. 171-1 ¶ 21.)  This belated attempt at justifying the violation of the Court's order is equally meritless.

Contrary to Plaintiff's newly revised claim, during the course of the parties' meet and confer discussions, Defendants' counsel specifically asked Plaintiffs' counsel for confirmation that they were not reviewing the documents during the meet and confer process, and Plaintiff's counsel gave assurances that they were not. (Dkt. No. 149-2, Kuwayti Decl. ¶ 8.)  This is not just one party's word against

another.  In this case the entire written record and course of conduct over the preceding ten day period shows that Defendants' counsel could not have been more clear that his client was extremely concerned about Plaintiffs' counsel conducting any further review of the inadvertently produced documents—including the Notes specifically—and went to great lengths to prevent this from happening: (1) Defendants' counsel wrote to Plaintiffs' counsel the day after the November 30 deposition where the Notes were marked as an exhibit to ask for the return of the Notes (Dkt. No. 149-2, Kuwayti Decl. ¶ 4 and Ex. 3); (2) When Plaintiffs' refused, Defendants raised this issue the very next day and obtained a court order that precluded Plaintiffs' counsel from reviewing the documents until the parties' dispute was resolved by the Court (*id.* ¶ 6; Dkt. No. 95); (3) Defendants specifically discussed the Notes at the December 3 hearing as the reason why they required emergency relief and identified the document as one that Plaintiffs' counsel should be precluded from reviewing until the dispute was formally resolved by the Court (*id.* Ex. 18 at 30-32); (4) Defendants wrote to the Court reporter insisting that the Notes not be distributed to Plaintiffs' counsel with the deposition transcript (*id.* Ex. 5); (5) Defendants submitted a joint email to Plaintiffs on December 9 regarding this issue, which discussed the notes at length.  (*See id.* ¶ 9 and Ex. 6 (referencing Notes at least six times and asking that they be returned or destroyed).)

In contrast, Plaintiffs' counsel admits that he does "not recall whether he expressly said" that he was going to compare the original Notes to the replacement version that was provided, nor does he have any recollection of asking Defendants' counsel for permission to review the Notes to make comparisons during meet and confer.  (Dkt. No. 171-1 ¶ 21.)  But he does remember Defendants' counsel *refusing* to agree that he could do such a comparison between the original texts that were being produced and any replacement texts.  (*Id.*)  Against this backdrop, the claim that it was "certainly implied and seemed understood" that Plaintiffs' counsel could review the Notes is not credible.  And to rely on an implication that opposing

1   counsel agrees to a violation of an emergency court order that it obtained without

2   seeking express permission is improper in and of itself.

3        Plaintiffs contend that the Court "did not authorize further briefing" on this

4   issue.  (Dkt. No. 171 at 15.)  To the contrary, the Court's order permitted briefing

5   regarding the Disputed Production, and Plaintiffs' violation of the Dec. 3 Order

6   concerning the treatment of the Disputed Production is relevant to the relief that the

7   Court should order.  Defendants' motion does not ask the Court to sanction

8   Plaintiffs' counsel for violating the December 3 Order.  But Defendants ask the

9   Court to take this conduct into account, as well as the refusal of Plaintiffs' counsel

10  to accept any responsibility for it whatsoever, in determining the appropriate relief

11  to award.  Plaintiffs claim that it is sufficient to produce thousands of private and

12  personal texts, and confidential texts about the DRL's business that have no

13  relevance to this case because there is a protective order in place.  (Dkt. No. 171 at

14  12-13.)  This will provide little assurance to Mr. Horbaczewski, who was promised

15  previously that his private information would not be reviewed by this same

16  Plaintiffs' counsel because there was a court order in place.  The previous violation

17  of the Court's December 3 order is one more reason why the protective order is not

18  an acceptable remedy for the huge amount of irrelevant private, highly sensitive,

19  and confidential information contained in these texts.

20       Plaintiffs devote a great amount of time and energy to arguing that

21  Defendants' counsel violated the December 3 court order as well.  (*See* Dkt. No.

22  171 at 15-19.)  This argument truly has nothing to do with the present dispute, and

23  cannot justify Plaintiffs' counsel's decision to review the Notes on December 13.

24  But it is also not correct.

25       Plaintiffs' counsel mischaracterizes the dispute throughout as merely an

26  attempt to retrieve "irrelevant" documents, leaving out the extreme concern

27  expressed from the very start about the massive quantity of private information

28  contained in these documents.  (*Compare* Dkt. No. 171 at 15-16 (making no

1  mention of Defendants' privacy concerns) with Dkt. No. 149-2, Kuwayti Decl. Ex.

