**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JUSTICE LAUB and DAN KANES,** | )    NO. 2:17-CV-06210-JAK (KS) |
| **Plaintiffs,** | ) |
| **v.** | ) |
| | )    **MEMORANDUM OPINION AND ORDER** |
| **NICHOLAS HORBACZEWSKI,** | )    **RE: DEFENDANTS' MOTION RE:** |
| **DRONE RACING LEAGUE, INC.,** | )    **DISPUTED DOCUMENTS [DKT. NO. 149]** |
| **and DOES 1 to 10,** | ) |
| **Defendants.** | ) |
| _____ | ) |

Before the Court for resolution is Defendants' Motion re: Disputed Documents filed on February 25, 2019 (the "Motion"). (Dkt. No. 149.) On March 12, 2019 Plaintiffs filed a Memorandum in Opposition to the Motion ("Opposition"). (Dkt. No. 171.) On April 1, 2019, Defendants file a reply in support of the Motion ("Reply"). (Dkt. No. 179.) On April 10, 2019, the Court held oral argument on the Motion and took the matter under submission. (Dkt. No. 184.)

**INTRODUCTION**

Plaintiffs commenced this contract action on August 22, 2017. (Dkt. No. 1.) The operative Third Amended Complaint ("TAC"), alleges that Plaintiffs Justice Laub

1

and Daniel Kanes ("Plaintiffs') were promised a two-thirds equity interest in Defendant Drone Racing League, Inc. ("DRL") and recognition as DRL co-founders based on alleged agreements and representations, verbal and written, between Plaintiffs and Defendant Horbaczewski ("Horbaczewski"). (TAC ¶1-3 [Dkt No. 62].)[1] On July 31, 2018, the Court entered a Stipulated Protective Order (the "Protective Order") in this case, which provides for "Confidential" and "Highly Confidential" designations for sensitive information produced in discovery. (Dkt. No. 65.)

At issue in the Motion are text messages downloaded en masse from Horbaczewski's iPhone and iNotes, also collected from Horbaczewski's cell phone. These messages reflect communications between Defendant Horbaczewski and five individuals (together, the "Disputed Production"): (1) Cristina DeVito ("DeVito"), who briefly worked with DRL in a human resources capacity but also was involved in a personal relationship with Horbaczewski for some months; (2) Matt Mazzeo ("Mazzeo"), a college friend of Horbaczewski and potential investor in the DRL; (3) Ryan Gury ("Gury"), a DRL employee; (4) Trevor Smith ("Smith"), a DRL employee; and (5) Tony Budding ("Budding"), a DRL employee. (*See* Motion at 15-16.) The text messages were produced to Plaintiffs in a spreadsheet format that Defendants argue was prepared by counsel for review but were inadvertently produced to Plaintiffs without review or redactions. (*Id.* at 8.)

## RELEVANT BACKGROUND

As part of discovery, Plaintiffs propounded discovery requests seeking documents relating to communications between Defendant Horbaczewski and

---

[1] Additional allegations of the Third Amended Complaint are outlined detail in prior discovery orders, therefore, the Court will only discuss the details relevant to the instant Motion. (*See* Dkt. Nos. 141; 187.)

themselves concerning the formation and investment structure of the DRL along with documents relating to communications with other DRL personnel and potential DRL investors about Plaintiffs and Plaintiffs' role in and/or work for DRL. (Motion at 2-3; *and see* Dkt. No. 128.) Horbaczewski produced email, text messages, and Google Docs files responsive to Plaintiffs' discovery requests. (*Id.*) Defendants contend that some of this material, including text messages aggregated in spreadsheets, were inadvertently produced without sufficient review for privilege and privacy concerns. (*Id.*) When Defendants realized what had occurred, they asked Plaintiffs to return the Disputed Production and proposed to replace the original spreadsheets with redacted versions that exclude information that was privileged or irrelevant and/or information that implicated individuals' privacy rights. (*Id.*) Plaintiffs objected to the proposed redactions and replacement documents. (*Id.*)

At the December 18, 2018 discovery conference, after hearing the parties' arguments, the Court decided to conduct an *in camera* review of the entirety of the Disputed Production and directed the parties to provide all the disputed spreadsheets to the Court along with position statements of no more than five (5) pages further outlining each side's positions. (*Id.*) Plaintiffs were also directed not to review any of the Disputed Production pending the court's *in camera* review. The Court scheduled a hearing on the issue for January 16, 2019. (*Id.*) On December 21, 2018, the Court amended its prior order so that Defendant was no longer required to provide the Court with proposed redactions to the text messages. (Dkt. No. 105.)