2  3 (referring to "hundreds of personal notes that are private and have no relevance to

3  the litigation") and Ex. 18 (referring to "a wealth of personal and private

4  information that has nothing to do with the case").)

5       The transcript from the December 3 hearing shows that Defendants' counsel

6  stated that it was his "understanding" that the texts with Mr. Mazzeo had all been

7  produced, but that he would "double-check" with his office, and that the Court

8  ordered Defendants' counsel to "confirm" that this was the case.  (*See* Dkt. No.

9  149-2, Kuwayti Decl. Ex. 18 at 36-38; Dkt. No. 95.)  This statement was clearly a

10  mistake, as Plaintiffs' counsel should have known as well.  The parties had just

11  been through a lengthy discovery dispute three months earlier culminating with an

12  August 20 order from the Court that upheld the Defendants' proposal to limit the

13  production of Mr. Mazzeo's texts to certain issues only.  (Dkt. No. 69 at 2-3.)

14       Defendants' counsel clarified this mistake immediately, literally on the

15  courthouse steps, reminding Plaintiffs of the discovery dispute and stating that only

16  the texts required by the Court's order had been produced.  (*Id.*)[3]  But Plaintiffs

17  seized on this issue to insist that now all of the texts with Mr. Mazzeo needed to be

18  produced.  Unable to agree to produce even more private information of Mr.

19  Horbaczewski, Defendants offered to postpone the deposition of Mr. Mazzeo if

20  needed and bring the issue to the attention of the Court immediately, and even to

21  provide Mr. Mazzeo's texts to the Court for an *in camera* review.  (*See* Dkt. No.

22  171-1, Ex. L at 1, 5.)  Plaintiffs insisted on going forward with the deposition

23

24       [3] Plaintiffs' claim that Defendants' counsel "denied" ever stating at the
hearing that the texts had been produced is false.  (Dkt. No. 171 at 17.)  As the

25  email string Plaintiffs cite for this proposition shows, Defendants' counsel
consistently stated only that, while he was unsure what the transcript would say, he

26  "did not intend" to represent that all the communications had been produced, only

27  that Defendants had produced all the communications required by the Court.  (See
Steinberg Decl. Ex. L at 1, 5, 6.)

28

without raising the issue with the Court, and as a compromise Defendants ended up producing all of the texts with Mr. Mazzeo concerning the DRL—far more than what the Court had ordered.  (Dkt. No. 149-2, Kuwayti Decl. ¶ 11 and Ex. 12.)

This issue has nothing to do with whether it was appropriate for Plaintiffs' counsel to review the originally produced Notes on December 13, nine days after Mr. Mazzeo's deposition had concluded.[4]

## IV.   PLAINTIFFS SHOULD BE REQUIRED TO CERTIFY THAT ALL OF THE INADVERTENTLY PRODUCED DOCUMENTS HAVE BEEN DESTROYED

Plaintiffs do not address their failure to provide a written certification that "any portions thereof" the originally produced Notes and texts have been destroyed. (Dkt. No. 149-1 at 21.)  Plaintiffs should be required to provide this further certification as to all portions of all of the inadvertently produced documents—not just the Notes and texts— except as to any replacement documents provided by Defendants or ordered by the Court.

## CONCLUSION

Defendants have already produced all of the texts and Notes to which Plaintiffs are entitled.  Defendants should not be required to produce anything further.

---

[4] Plaintiffs also contend that there were "numerous emails with Mr. Mazzeo related to Plaintiffs that had not been produced by Defendants," citing to four documents.  (Dkt. No. 171 at 16, citing to Dkt. No. 171-1 ¶¶ 12-16.)  This claim has nothing to do with the issue, as the Dec. 3 hearing had nothing to do with emails. But it is also highly misleading.  One of the emails identified by Plaintiffs, (Dkt. No. 171-6), was in fact produced to Plaintiffs at DRL00003095.  Two others are dated October 3, 2017 (Dkt. No. 171-7, 171-8), months past the June 30, 2017 discovery cut-of date that Plaintiffs have applied to their own documents.  And the presentation attached to the fourth (Dkt. No. 171-6) was produced by Defendants as DRL 00002656.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  April 1, 2019

MORRISON & FOERSTER LLP

By: _/s/ Kenneth A. Kuwayti_
       Kenneth A. Kuwayti

Attorneys for Defendants
NICHOLAS HORBACZEWSKI and
DRONE RACING LEAGUE, INC.