On December 28, 2018, Plaintiffs provided the Court with a letter brief and the Horbaczewski text message production as compiled in an Excel spreadsheet identified as DRL0007428; a .pdf printout of Horbaczewski's iNotes; five Excel spreadsheets that Defendants offered as replacement documents (DRL00007427, DRL0007428,

1    DRL00049574, DRL00049575, DRL0004962); and a set of proposed redacted iNotes.

2    (Dkt. No. 128.)   Plaintiffs provided the files to the Court on two encrypted flash

3    drives. One flash drive contained the Horbaczewski text message production as

4    compiled in an Excel spreadsheet identified as DRL0007428 and a 95-page .pdf

5    printout of Horbaczewski's iNotes that was marked as Exhibit 119 at Horbaczewski's

6    deposition ("Exhibit 119").   The second flash drive contained five Excel spreadsheets

7    that Defendants offered as replacement documents:   DRL00007427, DRL0007428,

8    DRL00049574, DRL00049575, DRL00049627 – each designated "Confidential"—

9    and a set of proposed redacted iNotes designated "Highly Confidential."   In a separate

10   email to the Court, Plaintiff provided a password for the Court to access all six Excel

11   spreadsheets and Exhibit 119 for *in camera* review.   Also on December 28, 2018,

12   Defendants submitted Defendants' Statement Regarding *In Camera* Review. On

13   January 14, 2019, the Court vacated the discovery hearing and took the matter under

14   submission. (Dkt. No. 112.)

15

16        Following the *in camera* review, the Court, in an order dated January 30, 2019

17   (the "January 30 Order") , found "a significant number of text messages reflected on

18   DRL0007428, appear to be responsive communications during the relevant time

19   frame," and, as such, "are properly subject to discovery without redaction." (Dkt. No.

20   128.)  Accordingly, the Court ruled on January 30, 2019 that, in re-producing the text

21   messages at issue, "Defendants may not selectively redact text messages or portions

22   of text message conversations reflected at DRL0007428" based on relevance.  (*Id.*)

23   The Court further ordered that any responsive but privileged text messages withheld

24   from DRL0007428 must be identified on a privilege log and Defendants must confirm

25   within five days that all responsive text messages have been produced.  (*Id.*)  The

26   Court did, however, permit Defendants, on privacy grounds, to withdraw the iNotes as

27   produced and ordered Defendants to provide a replacement production of iNotes that

28   reflects all responsive, nonprivileged iNotes during the relevant time frame.  (*Id.*)

4

On February 12, 2019, the undersigned Magistrate Judge vacated the January 30 Order and invited the parties to file motions with full briefing regarding the Disputed Production, including the six spreadsheets of text messages for the period 2009 to the present that were collected from Horbaczewski's phone and Horbaczewski's iNotes. (Dkt. No. 143.)

At this time, Plaintiffs, pursuant to the Court's January 30 Order, have destroyed the inadvertently produced text messages. Therefore, the questions before the Court are: (1) whether there are text messages that Defendants can exclude from re-production based on privacy and/or relevance grounds; (2) whether any text messages not originally produced are discoverable; and (3) whether the reproduction of the inadvertently produced text messages – and potential new production of previously unproduced text messages – must be in the same format (aggregated spreadsheets) as the original production.

## DEFENDANTS' MOTION

On February 25, 2019, Defendants filed a Motion re: Disputed Documents. (Dkt. No. 149.) In the attached Memorandum of Points and Authorities (hereinafter the "Motion") (Dkt. No. 149-1), Defendants argue that Plaintiffs are not entitled to the production of any text messages between Horbaczewski and the five agreed upon individuals (Mr. Gury, Mr. Smith, Mr. Budding, Mr. Mazzeo, and Ms. DeVito) beyond those produced by Defendants in replacement versions of the original spreadsheets (Motion at 6-7, 17) – even if the texts were originally produced (*see* Motion at 14).

Defendants assert that "Plaintiff's fundamental premise – that Defendants need to justify 'redactions' to an aggregated spreadsheet prepared solely for review

5

purposes – is wrong" because "the threshold issue is whether Plaintiffs are entitled to the individual text messages, each of which comprises its own unique document." (Motion at 8.)   Defendants also assert that:   (1) Plaintiffs must demonstrate a compelling need for discovery that intrudes upon a person's right to privacy under the California Constitution (Motion at 10) (citing *Denari v. Superior Ct of Kern County*, 215 Cal. App.3d 1488, 1500 (Cal. Ct. App. 1989) and *Coleman v. Jenny Craig, Inc.*, No. 11–cv–1301–MMA (DHB), 2013 WL 2896884, at *10 (S.D. Cal. June 12, 2013)); and (2) a protective order is not necessarily sufficient to protect these interests (Motion at 11) (citing *Coleman*, 2013 WL 2896884, *2 and *Garcia v. City of Garden Grove*, No. 8:16–cv–00154–DOC–KESx, 2017 WL 2416207, at *3-4 (C.D. Cal. Feb. 28, 2017)).   Defendants state that Plaintiffs do not have a compelling need for the production of Horbaczewski's private texts, and, in particular, cannot demonstrate a compelling need for the production of additional texts between Horbaczewski and DeVito and between Horbaczewski and Mazzeo.  (Motion at 10, 12, 15.)

Defendants also assert that Plaintiffs are not entitled to any additional texts between Horbaczewski and Gury, Smith, and Budding because "Plaintiffs have not demonstrated any need for the production of additional texts with [these three individuals]," and "the vast majority of the texts [at issue] that were not produced have nothing to do with Plaintiffs or the issues relevant to this litigation."  (Motion at 16-17.)  "At most," Defendants contend, "the production of any additional texts with these three individuals should be limited to the same scope the Court previously ordered for the Note entries," *i.e.*, texts reflecting communications about Plaintiffs or concerning DRL's formation, ownership structure, or investment capitalization for the agreed periods."  (Motion at 17.)

\\

\\

\\

6

# PLAINTIFFS' OPPOSITION

On March 22, 2019, Plaintiffs filed an Opposition to the Motion. (Dkt. No. 171.)  Plaintiffs argue that the Court should reinstate its January 30 Order requiring Defendants to re-produce all relevant text messages with the five individuals during the relevant period of time. (Opposition at 5.)  Plaintiffs state that Defendants have wrongly framed their Motion as an opposition to a motion to compel, rather than as a motion to redact and claw back information from the documents they produced in response to Plaintiffs' Requests for Production eight months ago. (Opposition at 5.) Plaintiffs contend that Defendants are seeking to claw back and redact text messages already produced in a single document – DRL0007428. (Opposition at 11.)[2]

Plaintiffs also argue that Defendants' privacy objections to the re-production of the disputed documents were not timely raised and, thus, are waived (Opposition at 5, 10) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992), *Zuniga v. Western Apartments*, No. CV 13-4637 JFW JCX, 2014 WL 2599919, at *2, at *3 (C.D. Cal. Mar. 25, 2014), *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409-10 (C.D. Cal. 2005)).  Plaintiffs further contend that privacy interests do not justify clawing back and redacting information from relevant and responsive documents. (Opposition at 8.)  Plaintiffs cite *A Farber and Partners Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) ("plaintiff's need for [the defendant's] financial documents outweighs [the defendant's] claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by

---

[2]    Plaintiffs are correct about the procedural posture of the Motion.  In its order vacating the January 30 Order, the Court invited the parties "to file a  motion regarding the Disputed Production." (Dkt. No. 143.) The Court did not specify whether it was to be a motion to compel or some other motion for relief.  (*Id.*)  Because Plaintiffs did not file a motion to compel, the Court analyzes the instant Motion, filed by Defendants, as a motion to "claw back" or otherwise limit the production of documents originally produced in the Disputed Production.

a 'carefully drafted' protective order") and *Zuniga*, 2014 WL 2599919, at *3 ("the privacy right asserted is outweighed by plaintiffs' need for the information and . . . such information can be adequately protected by a protective order") for the proposition that a Protective Order can address any privacy concerns resulting from the production of documents. (Opposition at 9, 12.)

Plaintiffs also argue that Defendants improperly withheld relevant text messages from their replacement production, and, further, the Protective Order and applicable case law do not permit redaction of irrelevant information from otherwise responsive documents. (Opposition at 5, 8.)

## STIPULATED PROTECTIVE ORDER

On July 31, 2018, the Court entered the parties' Stipulated Protective Order, which recognizes that discovery in this action would be "likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure . . . may be warranted." (Dkt. No. 65.)  Paragraph 5.3 of that Order states that "an inadvertent failure to designate qualified information or items [as Confidential] does not, standing alone, waive the Designating Party's right to secure protection under this Order" and, "upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of the Order." (*Id.* at 7.)  The Order further states that when a Producing Party gives notice to a Receiving Party that certain inadvertently produced material is "subject to a claim of privilege or other protection," the obligations of the Receiving Parties are those set forth in Fed. R. Civ. P. 26(b)(5)(B), which states:

If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

This provision is virtually identical to Fed. R. Civ. P. 45(3)(2)(B), which applies to information produced in response to a subpoena – as opposed to discovery.

## DISCUSSION

### I.   Legal Standard

Under Rule 26 of the Federal Rules of Civil Procedure, a party may obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).  As amended in December 2015, Rule 26(b)(1) identifies the following factors to be considered when determining if the proportionality requirement has been met:  the importance of the issues at stake in the action; the amount in controversy; the parties' relative access to the relevant information; the parties' resources; the importance of the discovery in resolving the issues; and whether the burden or expense of the

proposed discovery outweighs its likely benefit.  (*Id.*)  Relevant information need not be admissible to be discoverable.  (*Id.*)

The party resisting discovery "has the burden to show that discovery should not be allowed, and the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd*., 179 F.R.D. 281, 283 (C.D. Cal. 1998).  District courts have broad discretion in controlling discovery.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  The court has similarly broad discretion in determining relevancy for discovery purposes.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallet,* 296 F.3d at 751) (superseded by statute on other grounds).

## II.    Can Defendants "Claw Back" Material Based On Privacy Concerns?

Defendants' primary argument to claw back the information provided in the Dispute Production is that some of the text messages contain private information that was never intended to be disclosed and has no relevance to any claim or defense in the litigation.  (Motion at 10-15.)  On that basis, Defendants maintain that despite the inadvertent production, they should be able to redact and/or withdraw the highly personal portions of the Dispute Production.  Further, Defendants argue that they should not be required to re-produce the text message spreadsheets because the Horbaczewski text messages, as assembled in the spreadsheet are not a single document.  (Motion at 8.)

\\
\\
\\
\\
\\

## A. Rights of Privacy in Light of Inadvertent Disclosure

Federal courts recognize a constitutional right to privacy encompassing a right to nondisclosure of one's personal information.  *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. Dec. 21, 2012) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). Federal courts also consider privacy rights protected by state constitutions or statutes. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. July 17, 1995).  Resolution of a privacy objection requires a balancing of the need for the particular information against the privacy right asserted.  *Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. 2011); *see also e.g., Soto v. City of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) ("in applying the balancing analysis to the personnel files sought by Plaintiff in the case at bar, it is clear that Plaintiff's need for the documents will outweigh any invasion of Defendants' privacy rights, particularly under the limitations of a carefully crafted protective order").

However, the California Supreme Court has explicitly rejected Defendants' position that a party seeking discovery of private information must always establish a compelling interest or compelling need.  *Williams v. Superior Court*, 3 Cal.5th 531, 557 (2017); *accord. Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 698-99 (E.D. Cal. 1993) (endorsing a general balancing approach over the compelling interest analysis after observing that, while early cases strictly required that any encroachment on California's constitutional right to privacy be justified by a compelling interest, later cases back away from this approach in favor of a general reasonableness test); *but see Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully

balanced.'").  "Courts must instead place the burden on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion, and against that showing must weigh the countervailing interests the opposing party identifies . . . .  Only obvious invasions of interests fundamental to personal autonomy must be supported by a compelling interest."  *Williams v. Superior Court*, 3 Cal. 5th 531, 557 (2017).

Turning to federal authorities, in *Pagano*, for example, the Eastern District stated that, in conducting the balancing test, relevant factors include:  "(1) the probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of that encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy  rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment."  *Pagano*, 145 F.R.D. at 698-99; *see also Stallworth*, 288 F.R.D. at 444 (stating that relevant factors in this balancing test include the type of record requested, the information it does or might contain, the potential for harm in any subsequent non-consensual disclosure, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and, *inter alia*, whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access).

Some case law suggests that "certain privacy interests may no longer exist in light of Defendants' possibly inadvertent disclosure."  *Neuman v. United States*, 70 F. Supp. 3d 416, 425 (D.D.C. 2014).  However, most courts to consider the question have found that inadvertent disclosure does not void "every vestige of privacy

interest." *See*, *e.g.*, *Sinito v. U.S. Dep't of Justice*, No. CIV.A. 87-0814 TFH, 2000 WL 36691372, at \*15 (D.D.C. July 12, 2000), aff'd in part sub nom. *Sinito v. Dep't of Justice*, 22 F. App'x 1 (D.C. Cir. 2001) ("[I]nadvertent release and partial publication of information does not erase every vestige of a privacy interest.  Strong privacy interests may remain after limited disclosures to the press."); *see also Sec. & Exch. Comm'n v. Farmer*, No. CV 4:13-MC-014-Y, 2013 WL 12137757, at \*2 (N.D. Tex. Dec. 19, 2013) ("the disclosure of documents in violation of a privilege or even a privacy interest can be remedied by return of the documents").  Further, although the Court found no case law indicating that a party may "claw back" produced documents that are not privileged or work product protected, *Blankenchip v. CitiMortgage, Inc*., 2015 U.S. Dist. LEXIS 169073 (E.D. Cal. Dec. 17, 2015), several courts, including the Eastern District in *Blankenchip*, have issued orders requiring the redaction or return of materials that intrude upon a non-party's privacy interest.  *See, e.g.*, *Blankenchip*, 2015 U.S. Dist. LEXIS 169073, at \*3-\*5 (following *in camera* inspection, court denied defendants' request for an order requiring the return of an inadvertently produced non-party's income statements and, instead, granted plaintiffs' request for a protective order requiring redaction of the private information from the disputed discovery material); *ADAPT of Philadelphia v. Philadelphia Housing Authority*, 417 F.3d 390, 392-95 (3d. Cir. 2005) (finding that district court's order compelling the defendant to disclose to the plaintiff the addresses of residences at various housing projects that were accessible for people with mobility impairments violated the privacy rights of the non-party residents living in those units and, although the Third Circuit could not erase plaintiff's knowledge stemming from that disclosure, it could still fashion "Pyrrhic" relief by ordering the return or destruction of the material at issue); *CG v. Pennsylvania Dep't of Educ.*, No. CIV A 1:CV-06-1523, 2009 WL 691186, at \*1 (M.D. Pa. Mar. 16, 2009) (finding the existing protective order was insufficient to protect the privacy interests of non-party students whose information was inadvertently produced in violation of the Family Educational

13

Rights and Privacy Act ("FERPA") and requiring the return and destruction of the information and the re-production of redacted information, which had allowed the plaintiffs to identify specific individual students who received special education services in specific Pennsylvania school districts); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13, 113 S. Ct. 447, 450 (1992) ("Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession.").

## B. Defendants Need Not Re-Produce Highly Personal Texts and iNotes

The authorities outlined above tend to support Defendants' argument that some of the text messages at issue in the Disputed Production would not have been initially discoverable because of the privacy interests involved. The question here, however, is whether those privacy interests are sufficiently compelling to warrant an order of the Court allowing Defendants to avoid re-producing what they have already disclosed to Plaintiffs. The Court believes that is the case, at least with respect to some of the information.

Defendants have identified some 3,700 text messages between Horbaczewski and DeVito sent during the course of their romantic relationship that have no relevance whatsoever to the claims or defenses in this action. (Motion at 4-5.) DeVito is not a party to this action and her personal relationship with Horbaczewski is not at issue here. Therefore, the Court finds that the privacy balancing test weighs in favor of shielding DeVito and Horbaczewski from potential embarrassment from the public disclosure of their intimate text messages that are wholly unrelated to the DRL and/or Plaintiffs.

Given the intimate nature of the roughly 3700 DeVito/Horbaczewski personal text messages and some of the iNote contents, the Court concludes that the seriousness of any prospective invasion of privacy for the individuals involved outweighs any countervailing interest there might be in discovery.  With respect to these specific personal communications, any discovery interest does not meet Rule 26(b)(2)'s relevance and/or  proportionality requirements.  Indeed, during oral argument on the Motion, Plaintiff's counsel indicated he would have no objection to allowing Defendants to withdraw these clearly personal text messages.

Accordingly,  Defendants need not re-produce the DeVito/Horbaczewski text messages that implicate a party and non-party's privacy interests. Similarly, in the interest of personal privacy, Defendants are not required to re-produce any portions of the previously produced Horbaczewski's iNotes (Ex. 119 to the Horbaczewski Deposition) that contain intimate personal information, wholly unrelated to any issues in this litigation.  Defendants' may withdraw Exhibit 119 entirely, but Defendants must produce any iNotes reflecting communications with or about Plaintiffs, or with Cristina DeVito, Matt Mazzeo, Ryan Gury, Trevor Smith, and Tony Budding concerning the DRL's formation, ownership structure, or investment capitalization for the agreed periods:  January 2015 to September 2015; and June 30, 2017 through July 31, 2017.[3]

Notably, Defendants indicate that before the Court vacated its January 30 Order, they complied with the portion of the Order that required production of iNotes "relating to DRL's formation, ownership structure, or investment capitalization for the

---

[3]    Defendants also argue that by reviewing the "original, inadvertently produced iNotes spreadsheet" at Exhibit 119, Plaintiffs' violated the December 3, 2018 Order (Dkt. No. 95), which precluded "Plaintiff's counsel from reviewing the inadvertently produced files in any respect pending this Court's resolution of the issue." (Motion at 3.)  Plaintiffs refute Defendants' contention, arguing instead that it was Defendants, not Plaintiffs, who violated the December 3, 2018 Order.  (Opposition at 15.)  Whether any party violated Judge Kronstadt's December 3, 2018 Order is not the subject of the instant Motion and the Court declines to address the parties' cross-accusations on the issue.

specified time periods." (Motion at 2 (citing Dkt. Nos. 128, 143).) Consequently, no further production is required of Defendants with respect to the disputed iNotes as previously disclosed on Exhibit 119.

### III.      Can Defendants "Claw Back" Material Based On Relevance?

Defendants arguments with respect to the over-production of text messages between Horbaczewski and Gury, Smith, and Budding center on relevance rather than privacy interests. Defendants argue that Plaintiffs are not entitled to the production, or re-production, of any text messages other than those produced in replacement versions of the original inadvertently produced spreadsheets. (Motion at 6-7.) Defendants state that they have provided the Court with nine Excel spreadsheets reflecting text messages between Horbaczewski and the five individuals for the time period between January 1, 2015 to September 30, 2015 and June 30, 2017 to July 31, 2017. (Motion at 7.) On those spreadsheets, Defendants highlighted in red texts that Defendants contend are private and do not concern DRL, Plaintiffs, or drone racing. (Motion at 8.) Defendants appear to conflate, however, communications that implicate legitimate privacy interests with communications that are simply not relevant.

### A. Irrelevance Alone Is Not A Sufficient Basis to "Claw Back" Nonprivileged Documents

Courts have not permitted parties to claw back material solely on the grounds that it is not relevant to the case at hand. *See, e.g.*, *Durling v. Papa John's Int'l, Inc.*, No. 16CIV3592CSJCM, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) ("redactions on grounds of non-responsiveness or irrelevance are generally impermissible") (citing *John Wiley & Sons. Inc. v. Book Dog Books*, LLC, 298 F.R.D.

184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege.")); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV1500246DOCDFMX, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) ("[the defendant] may not redact otherwise responsive documents because those documents contain irrelevant material"); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context")); *Guttormson v. ManorCare of Minot ND, LLC*, No. 4:14-CV-36, 2016 WL 3853737, at *5 (D.N.D. Jan. 6, 2016) ("Although Federal Rule of Civil Procedure 26(b)(5)(B) provides for claw back under certain circumstances, inadvertent disclosure of a document not within the scope of relevance is not one of those circumstances. [Third party defendant] Trinity does not claim that the document is protected as attorney-client communications or as trial preparation material. The court therefore finds no legal basis to require that other parties destroy or return the . . . document."); *D'Onofrio v. Borough of Seaside Park*, No. CIV.A. 09-6220 AET, 2012 WL 1949854, at *8 (D.N.J. May 30, 2012) (finding that "the documents' alleged lack of relevance" is "an insufficient basis on which to permit the Borough Defendants . . . to claw back these documents"); *Trident Seafoods Corp. v. Commonwealth Ins. Co.*, No. 2:10-CV-00214-RAJ, 2011 WL 13234644, at *2 (W.D. Wash. Oct. 31, 2011) ("relevance is not a basis for a claw back; the only types of documents that can be clawed back under Rule 26(b)(5)(B) are privileged or work-product documents") (citing *Heriot v. Byrne*, 257 F.R.D. 645, 655 (N.D. Ill. 2009); *United States v. 753.95 Acres of Land, More or Less, in Washoe Cty., Nevada*, No. 308-CV-0386-BESVPC, 2009 WL 2045706, at *2-*3 (D. Nev. July 10, 2009) (observing that the District of Nevada had previously rejected the defendant's contention that it should be allowed to claw back documents that would not lead to the discovery of admissible evidence

because "documents subject to relevancy objections should not be given the 'claw back' protections afforded to those subject to the attorney-client privilege or the work product doctrine and ruling that the disclosure of the documents "albeit inadvertent, has already occurred and cannot be undone" but defendants' concerns can be properly addressed through a stipulated protective order); *see also Adelman v. Coastal Select Ins. Co.*, No. 9:17-CV-3356-DCN, 2019 WL 465600, at *2 (D.S.C. Feb. 6, 2019) ("While there may be a legal basis to claw back documents produced in discovery that are subject to attorney-client privilege or work-product production . . ., [Defendant] cites no legal basis to claw back irrelevant information."); *but see Crissen v. Gupta*, No. 2:12-CV-00355-JMS, 2014 WL 1431653, at *5 (S.D. Ind. Apr. 14, 2014) (finding that the claw back provision in the parties' stipulated protective order was unusually permissive and, thus, applies to inadvertently produced documents that were not privileged or work product).

**B. The Disputed Texts Between Horbaczewski and Mazzeo, Smith, Gury and/or Budding Must Be Produced**

The remaining disputed Horbaczewski text messages and communications concern individuals who have some direct connection to the DRL and allegations at issue in this lawsuit. Specifically, Mazzeo, as noted above, in addition to being Horbaczewski's college friend, was a potential investor in the DRL. (Motion 15.) Defendants concede that Smith, Gury, and Budding "all work for the DRL." (*Id.*) Defendants argue that they have previously produced the responsive text messages and other communications between DRL and Mazzeo. (*Id.*) Defendants further represent that, before Mazzeo's deposition, in order to resolve a discovery dispute, Defendants expanded their production "to include all [Mazzeo] text messages that related to DRL. (*Id.*) Defendants indicate there were "77 texts between Mr.

Horbaczewski and Mr. Mazzeo during the specified time period" and "Defendants have produced 33 of the 77 texts pertaining to the DRL or Plaintiffs." (*Id.* at 15-16.)

Defendants argue that "text messages that were not produced have no relation to DRL or Plaintiffs. Any purported need for the text messages does not outweigh the privacy interest of Mr. Horbaczewski and Mr. Mazzeo." (*Id.* at 16.) Defendants' argument is unpersuasive. Unlike with the DeVito text messages and iNotes, Defendants make no showing that the Mazzeo communications implicate any substantial privacy interest. The fact that Horbaczewski and Mazzeo have a long standing friendship as college buddies does not support withdrawing the Mazzeo text messages that were disclosed in the inadvertent production, including text messages that may not have been originally produced in Defendants' initial production of Horbaczewski documents.

With respect to Gury, Smith, and Budding, Defendants acknowledge that "Horbaczewski's texts with them relate to the DRL." (Motion at 16.) Defendants argue, however, that they never "agreed to produce all of [Horbaczewski's] communications with these DRL employees regarding the DRL." (*Id.*) Further, Defendants maintain that "Plaintiffs have not demonstrated any need for the production of additional texts with [Gury, Smith, and Budding] that have nothing to do with Plaintiffs[.]" (*Id.*) Nevertheless, Defendants' spreadsheet disclosed these text messages to Plaintiff and now the only basis on which Defendants seek to "recall" that disclosure is that the messages "have nothing to do with Plaintiffs or the issues relevant to this litigation." (*Id.* at 17.) As noted with respect to the Mazzeo text messages, irrelevance alone does not warrant allowing Defendants to "claw back" what they have already disclosed. If the information is truly irrelevant then it can be properly excluded in summary judgment or trial proceedings on that basis.

1    Finally, and more importantly, the Court finds that a wholesale withdrawal of
2    the Mazzeo, Smith, Gury, and Budding text messages is inappropriate here because it
3    appears that Defendants' proposed redactions and substitute documents may not fully
4    reflect the responsive information that Defendants are obligated to disclose.  Indeed,
5    unilateral redactions of otherwise discoverable information is disfavored in this
6    circuit. *Live Nation Merchandise, Inc. v. Miller*, Case No. 13-cv-03936 CW (NC),
7    2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014).
8
9    In *Live Nation*, the district court emphasized that the Federal Rules contemplate
10   only very limited unilateral redaction, such as under Rule 5.2, which is in applicable
11   here.[4]  *Id*. (internal citation omitted).  Other courts have held that "[o]utside of these
12   limited circumstances, a party should not take it upon him, her or itself to decide
13   unilaterally what context is necessary for the non-redacted part disclosed, and what
14   might be useless to the case." *Evon v. Law Offices of Sidney Mickell*, No. 09-0760,
15   2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010).  Moreover, a party "may not
16   redact otherwise responsive documents because those documents contain irrelevant
17   material." *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*, No. SA CV 15-00246-
18   DOC (DFMx), 2016 WL 6246384, at *3 (internal citations omitted).  These principles
19   require full disclosure here.
20
21   Thus, while the Court is sympathetic to Defendants' argument that the
22   inadvertent production was entirely a mistake by counsel, nothing in the Federal Rules
23   of Civil Procedure, this district's Local Rules, or case law permits a party to withdraw
24   documents already produced based on a unilateral assertion of irrelevance so that the
25   producing party can then produce a more "sanitized" version of the information.
26
27   ───────────────
     [4]     Rule 5.2 requires that, unless the court orders otherwise, the parties shall redact court filings that contain
28   personally identifying information such as social security numbers, birthdate, tax payer identification numbers and the full
     names of minors. FED. R. CIV. P. 5.2(a).

Accordingly, Defendants must produce any nonprivileged Mazzeo, Gury, Smith, and Budding text communications with Horbaczewski listed on DRL00007428 as originally produced, consistent with the parties' agreed time frame and as to the relevant individuals without redactions. Defendants may designate any information "Confidential" or "Highly Confidential" as appropriate under the Protected Order. Any privileged text messages withheld from DRL0007428 must be identified on a privilege log.

## IV.   The Appropriate Format For The Reproduction Of The Inadvertently Produced Text Messages and Any Yet-to-be-Produced Text Messages

For the reasons outlined above, some of the originally produced text messages will need to be reproduced.  The question, then, is the appropriate format for reproduction – and, if appropriate, the format for production of any responsive text messages not originally produced.  Defendants argue that text messages do not form a single document but, rather, "separate individual entries or data elements within a database on Mr. Horbaczewski's phone."  (Motion at 8.)  "Further," Defendants contend, "the texts exchanged with a particular individual are not stored in a separate portion of the database, but are co-mingled with texts exchanged with other individuals."  (Motion at 8.)  For this reason, Defendants argue that the texts at issue "are not part of an integral document," and, thus, Defendants do not need to justify redactions to the spreadsheets – they only need to produce all relevant texts as part of their replacement productions.  (Motion at 10.)

In their Opposition, Plaintiffs note that the Court previously rejected Defendants' argument.  (Opposition at 14; *see also* Dkt. No. 128 at 5.)  In the Court's January 30 Order, the Court observed that Rule 34(b)(2)(E)(ii) requires parties to produce electronically stored information "in a form or forms in which it is ordinarily

maintained *or in a reasonable usable form or forms*." (Dkt. No. 128 at 5) (citing FED. R. CIV. P. 34(b)(2)(E)(ii) (emphasis added). The Court found that the spreadsheet format in which the text messages were originally produced "not only makes the messages reasonably usable, but it also allows the individual messages to be sorted chronologically and read in the context of the larger conversation." (Dkt. No. 128 at 6.) In contrast, the Court found that Defendant's proposed replacement spreadsheet DRL0007427 "simply shows a date time stamp and a single message" without indicating who the recipient was and the context for the conversation at issue. (Dkt. No. 128 at 6.) Accordingly, the Court determined that "the proposed redacted spreadsheets that Defendants offer as 'substitutes' do not adequately capture the responsive communications . . . that Defendants are obligated to disclose." (Dkt. No. 128 at 6.)

Rule 34(b)(1) of the Federal Rules of Civil Procedure invites requesting parties to specify the form or forms in which electronically stored information is to be produced. FED. R. CIV. P. 34(b)(1)(C). If a request does not specify a form for producing electronically stored information, Rule 34(b)(2)(E)(ii) requires the producing party to produce the material "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." FED. R. CIV. P. 34(b)(2)(E)(ii). Further, "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." FED. R. CIV. P. 34 advisory committee's notes to 2006 amendment. In *Solarcity Corp. v. Doria*, No. 16cv3085-JAH (RBB), 2018 U.S. Dist. LEXIS 8286, at *13 (S.D. Cal. Jan. 18, 2018), the Southern District explained that the drafters of Rule 34(b)(2)(E) expected that parties producing electronically stored information would provide it in a form that permitted "text searching technologies, like filtering, grouping, and ordering" so that the requesting parties could organize it themselves. *Solarcity Corp.*, 2018 U.S. Dist.

LEXIS 8286, at *13 (citing *Anderson Living Trust v. WPX Energy Prod.*, LLC, 298 F.R.D. 514, 527 (D.N.M. 2014) and 7 James Wm. Moore et al., Moore's Federal Practice § 34.14[3], at 34-92.1).  There is also case law to support the proposition that text messages should be provided in a manner that provides a "complete record" as opposed to "scattershot texts." *Paisley Park Enterprises, Inc. v. Boxill*, No. 17-CV-1212 (WMW/TNL), 2019 WL 1036058, at *6 (D. Minn. Mar. 5, 2019).

Defendants do not cite to any case law or rule that permits a party to claw back material already produced on the grounds that it was produced in a form other than the one intended.  (*See generally* Motion at 8-10; *see also* Motion at 8 ("The texts were compiled into an Excel spreadsheet solely for the purpose of review by defense counsel . . . This is not how they were intended to be produced.").)  Accordingly, Defendants should not be permitted to avoid re-producing the original spreadsheets solely on the grounds that they did not mean to turn over the spreadsheets during discovery.

With regards to the production of any as yet unproduced text messages, Defendants may be correct that they do not need to aggregate these text messages in a spreadsheet for Plaintiffs.  However, a party who responds to a discovery request by simply producing electronically stored information in a form of its choice, without first discussing the form with the requesting party, "runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form."  Fed. R. Civ. P. 34 advisory committee's notes to 2006 amendment.  Further, if the parties cannot agree after meeting and conferring, "the court is not limited to the forms initially chosen by the requesting party, stated by the responding party, or specified in [Rule 34] for situations in which there is no court order or party agreement."  Fed. R. Civ. P. 34 advisory committee's notes to 2006 amendment.  Thus, although the Federal Rules

do not require Defendants to produce the new text messages in an aggregated format, the Federal Rules vest the Court with the discretion to order Defendants to do so, if the parties cannot identify a mutually agreeable format. *See also Gonzalez v. Corr. Corp. of Am.*, No. 1:16-cv-01891 DAD JLT, 2017 U.S. Dist. LEXIS 124365, at *1 (E.D. Cal. Aug. 7, 2017) (suggesting that it may be appropriate for a defendant to have to produce electronically stored data in a spreadsheet format to ease the review but ultimately requiring the parties to continue their meet and confer efforts to resolve the dispute because plaintiff did not request this format initially); *Thomas-Byass v. Michael Kors Stores (Cal.), Inc.*, No. EDCV 15-00369-JGB (KKx), 2015 U.S. Dist. LEXIS 94278, at *8-9 (C.D. Cal. July 17, 2015) ("The request to provide the electronically stored information in excel spreadsheet format . . . is consistent with Fed. R. Civ. P. 34, because it will give Plaintiff the ability to search, sort and filter the information."). Notably, in both *Gonzalez* and *Thomas-Byass*, the courts considered whether the plaintiff had requested a particular format in their initial discovery requests. The burden or cost to the defendants in preparing spreadsheets may also be relevant to the Court's analysis. *Cf. Dizdar v. State Farm Lloyds*, No. 7:14-CV-523, 2015 U.S. Dist. LEXIS 186873, at *37 (S.D. Tex. Jan. 7, 2015) (indicating that the court retains the discretion to order production in a "minimally searchable form . . . even though more easily searched forms might be available at equal or less cost to the responding party").

Given the court's broad discretion in this area, courts have taken a variety of different approaches to resolving disputes over the appropriate format for the production of text messages and other electronically stored information. In *Yoder v. Frontier Nursing Univ., Inc.*, No. 3:17-CV-18, 2018 WL 1524395, at *1 (W.D. Pa. Mar. 28, 2018), in response to motion to compel production of documents, the Western District of Pennsylvania ordered the plaintiff to produce any relevant text messages in native format or in another format agreed to by the moving party. In

24

*Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066-RHB, 2016 WL 6583592, at *2 (W.D. Mich. Feb. 16, 2016), the Western District of Michigan, in the context of a motion to compel that partly concerned the format for the defendant's production of text messages, initially ordered an evidentiary hearing with the defendant's computer consultant but subsequently cancelled that hearing after the parties filed a stipulation pursuant to which the defendant had agreed that his computer consultant would deliver to plaintiff's forensics analyst "'all of the raw data contained with his iPhone' for the purpose of searching for text messages." In *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, No. 2:15-CV-00631-AJS, 2015 WL 12791338, at *5 (W.D. Pa. July 28, 2015), the Western District of Pennsylvania recommended that counsel for the parties meet and confer regarding the form of their production of relevant text messages. Finally, in *Henderson v. Chicago Cubs Baseball Club*, LLC, No. 5:17-CV-02366-SVW-SK, 2018 WL 3326684, at *1 (C.D. Cal. June 14, 2018), this district, in the context of a motion to compel, ordered the plaintiff to "produce these text messages in a form that shows the sender, recipient, time, and date the messages were sent, as required by the Federal Rules of Civil Procedure."

Consistent with these authorities, the Court finds that Defendants must produce the text messages either in the spreadsheet form as originally produced, albeit inadvertently, or, alternatively, in an otherwise mutually agreeable usable format that preserves the integrity of the threads of communication reflected in the text messages.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED in part and DENIED in part. The Motion is GRANTED as to the Horbaczewski/DeVito personal communications and iNotes reflected in Exhibit 119. These documents may be withdrawn and need not be re-produced.

The Motion is DENIED in all other aspects as to text message communications between Horbaczewski, Mazzeo, and DRL employees Gury, Smith and Budding. **Within 14 days of the date of this Order,** Defendants shall produce the text messages between Horbaczewski, Mazzeo, and DRL employees Gury, Smith, and Budding as originally disclosed or in another mutually agreeable usable format. Any privileged information must be identified on a privilege log. Confidential information should be so designated pursuant to the terms of the Stipulated Protective Order.

DATED: April 22, 2019

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

26