UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE PLAINTIFF DANIEL KANES' SPECIAL MOTION TO STRIKE DEFENDANT NICHOLAS HORBACZEWSKI'S COUNTERCLAIM (DKT. 117);**

**PLAINTIFFS' MOTION TO DISMISS NICHOLAS HORBACZEWSKI'S COUNTERCLAIM AGAINST DANIEL KANES (DKT. 99);**

**DEFENDANTS' MOTION FOR REVIEW OF NON-DISPOSITIVE RULING REGARDING MOTION TO COMPEL PRODUCTION OF JUNE 22, 2015 NOTES (DKT. 209);**

**PLAINTIFFS' MOTION FOR REVIEW AND RECONSIDERATION OF NON-DISPOSITIVE RULING REGARDING MAGISTRATE JUDGE STEVENSON'S ORDER RE DEFENDANTS' MOTION TO COMPEL PRODUCTION OF TEXT MESSAGES (DKT. 220)**

I.    <u>Introduction</u>

On July 10, 2017, Justice Laub ("Laub") brought this action against Nicholas Horbaczewski ("Horbaczewski") and Drone Racing League, Inc. ("DRL, Inc.") (collectively, "Defendants") in the Los Angeles Superior Court. Dkt. 1-1. The Complaint advanced claims for breach of contract, common count, fraud and breach of fiduciary duty. On August 22, 2017, Defendants removed the action. Dkt. 1.

On September 27, 2017, Daniel Kanes ("Kanes") and Laub (collectively, "Plaintiffs") filed an amended complaint ("FAC"). Dkt. 13. It advanced claims against Horbaczewski for breach of oral contract, breach of written contract, fraud, breach of fiduciary duty and intentional interference with prospective economic advantage. *Id.* It also brought claims for breach of implied contract and common count against all Defendants. *Id.* Defendants filed a motion to dismiss the FAC, which was granted in part. Dkt. 39.

On April 13, 2018, Plaintiffs filed a second amended complaint ("SAC"). Dkt. 42. It advanced claims for breach of oral, written and implied-in-fact contract and quantum meruit against both Defendants, and claims for fraud, breach of fiduciary duty, intentional interference with prospective economic advantage and promissory estoppel against Horbaczewski. Defendants filed a motion to dismiss the SAC, which was granted in part. Dkt. 60. The motion to dismiss the SAC was granted, without prejudice, as to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

claims for breach of written contract and breach of implied contract. *Id.* It was denied as to all other claims. *Id.*

On July 19, 2018, Plaintiffs filed a third amended complaint ("TAC"). Dkt. 62. It presents the same causes of action as the SAC. Defendants filed a motion to dismiss the TAC, which was denied. Dkt. 107. On January 16, 2019, Defendants filed an answer to the TAC. Dkt. 114.

On November 19, 2018, Horbaczewski filed a counterclaim ("Counterclaim") against Kanes for defamation *per se*. Dkt. 90. On December 13, 2018, Kanes filed a motion to dismiss the Counterclaim ("Motion to Dismiss"). Dkt. 99. Horbaczewski filed an opposition, Kanes filed a reply, and Horbaczewski filed a sur-reply. Dkts. 106, 111, 121. On January 18, 2019, Kanes filed a special motion to strike the Counterclaim pursuant to Cal. Code Civ. P. § 425.16 ("Special Motion to Strike"). Dkt. 117. Horbaczewski filed an opposition, and Kanes filed a reply. Dkts. 142, 147.

On February 25, 2019, Defendants filed a motion to compel the production of text messages exchanged between Kanes and Laub, and between Plaintiffs and Kanes' brother, Aaron Kanes. Dkt. 152. The parties briefed the motion in the joint stipulation format pursuant to Local Rule 37-2. *Id.* On March 5, 2019, Defendants also filed a motion to compel the production of certain notes taken by Jennifer Post, former counsel to Plaintiffs, on June 22, 2015, which Plaintiffs had declined to produce, asserting attorney-client privilege. Dkt. 160. Plaintiffs filed an opposition to the motion to compel production of the notes, and Defendants filed a reply. Dkt. 167, 168. Magistrate Judge Karen Stevenson held a hearing on both motions to compel on March 27, 2019, and the matters were taken under submission. Dkt. 177.

On April 15, 2019, Judge Stevenson issued an order that denied Defendants' motion to compel production of the notes. Dkt. 187. Defendants filed a motion for review of that ruling on April 29, 2019 ("Defendants' Motion for Review"). Dkt. 209. Plaintiffs filed an opposition, and Defendants filed a reply. Dkts. 218, 238. On April 30, 2019, Judge Stevenson issued an order that granted in part and denied in part Defendants' motion to compel production of the text messages. Dkt. 212. Plaintiffs filed a motion for review of that ruling on May 14, 2019 ("Plaintiffs' Motion for Review"). Dkt. 220. Defendants filed an opposition, and Plaintiffs filed a reply. Dkts. 254, 279.[1]

A hearing was held on these matters on June 17, 2019, and they were taken under submission. Dkt. 309. For the reasons stated in this Order, the Motion to Dismiss and the Special Motion to Strike are **GRANTED**, Defendants' Motion for Review is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' Motion for Review is **DENIED**.

## II.   Factual Background

### A.   The Parties

Both Laub and Kanes reside in California. TAC ¶¶ 6, 7. Horbaczewski resides in New York. *Id.* ¶ 8. DRL,

---

[1] In the interim, Plaintiffs and Defendants each have filed motions for summary judgment, as well as motions to exclude the reports and testimony of various expert witnesses. Dkts. 194, 225, 228, 229, 230, 234. Those motions will be addressed in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Inc. is a Delaware corporation. *Id.* ¶ 9.

    **B.**    Allegations in the TAC

The TAC alleges that in 2014, Plaintiffs conceived the idea of a televised drone racing league ("DRL") and agreed to be partners in the venture. *Id.* ¶ 16. It also alleges that, in order to proceed with this project, they began meeting with prospective partners and investors in early 2015. *Id.* ¶ 17. The TAC alleges that, in January 2015, Plaintiffs presented their idea to Blank Paige Productions ("Blank Paige"), a television production company located in Los Angeles. *Id.* It also alleges that, on January 22, 2015, Matthew Mazzeo ("Mazzeo"), a venture capitalist who resides in California, introduced Plaintiffs to Horbaczewski, having identified him as a potential investor in the project. *Id.* ¶ 18.

The TAC next alleges that Plaintiffs and Horbaczewski "corresponded and talked on the phone numerous times" over the following weeks and conducted additional in-person meetings in Los Angeles on March 11-12, 2015. *Id.* ¶ 19. It also alleges that during these meetings Plaintiffs and Horbaczewski "orally agreed to be partners in and co-founders of the DRL, with each owning a third of the company." *Id.* ¶ 20.

During February and March 2015, Plaintiffs and Horbaczewski allegedly jointly drafted and agreed to a "Business Plan." *Id.* ¶ 21. To facilitate this process, Horbaczewski uploaded a draft of the Business Plan to the "Google Docs" platform, which allowed all three of them to access and make written comments and proposed changes to it. *Id.* Through that process, in February 2015, Plaintiffs added the following language about the shared ownership of the planned operation: "At this Time [sic] we are thinking 33% Dan [Kanes], 33% Justice [Laub], and 33% Nick [Horbaczewski]. We want to give Matt [Mazzeo] the additional 1% for introducing us." *Id.* This language remained in the Business Plan. *Id.* ¶ 22.

The TAC alleges that, during their meetings in March 2015, Plaintiffs and Horbaczewski "discussed the Business Plan and orally agreed to the material terms contained [there]in." *Id.* ¶ 23. It alleges that they "discussed that the language describing the material terms set forth in the Business Plan was intended by the Parties to mean that each of them would own 33% of the DRL and they would work together as co-founders." *Id.* ¶ 24. It alleges that "[t]he Parties further discussed that this language was intended to mean that they would have the option of granting Matt Mazzeo 1% of the DRL for introducing Dan and Justice to Horbaczewski," but "[t]he Parties did not exercise the option to grant Matt Mazzeo 1% of the DRL within a reasonable period of time." *Id.* It alleges further that "[t]he Business Plan includes an implied term that the 1% of the DRL which was available to be granted to Matt Mazzeo would be divided equally between Dan [Kanes], Justice [Laub], and Horbaczewski if the option to grant Matt Mazzeo 1% was not exercised." *Id.* The TAC also alleges that "[i]mmediately after the March 11-12, 2015 meetings, Dan [Kanes], Justice [Laub], and Horbaczewski proceeded to act together as partners and co-founders to continue the development of their drone racing venture." *Id.* ¶ 25.

The TAC next alleges that, during the March meetings, Horbaczewski stated that he intended to serve as CEO of the operation, invest $250,000 as seed money and work on business development. *Id.* ¶ 26. Laub and Kanes were to provide ideas for the DRL, and assist with technical issues and logistics, community outreach, marketing, strategy, location scouting, and competitor and fan interaction and experience. *Id.* Kanes allegedly offered to invest $250,000 in the venture, but Horbaczewski declined to require it, stating that "Plaintiffs did not need to contribute capital because they had contributed their ideas, concepts, and existing work product to the venture." *Id.* It is also alleged that, between January and the fall of 2015,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Plaintiffs "performed substantial work for Horbaczewski and the yet-to-be-formed DRL to help get it off the ground." *Id.* ¶¶ 30, 51; *see id.* ¶¶ 31-40.

It is alleged that on February 9, 2015, Plaintiffs received an offer from Blank Paige to develop and televise a program featuring drone racing. *Id.* ¶ 28. Plaintiffs allegedly sought advice from Horbaczewski about the offer. *Id.* On February 16, 2015, Horbaczewski allegedly urged them to reject the offer because the three of them would get better financial returns from DRL by retaining the associated television rights. *Id.*

Horbaczewski then allegedly requested that Plaintiffs provide him with written biographies and other personal information about themselves. *Id.* ¶ 41. It is next alleged that after they did so, he used this information "to identify Plaintiffs as co-founders of the DRL in pitch decks shown to one or more potential investors." *Id.* It is alleged that, between April and June 2015, Plaintiffs and Horbaczewski met in Los Angeles two to three times about their planned operation. *Id.* ¶ 43. It is also alleged that, during these meetings, Plaintiffs "repeatedly asked . . . for more formal documentation of their co-ownership of the DRL," but that "Horbaczewski repeatedly dodged the issue, claiming that it could not be done until the company was formed." *Id.*

The TAC next alleges that Horbaczewski incorporated DRL, Inc. in Delaware on April 17, 2015. *Id.* ¶ 44. It is also alleged that he did so without providing any advanced notice to Plaintiffs and without providing them with any ownership interests in this entity. *Id.* On May 27, 2015, Horbaczewski allegedly informed Laub and Kanes that he was actively seeking funding, but had not yet obtained any. *Id.* ¶ 45. The TAC then alleges that he next said that the three of them should invest funds in DRL "on the same terms." *Id.* The TAC then alleges that, on or about August 19, 2015, Horbaczewski sent Kanes documents that offered him the opportunity to invest in DRL, Inc. on the same terms as outside investors. *Id.* ¶ 46. However, these documents did not acknowledge their existing agreement that each of them would own one-third of the company. *Id.* Those documents allegedly stated that Horbaczewski and three others already had invested in DRL, Inc. *Id.* ¶ 47. The TAC alleges that, prior to seeing these documents, neither Laub nor Kanes was aware of either the corporate structure or the shareholders of DRL, Inc. *Id.* ¶ 48. It also alleges that they could not have discovered this information through the exercise of reasonable diligence. *Id.* On August 24, 2015, Kanes allegedly declined to invest in DRL, Inc. on the same terms as the existing investors because the investment documents failed to recognize that he already owned one-third of the entity. *Id.* ¶ 49. The next day, DRL, Inc. allegedly completed the sale of shares to certain outside investors. *Id.* ¶ 50.

Finally, the TAC alleges that Plaintiffs continued to provide valuable services to Horbaczewski and DRL, Inc. until the fall of 2015. *Id.* ¶¶ 51-53. In late 2015, Horbaczewski stopped communicating with the Plaintiffs. *Id.* ¶ 52.

      C.     Allegations in the Counterclaim

The Counterclaim alleges that, in March 2018, Horbaczewski discovered that the entry for the DRL on the website Wikipedia had been modified to include certain false information about him and the founding of the DRL. Counterclaim ¶ 47. The "History" section of the DRL entry was modified to read, in relevant part:

      The Drone Racing League was founded by Nicholas Horbaczewski, who previously
      served as the Chief Revenue Officer at Tough Mudder, Dan Kanes who wrote and created

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

the original concept, and Justice Laub who had done business and marketing development.[5] [2]

Horbaczewski first heard of the concept of Drone Racing League from Dan Kanes, who had written a detailed pitch deck for the league, and Justice Laub who Dan had partnered with for Business development of his original concept in January 2015.[6]

*Id.*; Ex. A to Counterclaim, Dkt. 90-1 at 3. As modified, footnote six contained a link to a Law.com article entitled, "Drone Racing League Was Our Idea, Tech Enthusiasts Say." Counterclaim ¶ 47; Ex. B to Counterclaim, Dkt. 90-2. The sub-headline of that article states: "A suit filed last week by Bartko Zankel Bunzel & Miller alleges that a New York investor stole the idea to create a 'Nascar for the gaming generation.'" *Id.* The linked article is included in full as Exhibit B to the Counterclaim. It describes the allegations of the complaint in this action; cites the denials of those allegations by a representative of the DRL and by counsel for Horbaczewski; makes comments about potential strengths and weaknesses of the plaintiffs' case; and references a different legal action brought by Horbaczewski and the DRL in New York state court against Laub for a declaration that Laub is not an owner of the DRL.

In response to interrogatories served in this action, Plaintiffs confirmed that Kanes "edited the Wikipedia entry for the Drone Racing League to reflect that the founders of the DRL were Nicholas Horbaczewski, Dan Kanes, and Justice Laub." Counterclaim ¶ 51. It is alleged that the modifications to the DRL Wikipedia entry were false, and that Kanes knew or reasonably should have known that the statements were false. *Id.* ¶¶ 1, 11-46, 56. It is further alleged that "Kanes deliberately linked these statements via a footnote" to the Law.com article, which "includes Plaintiffs' accusations that Mr. Horbaczewski was 'secretly cutting them out of the company,' 'intended to steal plaintiffs' ideas and the entire DRL for himself,' and engaged in 'a cynical plot to steal their ideas for a televised drone racing league, claim all the credit for himself, and cheat them out of their rightful ownership of two-thirds of the Drone Racing League.'" *Id.*

The Counterclaim alleges that the modifications at issue were made on January 27, 2018. *Id.* ¶ 53. The modified entry remained on the Wikipedia site until August 30, 2018, when the disputed statements were removed by Wikipedia. *Id.* ¶ 52. It is alleged that the DRL Wikipedia entry received over 12,000 page views between the date the modifications were made and the date they were removed. *Id.* It is further alleged that "Wikipedia is one of the most popular websites in the world with page views every month reported to be in the billions," and the Wikipedia entry for the DRL is one of the top search hits on Google for "Drone Racing League." *Id.* ¶ 59.

The Counterclaim alleges that "Kanes knew or should have known that disseminating such misinformation would cause readers to believe that Mr. Horbaczewski is lying about founding DRL by himself and that he stole the concept for DRL from Plaintiffs and cheated them out of an ownership share, none of which is true." *Id.* ¶ 57. It is alleged that Horbaczewski suffered reputational harm from the disputed statements. *Id.* ¶ 57.

---

[2] Footnotes 5 and 6 are citations to other online sources. Footnote 5 is not material for the purposes of these motions. Footnote 6, by contrast, is central to the Counterclaim. Accordingly, it is discussed further in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|----------|-------------------------|------|---------------|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

### III.   Request for Judicial Notice

Horbaczewski filed a request for judicial notice ("Request") in connection with his opposition to the Motion to Dismiss. Dkt. 106-1. The Request seeks judicial notice of the following documents:

1. Copy of the Wikipedia page for "Wikipedia," publicly available at: https://en.wikipedia.org/wiki/Wikipedia.
2. Copy of the version of the "Drone Racing League" Wikipedia page that existed immediately prior to Mr. Kanes' edits on January 27, 2018, publicly available at: https://en.wikipedia.org/w/index.php?title=Drone_Racing_League&oldid=820209501.
3. Copy of the Business Insider article referenced in the Law.com article, publicly available at: https://www.businessinsider.com/drone-racing-leaguefounder-nick-horbaczewski-2017-2.
4. Copy of the Crain's New York Business article entitled "40 Under 40 Class of 2017," publicly available at: https://www.crainsnewyork.com/awards/40-under-40-class-2017.
5. Copy of a Tech Crunch article entitled "Drone Racing League raises a $20M Series B ahead of its 2nd season," publicly available at: https://techcrunch.com/2017/06/12/drone-racing-league-raises-a-20m-series-bahead-of-its-2nd-season/.
6. Copy of a Wall Street Journal entitled "Developer Stephen Ross's RSE Ventures Invests in Drone Racing," publicly available at: https://www.wsj.com/articles/developer-stephen-rosss-rse-ventures-invests-indrone-racing-1439 327632.

*Id.* at 2. Pursuant to Fed. R. Evid. 201, a court may take judicial notice of facts that are either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court may take judicial notice of the existence of news articles for the purpose of determining what statements they contain." *Top Rank, Inc. v. Clarendon Nat'l Ins. Co.*, Case No. CV 08-3564 DSF, 2008 WL 11338472, at *4 (C.D. Cal. July 17, 2008) (citing *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991)). In addition, "[t]he 'incorporation by reference' doctrine . . . permits [a court] to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (brackets removed). The Ninth Circuit "ha[s] extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.*

The Request is unopposed. Kanes does not dispute the accuracy or authenticity of any of these documents. Each document is appropriate for judicial notice and/or incorporation by reference. Accordingly, the Request is **GRANTED**, to the extent it seeks consideration of the attached documents in connection with the Motion to Dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

**IV.** **Analysis**

    A.     Motion to Dismiss

          1.     Positions of the Parties

Kanes makes several arguments to support his position that the Counterclaim should be dismissed because it fails to state a claim for libel *per se*. Dkt. 99 at 10. *First*, Kanes argues that the statements alleged to be defamatory are not reasonably susceptible of a defamatory meaning, in that "no reasonable reader would interpret any of these statements to injure Mr. Horbaczewski's reputation." *Id.* at 10-11. Kanes contends that, although the statements at issue may "fail to advance Mr. Horbaczewski's reputation as much as he would like," that is not a viable basis for a claim of defamation. *Id.* at 11.

*Second*, Kanes argues that the statements are not defamatory on their face, but that "[l]ibel *per se* requires a defamatory meaning that is apparent to a reader from the language itself without the necessity of any explanation or extrinsic facts." *Id.* at 12-13. Kanes asserts that there is no support for the defamatory meaning that is alleged to be implicit in the disputed statements, *i.e.*, that readers would "believe that Mr. Horbaczewski is lying about founding DRL by himself and that he stole the concept for DRL from Plaintiffs and cheated them out of an ownership share," and that a reasonable reader could not arrive at that meaning without special knowledge of extrinsic facts or circumstances. *Id.* at 13-14.

*Third*, Kanes argues that his alleged use of a hyperlink to the Law.com article did not constitute a republication, and for this reason, "Horbaczewski cannot rely upon the contents of the [L]aw.com article to support his libel claim." *Id.* at 14-15. Kanes also asserts that the Communications Decency Act, 47 U.S.C. §230(c)(1), provides him with immunity from liability as to the statements in the Law.com article, because he is the "user" of an "interactive computer service," and not the original source of the Law.com article. Dkt. 111 at 6-7. Kanes further contends that the Law.com article should not be considered as a form of "context" for the Wikipedia entry, because the typical Wikipedia user would not read the source article cited in a footnote "as part of an ordinary reading." *Id.* at 5.

*Fourth*, Kanes argues that the Law.com article is not defamatory; "when the [L]aw.com article is reviewed in its entirety, it is self-evident that the article relates to allegations made in the First Amended Complaint filed in this litigation . . . [and] makes no assertion about the truth or falsity of these allegations." Dkt. 99 at 17-18. Kanes emphasizes that "[t]he article even includes denials from the Drone Racing League and a statement from Defendants' counsel of record that the claims asserted in the litigation are meritless," and that "[t]he context dulls the meaning of these statements such that they are not reasonably subject to a defamatory meaning." *Id.* at 18.

Horbaczewski responds that Kanes' interpretation of the disputed statements is too narrow, and they are, in fact, reasonably susceptible of a defamatory meaning. Dkt. 106 at 5. Horbaczewski contends that, "[b]y asserting as truth that Plaintiffs were co-founders who created the concept for the company, and linking it to their false allegations, the most obvious meaning was exactly what Mr. Horbaczewski intended: that Mr. Horbaczewski lied about founding the DRL himself and stole the idea from them." *Id.* Horbaczewski argues that Kanes impermissibly analyzes the disputed statements in piecemeal fashion, including viewing the textual edits to the Wikipedia entry and the link to the Law.com article in isolation from one another, whereas "it is well-settled law that the defamatory meaning of a statement must be determined

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

by looking to the publication as a whole." *Id.* at 5, 12. Horbaczewski adds that "[h]yperlinks are routinely considered part of the context of a defamatory statement," and that "[t]he article provides context that makes the import of Mr. Kanes' changes to the website clear":

> Having presented as truth the fact that Plaintiffs were cofounders and that the idea originated with Mr. Kanes, Mr. Kanes then links to an article that includes the false allegations from the Complaint that Mr. Horbaczewski cheated these co-founders and stole the idea for himself. A reasonable reader could conclude that the meaning of the defamatory statement is precisely that.

*Id.* at 14-15. Horbaczewski also highlights the context of the disputed statements, in that Wikipedia is an encyclopedia and therefore the link to the Law.com article "gave the allegations the appearance of objective truth." *Id.* at 12-13, 17-18.

Horbaczewski further argues that he need not show that Kanes "republished" the Law.com article to prevail on his claim, but that even if there were such a requirement, Kanes' actions constituted republication. Thus, he contends that by "substantively modif[ying] the Wikipedia entry for the DRL in a manner that was directly related to the article that he linked, breathing new life to an article that was languishing in internet obscurity." *Id.* at 21.

Finally, Horbaczewski contends that the Communications Decency Act does not shield Kanes from liability for two reasons: (i) Kanes acted as an "information content provider," and such conduct is beyond the scope of the protection provided by the Act; and (ii) the Law.com article provides context for the allegedly defamatory statements in the Wikipedia article, but is not the crux of the Counterclaim. Dkt. 121. Horbaczewski argues that "Kanes' republication of the Law.com article to the DRL Wikipedia page does not change the fact that Mr. Kanes personally drafted the defamatory content on the Wikipedia page," and "does not magically transform information created by Mr. Kanes into third-party content that is subject to immunity under the CDA." *Id.* at 4.

        2.    <u>Legal Standards</u>

            a)      Motion to Dismiss

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|----------|--------------------------|------|----------------|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

(9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). In considering a motion brought pursuant to Rule 12(b)(6), a court may consider the complaint, documents attached to, or incorporated by reference in the complaint, and matters that are properly the subject of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 1990), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

b)      Defamation

The California Civil Code defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. The elements of a claim for defamation, or libel, are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007).

"There are generally two types of libel recognized in California—libel per se and libel *per quod*." *Bartholomew v. YouTube, LLC*., 17 Cal. App. 5th 1217, 1226 (2017). "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Cal. Civ. Code § 45(a).   "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." *Id.* This framework has been described as follows:

> If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all. If such a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense, then (under section 45a and the cases . . . which have construed it) there is a libel per se. But if the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then (under the same authorities) the libel cannot be libel per se but will be libel *per quod* [and proof of special damages is required].

The purpose of the rule requiring proof of special damages when the defamatory meaning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

does not appear on the face of the language used is to protect publishers who make statements innocent in themselves that are defamatory only because of extrinsic facts known to the reader. . . . Where the language is ambiguous and an explanation is necessary to establish the defamatory meaning, the pleader must do two things: (1) Allege his interpretation of the defamatory meaning of the language (the "innuendo"); (2) support that interpretation by alleging facts showing that the readers or hearers to whom it was published would understand it in that defamatory sense (the "inducement"). The office of an innuendo is to declare what the words *meant* to those to whom they were published. In order to plead ambiguous language into an actionable libel it is incumbent upon the plaintiff also to plead an inducement, that is to say, circumstances which would indicate that the words *were understood* in a defamatory sense *showing that the situation or opinion of the readers was such that they derived a defamatory meaning from them*.

*Bartholomew,* 17 Cal. App. 5th at 1226-27 (internal quotations and alterations removed).

"California courts in libel cases have emphasized that the publication is to be measured, not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) (internal quotations omitted). "Further, the publication in question may not be divided into segments and each portion treated as a separate unit; it must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it." *Bartholomew,* 17 Cal. App. 5th at 1227-28. "So long as the publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists." *Kaelin,* 162 F.3d at 1040.

3.      Application

As noted, the alleged libel consists of alterations that are included in the following excerpt from the Wikipedia entry for the DRL:

> The Drone Racing League was founded by Nicholas Horbaczewski, who previously served as the Chief Revenue Officer at Tough Mudder, Dan Kanes who wrote and created the original concept, and Justice Laub who had done business and marketing development.[5]
>
> Horbaczewski first heard of the concept of Drone Racing League from Dan Kanes, who had written a detailed pitch deck for the league, and Justice Laub who Dan had partnered with for Business development of his original concept in January 2015.[6]

Counterclaim ¶ 47; Ex. A to Counterclaim, Dkt. 90-1 at 3. The modified footnote six corresponded to the following text: "6. Graham, Scott. 'Drone Racing League Was our Idea, Tech Enthusiasts Say' (https://www.law.com/corpcounsel/sites/therecorder/2017/10/02/drone-racing-league-was-our-idea-tech enthusiasts-say/). Law.com." Ex. A to Counterclaim, Dkt. 90-1 at 6.

Footnote six included a hyperlink to the article cited, which is included in full as Exhibit B to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Counterclaim. Counterclaim ¶ 47; Ex. B to Counterclaim, 90-2. The sub-headline of the article states: "A
suit filed last week by Bartko Zankel Bunzel & Miller alleges that a New York investor stole the idea to
create a 'Nascar for the gaming generation.'" *Id.* The article describes the allegations of the complaint in
this action, cites the denials of those allegations by a representative of the DRL and by counsel for
Horbaczewski, makes comments about potential strengths and weaknesses of the plaintiffs' case, and
refers to a separate legal action brought by Horbaczewski and the DRL in New York against Laub
seeking a declaration that Laub is not an owner of the DRL.

If the content of the hyperlinked article is not considered, it is clear that the disputed statements are not
defamatory on their face. The textual additions to the Wikipedia entry are not, absent extrinsic facts or
explanation, reasonably susceptible to a meaning that is defamatory. This conclusion is the same
whether the statements written by Kanes are read with, or without, the title of the hyperlinked article.
Without extrinsic facts or explanation, the title of the hyperlinked article, "Drone Racing League Was our
Idea, Tech Enthusiasts Say," presents no negative connotation that alone, or together with the
substantive additions by Kanes, denigrates Horbaczewski.

As Kanes argues, the disputed statements may "fail to advance Mr. Horbaczewski's reputation as much
as he would like," by stating that the DRL was created jointly rather than by Horbaczewski alone. Dkt. 99
at 11. However, that is insufficient to support a claim of defamation. Absent extrinsic evidence, the textual
additions by Kanes do not reasonably support the interpretation suggested by Horbaczewski, *i.e.*, that the
statements would "cause readers to believe that Mr. Horbaczewski is lying about founding DRL by
himself and that he stole the concept for DRL from Plaintiffs and cheated them out of an ownership share,
none of which is true." Counterclaim ¶ 57. Upon reading the edited Wikipedia entry and viewing the title of
the hyperlinked article, the average reader "would be able to recognize a defamatory meaning [if at all]
only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication,
which are not matters of common knowledge rationally attributable to all reasonable persons."
*Bartholomew*, 17 Cal. App. 5th at 1226-27. Accordingly, Kanes' textual additions to the Wikipedia entry
are insufficient to support a claim for libel *per se*. *Id.*

A closer question is presented as to whether Kanes' edits to the Wikipedia page can form the basis of a
libel *per se* claim, when read together with the content of the hyperlinked article. As an initial matter, it is
not clear that the average reader could be expected to read the content of a hyperlinked reference
together with the substance of the article. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (in
evaluating a defamation claim, a court "must take into account 'all parts of the communication that are
ordinarily heard or read with it'"). The title of the hyperlinked article, which can be viewed by hovering over
the footnote number or by scrolling down to the footnotes section of the Wikipedia entry, might be
"ordinarily . . . read with" the content of the Wikipedia entry that Kanes had edited. *Id.* But the basis is far
more tenuous for the assumption that the average reader would read each source cited in the footnotes
of a Wikipedia entry, even when the sources are readily accessible through hyperlinks. However, even
assuming that it is reasonable to conclude that a reader would review the Wikipedia entry together with
the hyperlinked article, there is still an insufficient basis for a libel *per se* claim against Kanes.

Horbaczewski does not argue that the Law.com article is "defamatory or actionable standing on its own."
Dkt. 142 at 16-17; *see also id.* at 17 n.4 ("Horbaczewski has not alleged that the statements in the
Law.com article are themselves defamatory"). Rather, he contends that "the contents of the Law.com
article provide further context that underscores the defamatory impact of Mr. Kanes' edits to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Wikipedia entry." *Id.* at 17. Horbaczewski further contends that "[t]he link to that article was used as a vehicle to highlight Plaintiffs' false accusations on one of the most popular websites in the world," and adds that "Kanes does not get a free pass because the false statements are indicated as coming from a complaint—particularly one that originated with him." *Id.* at 17-18; Dkt. 106 at 16.

The hyperlinked article describes the allegations of the First Amended Complaint in this action, through a series of paraphrases and quotations of that pleading. Although it repeats certain allegations of the complaint, the article states that the allegations by Laub and Kanes are contested. The article further notes that Horbaczewski and DRL, Inc. sued Laub in New York seeking a judicial declaration that Laub is not an owner of the DRL. Specifically, it states:

> Horbaczewski and DRL haven't formally answered yet, but in a notice of removal to federal court their attorneys at Morrison & Foerster say the oral and written contracts described by Laub simply don't exist. "Mr. Laub has no right to any interest in DRL, and he only asserted his meritless claims after the public announcement of a large private investment in DRL," MoFo partner Kenneth Kuwayti wrote.

> A company spokesperson said the league "vehemently denies the claims made. However, we do not comment on pending litigation."

> Horbaczewski and DRL have also sued Laub in New York state court for a declaration that Laub is not an owner. According to the complaint, as Horbaczewski built DRL, Laub tentatively agreed to work as an independent contractor for a 1 percent stake that would vest over four years. But Laub never performed any work for the company and months later Horbaczewski withdrew the offer.

Ex. B to Counterclaim, Dkt. 90-2 at 3. The article also discusses the strengths and weaknesses of Plaintiffs' case. For example, it states:

> The written contract alleged by Laub and Kanes does sound pretty vague. They point to a March 2015 business plan that says "at this time we are thinking 33 percent Dan, 33 percent Justice and 33 percent Nick" as the capital structure.

> But the two plaintiffs, who are represented by Bartko partners Patrick Ryan and Stephen Steinberg, tell a story with at least surface appeal for potential jurors.

*Id.*

When the entire hyperlinked article is considered, rather than small portions of it, the article does not convey factual information as objective truth, but rather describes the cross-allegations within a contested civil action. As noted, Horbaczewski does not contend that the Law.com is itself defamatory. Accordingly, the argument that Kanes plucked the Law.com article from obscurity and increased its online visibility is not a material one. The crux of Horbaczewski's argument is that the article "serves to reinforce the injurious impact of the Wikipedia edits," and "exacerbated the[ir] defamatory effect." Dkt. 142 at 17. However, the Law.com article does not push Kanes' edits over the threshold from non-defamatory to actionable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

The Counterclaim presents a single cause of action for defamation *per se*. However, the statements that form the basis for the claim do not satisfy its elements. Because the entirety of the allegedly libelous statements are set forth in the Counterclaim and its exhibits, and because those statements are insufficient to state a claim for libel *per se*, any amendment to the Counterclaim would be futile. For the foregoing reasons, the Motion to Dismiss is **GRANTED** with prejudice.

      B.     Special Motion to Strike

          1.     <u>Legal Standards</u>

               a)     The Anti-SLAPP Statute

The term "SLAPP" is an acronym for "strategic lawsuit against public participation." Cal. Code Civ. P. § 425.16. Such an action "is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (2010). Accordingly, the anti-SLAPP statute applies to any "cause of action against a person arising from any act . . . in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Code Civ. P. § 425.16(b)(1).[3] It provides that such a cause of action "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* The statute "is designed to nip SLAPP litigation in the bud by striking offending causes of actions which chill the valid exercise of the constitutional rights of freedom of speech and petition." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997) (internal quotation marks omitted).

A two-step analysis is used to determine whether a motion to strike under Section 425.16 should be granted. *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* To make this showing, the defendant must demonstrate the alleged conduct "underlying the plaintiff's cause fits one of the categories spelled out in [S]ection 425.16." *Id.* Second, if the claim arises from protected conduct, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* If the plaintiff cannot meet this burden, the claim must be stricken. *Id.*

"The prevailing party on a special motion to strike is entitled to attorney's fees and costs to compensate them for the expense of responding to the SLAPP suit and the motion." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999) (citing Cal. Code Civ. P. § 425.16(c)).

---

[3] Such acts include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. § 425.16(e).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

> b)   Anti-SLAPP Motions in Federal Proceedings

"The degree to which the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure has been hotly disputed." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, No. 18-696, 2019 WL 1428954 (U.S. Apr. 1, 2019). "In order to prevent the collision of California state procedural rules with federal procedural rules, [courts in the Ninth Circuit] will review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Id.* "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* at 834. By contrast, "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Id.*

The Ninth Circuit also has determined that, because the fees provision of Cal. Code Civ. P. § 425.16(c) does not conflict with the Federal Rules of Civil Procedure, it also applies in federal court. *Lockheed*, 190 F.3d at 972.

> 2.   Application

For the reasons stated in the preceding section, the Counterclaim does not state a claim for defamation *per se*. Nor are the defects in the Counterclaim ones that can be remedied by its amendment. Accordingly, if the Counterclaim arises from the type of conduct protected by the anti-SLAPP statute, the Special Motion to Strike has merit and should be granted.

Kanes argues that the conduct underlying the Counterclaim clearly falls within the scope of the anti-SLAPP statute. *First*, he argues that Wikipedia is "a website accessible to the public," which qualifies as a public forum. Dkt. 117 at 15-16 (quoting *Kronemyer v. Internet Movie Database Inc.*, 150 Cal. App. 4th 941, 950 (2007) ("Web sites accessible to the public are 'public forums' for the purposes of the anti-SLAPP statute") (citing *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006))). Kanes adds that "Wikipedia comprises more than 40 million articles in 301 different languages," that the website "had reached 18 billion page views" by 2014, and that its "open-door policy of allowing anyone to edit had made Wikipedia the biggest and possibly the best encyclopedia in the world." *Id.* at 16 (quoting Ex. 2 to RJN, Dkt. No. 106-4 at 2 (printout of the Wikipedia webpage for Wikipedia)).

*Second*, Kanes contends that the DRL, "which is a popular sports league that undertakes extensive efforts to promote itself and is broadcast on major television networks," is a topic of public interest. *Id.* at 16-19. Kanes argues that "the question whether something is an issue of public interest must be construed broadly," and that "[t]he public interest requirement extends as a matter of law to speech concerning the creation and promotion of new sports leagues and related ventures." *Id.* at 16 (quoting *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 464 (2012)); *id.* at 17 (citing *Friedman v. DirecTV*, 262 F. Supp. 3d 1000 (C.D. Cal. 2015)). Kanes further argues that "Horbaczewski equates himself with the DRL and argues that statements about the DRL also relate to him," and, accordingly, "the DRL's efforts to promote itself are applicable to Horbaczewski in his capacity as CEO and one of the founders of the DRL." *Id.* at 17. Kanes then points out that "[t]he DRL and Horbaczewski promote themselves extensively through various traditional and social media," including articles in publications ranging from the *Wall Street Journal* to *Techcrunch*. *Id.* at 18. Kanes notes that "[t]he DRL's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

races are broadcast by traditional sports media channels, with Horbaczewski admitting that '55 million people worldwide watched the inaugural DRL World Championship Season on TV while 100 million watched online.'" *Id.* at 18 (citation omitted).

*Third*, Kanes asserts that the "gravamen" of the Counterclaim is this lawsuit, and for this reason Kanes' statements qualify as protected speech. *Id.* at 19-21. He argues that "the language that Horbaczewski complains about . . . only appear[s] in the . . . [L]aw.com article written about this lawsuit." *Id.* at 20. Kanes argues that "[t]he constitutional right of petition encompasses filing a complaint and statements made during litigation," and "[w]hat constitutes protected speech must be broadly construed." *Id.* at 20-21. For each of these reasons, Kanes contends that he "has satisfied his burden under prong one of the anti-SLAPP statute." *Id.* at 19.

Horbaczewski does not rebut these arguments in his briefing. Rather, his opposition to the Special Motion to Strike "[a]ssum[es] (without conceding) that Mr. Kanes' actions constitute the type of conduct protected by the anti-SLAPP statute." Dkt. 142 at 6.[4]

The alleged conduct underlying the Counterclaim is a protected activity within the meaning of the anti-SLAPP statute. Specifically, the Counterclaim concerns "written . . . statement[s] . . . made in . . . a public forum in connection with an issue of public interest." Cal. Code Civ. P. § 425.16(e)(3). Accordingly, both prongs of the anti-SLAPP analysis have been satisfied.

Kanes seeks an award of fees and costs in the connection with the Special Motion to Strike, in an amount to be determined upon his submission of "a full accounting." *Id.* at 32. Such an award is appropriate pursuant to Cal. Code Civ. P. § 425.16(c). As a "prevailing defendant on a special motion to strike," Kanes is "entitled to recover his . . . attorney's fees and costs." Cal. Code Civ. P. § 425.16(c).

For the foregoing reasons, the Motion to Strike is **GRANTED**, with the issue of a potential award of attorney's fees and costs to be addressed in response to a separate motion.

---

[4] At the hearing on the Motion to Strike, counsel for Horbaczewski discussed, for the first time, the "protected activity" prong of the anti-SLAPP analysis. Specifically, counsel for Horbaczewski emphasized the importance of context in determining whether speech is protected, in light of the recent decision of the California Supreme Court in *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 439 P.3d 1156 (2019). Counsel is correct that context is germane to determining whether speech falls within the ambit of the anti-SLAPP statute. However, *FilmOn* does not materially alter the law applicable here. *FilmOn* explains that courts have long applied contextual considerations in the anti-SLAPP analysis, "such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion.'" *Id.* at 1162 (internal citations omitted). Indeed, it is Kanes who urges the application of some of these contextual principles. Kanes posted the challenged statements in a public forum, and one in which other users could engage in iterative editing processes. The challenged statements concern a CEO who had placed himself in the public eye, with respect to his status as the founder of a highly popular sports league that is broadcast on major television networks – an issue also before this Court at all relevant times. While the purpose of Kanes' speech may not have been the pure promotion of public discourse, the potential that Kanes spoke with mixed motives does not outweigh the multiple, compelling bases for finding his speech protected. Accordingly, Horbaczewski's late, minimal argument at the hearing is insufficient to warrant a ruling in his favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

C.    Motions for Review

1.    <u>Legal Standards</u>

a)    Motion for Review of a Ruling of a Magistrate Judge

Fed. R. Civ. P. 72(a) provides the standards for the review by a district court of a non-dispositive ruling by a magistrate judge. It states that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a 'definite and firm conviction that a mistake has been committed.'" *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999) (citation omitted). A decision is "contrary to law" only if it "applies an incorrect legal standard or fails to consider an element of the applicable standard." *Na Pali Haweo Cmty. Ass'n v. Grande*, 252 F.R.D. 672, 674 (D. Haw. 2008).

b)    Motion to Compel Production of Documents

Fed. R. Civ. P. 26 governs the scope of discovery. It provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Pursuant to Fed. R. Civ. P. 37, "a party may move for an order compelling disclosure or discovery" when the opposing party fails to produce documents in response to a timely discovery request. If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, such payment should not be ordered if: (i) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (ii) "the opposing party's nondisclosure, response, or objection was substantially justified;" or (iii) "other circumstances make an award of expenses unjust." *Id.*

If a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). "But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.* Lastly, when a court grants in part and denies in part a motion to compel, it "may, after giving an opportunity to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

    2.    <u>Application</u>

        a)    Defendants' Motion for Review

            (1)    <u>Background</u>

                (a)    Procedural History

This dispute concerns notes taken by Jennifer Post ("Post"), former counsel to Plaintiffs, on June 22, 2015 ("June 22 Notes"). Plaintiffs contend that, because the June 22 Notes are subject to the attorney-client privilege, their production cannot be required. Defendants contend the June 22 Notes fall outside the attorney-client privilege -- either in whole or in part.

On November 9, 2018, Judge Stevenson held a telephonic conference as to several discovery disputes in this matter, including the dispute as to whether the June 22 Notes were subject to the attorney-client privilege. Dkt. 86. Judge Stevenson ordered Plaintiffs to produce the June 22 Notes for *in camera* review for the purpose of evaluating the claim of privilege. *Id.* at 1-2. On November 20, 2018, Plaintiffs filed a motion for review of this ruling, in which they argued that *in camera* review for this purpose was prohibited under California law. Dkt. 91. This Court held a hearing on the motion for review on February 4, 2019, and the matter was taken under submission. Dkt. 139.

On February 8, 2019, an Order issued that granted the motion for review as to this issue. Dkt. 141. It was determined that California law, not federal common law, governed whether *in camera* review was appropriate for the purpose of evaluating a claim of attorney-client privilege. *Id.* Accordingly, the November 9 ruling was vacated and the privilege dispute was remanded to Judge Stevenson, with the following proviso:

> To adhere to California law on privilege, a court may not require disclosure of a document for which privilege is claimed for the purpose of evaluating the claim of privilege. However, in making such an assessment, a court may require disclosure of certain other information, distinct from, but related to the disputed document itself. A court may also evaluate the evidence presented in support of the claimed privilege to determine whether a prima facie showing has been made. Further, *in camera* review is permissible in some circumstances, including when the party claiming privilege consents to such review or where the court determines the privilege has not been demonstrated and "conduct[s] or order[s] an in camera review of the communication at issue to determine if some protection is warranted notwithstanding the waiver or exception." *Costco*, 47 Cal. 4th at 740.

> For these reasons, this Order is not a final determination as to whether in camera review of the disputed document may be appropriate and in accord with California law. For example, if it is determined that Plaintiffs have not met their burden to make a prima facie showing of privilege, Plaintiff could consent to *in camera* review as a basis for seeking a review of the determination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

*Id.* at 8.

On February 15, 2019, Judge Stevenson held another telephonic status conference with the parties as to the privilege dispute. Dkt. 148. On March 5, 2019, Defendants filed a renewed motion to compel the production of the June 22 Notes. Dkt. 160. Plaintiffs filed an opposition to the motion to compel, and Defendants filed a reply. Dkt. 167, 168. Judge Stevenson held a hearing on the motion to compel on March 27, 2019, and then took the matter under submission. Dkt. 177. On April 15, 2019, Judge Stevenson issued an order that denied the motion ("April 15 Discovery Order"). Dkt. 187. On April 29, 2019, Defendants filed a motion for review of the April 15 Discovery Order, which is before this Court. Dkt. 209.

(b)     Factual Basis for the Motion

On June 22, 2015, Post hosted a meeting at the Los Angeles offices of the law firm Raines Feldman, where she worked at the time. Ex. 2 to Declaration of Kenneth A. Kuwayti ("Kuwayti Decl. I"), Dkt. 160-4 at 10; Declaration of Nicholas Horbaczewski ("Horbaczewski Decl."), Dkt. 160-10 ¶ 4; Ex. A to Horbaczewski Decl., Dkt. 160-11 at 2. The meeting was attended by Post, Kanes, Laub and Horbaczewski. *Id.* At her deposition, Post testified as follows about this meeting:

> I believe the meeting lasted -- the entire meeting lasted approximately two hours. However, we met with [Horbaczewski] for some period of time. And then [Kanes] met alone with [Horbaczewski] for some period of time. And then we resumed the meeting as a group after that.

Ex. 2 to Kuwayti Decl. I, Dkt. 160-4 at 10. Post was asked whether she took notes during the portion of the meeting she attended. She responded: "I remember bringing a legal pad and taking some notes." *Id.* In a declaration submitted with the motion to compel, Horbaczewski confirms that he "observed Ms. Post taking notes during the meeting." Horbaczewski Decl., Dkt. 160-10 ¶ 5.

In connection with Plaintiffs' opposition to the motion to compel, Plaintiffs filed a declaration from Post. It states, in relevant part:

> On June 22, 2015, Mr. Kanes, Mr. Laub and I met privately. On the same date, Mr. Kanes, Mr. Laub and I met with Mr. Horbaczewski. At that time, I was acting as Mr. Kanes' and Mr. Laub's attorney.
>
> I have reviewed my notes bearing the date June 22, 2015 that I understand were produced by Raines Feldman and provided to me via counsel for the Plaintiffs ("June 22, 2015 Notes"). Based on my best recollection, the entirety of the June 22, 2015 Notes reflect confidential attorney-client discussions that I had with Mr. Laub and Mr. Kanes, outside of Mr. Horbaczewski's presence, that were made in connection with, and in furtherance of, my representation of Mr. Kanes and Mr. Laub. I treated the June 22, 2015 Notes as a confidential document and never shared the June 22, 2015 Notes with Mr. Horbaczewski.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|----------|--------------------------|------|----------------|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Declaration of Jennifer A. Post ("Post Decl."), Dkt. 167-1 ¶¶ 3-4.

The declaration of Horbaczewski confirms the date, time and location of the June 22 meeting, and that certain topics were discussed at the meeting. Horbaczewski Decl., Dkt. 160-10 ¶¶ 2-9. Horbaczewski adds that "Mr. Laub, Mr. Kanes, and I left the meeting that we had with Ms. Post together after it concluded" to go to "another meeting that was scheduled for 4:30 p.m. that same day with a designer, Neville Page in the Arts District in downtown Los Angeles." *Id.* ¶ 7; Ex. B to Horbaczewski Decl., Dkt. 160-12 at 2.

(c)     The April 15 Discovery Order

The April 15 Discovery Order found that Plaintiffs had made a prima facie showing that the June 22 Notes are subject to the attorney-client privilege:

> It is undisputed that Plaintiffs retained Post to advise them with respect to the DRL and that Post was acting in that capacity at the June 22, 2015 meetings, which were held at the offices of her former law firm, Raines Feldman. (*See* Motion at 1; Post Decl. ¶¶ 2-3.) Post also states that, on that date, she met privately with Kanes and Laub and also met with Kanes, Laub, and Horbaczewski. (*Id.* at ¶ 3.) In her declaration, Post states that 'to the best of her recollection" all of her notes from that date reflect confidential discussions with Laub and Kanes outside of Hobarczewski's presence. (*Id.* at ¶ 4.)

> Defendants present no evidence to the contrary. Rather, they argue, based on the parties' later appointment, email communications, and the vagaries of Los Angeles traffic, it was not possible for Post to have had any private meetings with her clients during the two hours that the meetings occurred. (*See* Motion at 3-5.) Therefore, Defendants speculate that either Post took other notes on June 22 that have not been disclosed or the June 22 Notes must include nonprivileged portions that she took when Post was present with Kanes, Laub, and Horbaczewski. (*Id.*) But these suppositions are entirely speculative and do not undermine Plaintiffs' *prima facie* showing that the June 22 Notes are subject to attorney-client privilege under California Evidence Code section 954.

> Even assuming Defendants are correct that there was not enough time for Plaintiff to have had a separate meeting with Plaintiffs within the two hour time frame on June 22, 2015, that does not mean she could not have had separate *communications* with her clients outside of Horbaczewski's presence on that date, for example during breaks in the meetings. Any notations about communications with her clients are indisputably privileged. *See* Cal. Evid. C. § 954.

Dkt. 187 at 9.

The April 15 Discovery Order also determined that *Costco Wholesale Corp. v. Superior Court,* 47 Cal. 4th 725 (2009), precludes "disclosure of facts contained in an otherwise privileged document," such that it would be improper to compel Plaintiffs to produce a redacted version of the document. *Id.* at 9-10. It also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

decided that Defendants' proposed alternative disclosures[5] were "based on speculation," "would meet neither the relevancy nor proportionality requirements of Rule 26(b)(1)," "go well beyond what would be needed to evaluate the privilege claim and would launch an entirely new tranche of collateral litigation regarding the nature of Ms. Post's representation of her clients." *Id.* at 10-11. Finally, the April 15 Discovery Order found that a further deposition of Post was unwarranted, despite the apparent "inconsistency between Post's deposition testimony that she took 'some notes' during the portion of the meeting attended by Post, Plaintiffs, and Horbaczewski, and her declaration provided in connection with the Motion where she states that at some point she met privately with her clients and all of her notes reflect client communications." *Id.* at 12. It emphasized that "even if the June 22 Notes include some factual information, the notes remain privileged in their entirety," and accordingly, further deposition testimony was not required to evaluate the claim of privilege. *Id.*

(2)     Positions of the Parties

Defendants argue that Judge Stevenson erred both in finding that Plaintiffs made a *prima facie* showing of privilege with respect to the June 22 Notes and in denying Defendants' requests to conduct discovery concerning the June 22 Notes that was separate from their actual disclosure. Dkt. 209-1 at 12-17. Defendants explain that Post and Horbaczewski each stated under oath that Post took notes at the June 22 meeting at which Laub, Kanes and Horbaczewski were also present. *Id.* at 5, 10. Defendants note that communications made in the presence of Horbaczewski are not covered by attorney-client privilege, because he is "a third party who was not represented by Ms. Post and whose interests were adverse to Plaintiffs in that meeting." *Id.* at 13 (citing, *inter alia*, *Behunin v. Superior Court*, 9 Cal. App. 5th 833, 844-45 (2017) ("Where a third party is present, no presumption of confidentiality obtains . . . .")). For these reasons, Defendants contend that Plaintiffs have failed to demonstrate that the June 22 Notes are privileged.

Defendants argue that the belated declaration of Post does not warrant a different conclusion. They assert that the Post declaration was filed "roughly five months into this discovery dispute," "does not try to reconcile in any way whatsoever th[e] statement[s] in her declaration with her prior deposition testimony that she took notes during the meeting with Mr. Horbaczewski, nor offer any basis for her current best recollection," and "at best creates a factual dispute that undermines any *prima facie* showing of privilege." *Id.* at 5-6, 15-16. Defendants contend that the April 15 Discovery Order "acknowledged that '[t]here appears to be some inconsistency between Post's deposition testimony that she took "some notes" during the portion of the meeting attended by Post, Plaintiffs, and Horbaczewski,' and her declaration, but mistakenly held that 'even if the June 22 Notes include some factual information, the notes remain privileged in their entirety.'" *Id.* at 15 (quoting Dkt. 187 at 12).

Defendants add that, at minimum, they should have been permitted to conduct a "further inquiry" into Plaintiffs' claim of privilege, including certain disclosures about the format and storage practices concerning the June 22 Notes and a time-limited deposition of Post "to cross-examine her about the unelaborated statements in her recently-submitted declaration." *Id.* at 16. Defendants contend that "[t]he

---

[5] Defendants had sought an order compelling Plaintiffs: "1) disclose 'whether the Post notes are self-contained or are part of a larger legal pad relating to the representation of Plaintiffs or other matters'; (2) disclose 'whether there are any other notes dated June 22, 2015 pertaining to meetings with the parties;' (3) produce the billing records relating to the June 22 meeting, including invoices and time notes; and (4) 'disclose whether the notes disclose specific details about the capitalization structure or shareholders of DRL.'" Dkt. 187 at 10-11 (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

additional discovery that [they] seek . . . is precisely what *Costco* permits," and is both "narrowly tailored" and "proportional to the needs of the case." Dkt. 238 at 4, 7. Defendants argue that "[t]o allow Plaintiffs to rest on Ms. Post's barebones declaration without any opportunity for cross-examination or further inquiry of any sort would reward their tactical choice to submit the declaration at the last minute, without any explanation about the shift away from Ms. Post's prior sworn testimony." *Id.*

Defendants further contend that "[t]he only way to reconcile Ms. Post's prior deposition testimony that she took notes during the meeting with Mr. Horbaczewski, on the one hand, with the statement in her declaration that the notes that she was provided to review by Plaintiffs' counsel reflect only discussions with Plaintiffs outside Mr. Horbaczewski's presence, on the other hand, is that there must be other notes of the June 22, 2015 meeting that should have been produced but were not." Dkt. 209-1 at 14. Defendants point out that "Ms. Post never states that these were the only notes that she took on June 22," and that "Plaintiffs have submitted no other evidence to establish that the notes their counsel showed to Ms. Post are the only notes of the June 22, 2015 meeting." *Id.* Accordingly, Defendants argue that they "are entitled to probe whether other notes exist and obtain production of those notes because they are not privileged." *Id.*

Plaintiffs respond that "Defendants have failed to identify any portion of Judge Stevenson's ruling that is clearly erroneous or applies the incorrect legal standard," and that Defendants' disagreement with Judge Stevenson concerns matters where she acted well within her judicial discretion. Dkt. 218 at 5. *First*, Plaintiffs argue that Judge Stevenson's findings of fact were not clearly erroneous. *Id.* at 9. They argue that the Post declaration provided sufficient evidence to demonstrate all of the following: (i) "Plaintiffs and Ms. Post met privately on June 22, 2015 in connection with and in furtherance of her representation"; (ii) Post reviewed the June 22 Notes "and determined that the notes reflect confidential discussions she had solely with her clients"; and (iii) "these notes were treated as confidential and never shared with Mr. Horbaczewski." *Id.* Plaintiffs assert that Judge Stevenson did not err in finding this evidence sufficient to establish a *prima facie* claim of privilege. *Id.* Plaintiffs contend that Defendants "cannot disprove that Plaintiffs met privately with Ms. Post at some point on June 22, 2015"; "cannot identify any evidence that disproves that the notes in Plaintiffs' counsel's possession represent confidential communications from that attorney-client meeting"; and, accordingly, have not "overcome" Plaintiffs' *prima facie* case. *Id.* Plaintiffs criticize as baseless and "self-serving" the two "theories" advanced by Defendants that (i) there is another set of notes from June 22, 2015 that have not been disclosed; or (ii) there is nonprivileged information within the June 22 Notes. *Id.* They assert that Judge Stevenson was correct to deem these theories "entirely speculative," and agree with her conclusion that, even if true, "that does not change the fact that the notes at issue are privileged, and it would be improper to compel Plaintiffs to produce them." *Id.* at 9-10.

*Second*, Plaintiffs argue that the April 15 Discovery Order was not contrary to law. *Id.* at 10. They contend that "Judge Stevenson correctly found that, even if the June 22 Notes contain factual information from the meeting in which Mr. Horbaczewski was present, under *Costco*, the notes remain privileged *in their entirety*." *Id.*[6] Plaintiffs also argue that Judge Stevenson was neither required nor permitted to afford

---

[6] Defendants contend that "Plaintiffs' reliance on *Costco* to justify their privilege assertion is unavailing." Dkt. 238 at 5. They argue that "*Costco* held that factual information incorporated into an indisputably privileged legal analysis that was communicated by an attorney to a client is itself privileged," whereas "[h]ere, by contrast, the notes that Ms. Post testified she took of her meeting with Mr. Horbaczewski are indisputably *non-privileged* because they contain information that was received from an adverse party and are not a confidential attorney-client communication." *Id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Defendants the additional discovery they sought with respect to evaluating the claim of privilege. *Id.* They assert that "the additional inquiries identified in *Costco* are permitted in order for the court to make a determination of whether the privilege exists in the first place, and Plaintiffs have already made a *prima facie* showing." *Id.* at 11. Accordingly, Plaintiffs agree with Judge Stevenson's conclusion "that [the] court already ha[d] the information specifically identified in *Costco* that is permitted in order for it to evaluate the validity of the privilege claim." *Id.* at 12. Plaintiffs add that "Judge Stevenson further concluded that the additional discovery sought by Defendants to evaluate Plaintiffs' privilege claims 'would meet neither the relevancy or proportionality requirements of Rule 26(b)(1),'" and that "[t]his ruling may only be set aside if Defendants establish that Judge Stevenson abused her discretion." *Id.* (quoting Dkt. 187 at 11). Plaintiffs contend that they "submitted sufficient evidence to support Judge Stevenson's ruling that Defendants' additional discovery requests were not relevant, and that such requests related to the contents of the privileged document rather than information necessary to evaluate the privilege claim itself." *Id.*

Plaintiffs also argue that, because Defendants' Motion for Review is not substantially justified, Defendants should be ordered to pay Plaintiffs' reasonable fees and expenses incurred in opposing it. *Id.* at 13. Plaintiffs contend that "Defendants have presented no cogent argument or evidence that would undermine Judge Stevenson's findings that Plaintiffs established a *prima facie* claim of privilege and Defendants' additional discovery requests are not relevant." *Id.* They argue that "Defendants' insistence on briefing this issue for a fourth time, despite Ms. Post's declaration that clearly establishes a *prima facie* claim of privilege, is frivolous." *Id.*

As to the request for expenses, Defendants argue that their motion "was substantially justified, and, regardless, any award of expenses in these circumstances would be unjust." Dkt. 238 at 8. Defendants highlight the apparent inconsistencies between Post's deposition testimony and her later declaration, which they contend call into doubt Plaintiffs' privilege claim. *Id.* at 8-9. Defendants add that an award of expenses would be unjust in light of the "eleventh-hour change of position" by Plaintiffs, and their decision "not to explain the obvious inconsistencies between Ms. Post's half-page declaration and her prior sworn testimony" when they had the opportunity to do so. *Id.*

(3)     Legal Standards

"Pursuant to *Erie* and its progeny, federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)). "In diversity actions, questions of privilege are controlled by state law." *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *see* Fed. R. Civ. P. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

In California, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Properties, Ltd. v. Superior Court*, 35 Cal. 4th 54, 59 (2005). "The attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.'" *Costco*, 47 Cal. 4th at 732. California law defines a "confidential communication between client and lawyer" as "information

---

5-6. Defendants assert that "[t]he fact that those notes may be sitting in the same legal pad as privileged notes reflecting communications between Ms. Post and Plaintiffs cannot transform them into privileged materials." *Id.* at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons," with narrow exceptions. Cal. Evid. Code § 952.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, *i.e.*, a communication made in the course of an attorney-client relationship." *Costco*, 47 Cal. 4th at 733. "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

Unlike the traditional practice that ordinarily applies in federal proceedings, California "Evidence Code section 915 prohibits a court from ordering in camera review of information claimed to be privileged in order to rule on the claim of privilege." *Costco*, 47 Cal. 4th at 739; *see* Cal. Evid. Code § 915(a) ("[T]he presiding officer may not require disclosure of information claimed to be privileged under this division . . . in order to rule on the claim of privilege."). There is an exception to this rule for claims of attorney work product and two other narrow categories, but "[n]o comparable provision permits [a court to require] in camera disclosure of information alleged to be protected by the attorney-client privilege." *Costco,* 47 Cal. 4th at 736; *see* Cal. Evid. Code § 915(b).

The California Supreme Court has emphasized that "[t]he attorney-client privilege is a legislative creation, which courts have no power to limit by recognizing implied exceptions," and therefore "[c]oncern that a party may be able to prevent discovery of relevant information therefore provides no justification for inferring an exception to Evidence Code section 915." *Id.* at 739. Notwithstanding these limitations, California law does not preclude a court from using other related analytical tools to assess claims of attorney-client privilege. "Evidence Code section 915 is not absolute in the sense that a litigant may still have to reveal *some* information to permit the court to evaluate the basis for the claim of privilege," although "it does not follow that courts are free to ignore the section's prohibition and demand in camera disclosure of the allegedly privileged information itself for this purpose." *Id.* at 737.

(4)    Application

For the most part, the April 15 Discovery Order does not present a basis for relief to Defendants. The factual findings of Judge Stevenson are consistent with the record, including the statements by Post in her declaration that was filed in connection with the opposition to the motion to compel. Although Post previously made statements that could be construed as inconsistent with aspects of what she said in her declaration, those potential inconsistencies do not require that the declaration be disregarded.

When the statements in the declaration of Post are considered, they provide some basis for each element of a claim for attorney-client privilege. Specifically, Post declares that she reviewed the June 22 Notes, and "[b]ased on [her] best recollection, the entirety of the June 22, 2015 Notes reflect confidential attorney-client discussions that [she] had with Mr. Laub and Mr. Kanes, outside of Mr. Horbaczewski's presence, that were made in connection with, and in furtherance of, my representation of Mr. Kanes and Mr. Laub." Post Decl., Dkt. 167-1 ¶ 4. She further declares that she "treated the June 22, 2015 Notes as a confidential document and never shared the June 22, 2015 Notes with Mr. Horbaczewski." *Id.* A reasonable jurist could find this evidence sufficient to establish a prima facie case of privilege,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

irrespective of certain inconsistencies with Post's previous recollections.

Defendants are correct, however, that the April 15 Discovery Order does not address one material distinction between the June 22 Notes and the attorney opinion letter in *Costco*. In *Costco*, the attorney opinion letter was privileged in its entirety because it comprised a confidential attorney-client communication. Therefore, any statements within the opinion letter, regardless of their content, were not discoverable. However, here, the June 22 Notes are privileged only because they *reveal* confidential attorney-client communications, *i.e.*, confidential conversations between Post and her clients, Kanes and Laub. The June 22 Notes are not, themselves, a transmission between the attorney and her clients.

Therefore, it has not been shown that there is a blanket privilege as to the entirety of the June 22 Notes by virtue of their inclusion in the document. Instead, the privilege attaches to the extent the writings contained in the June 22 Notes reflect confidential communications between Post and her clients. This includes notes that reflect the communications between Post and her clients in which they may have discussed their otherwise-unprivileged meeting with Horbaczewski. As explained in the case law and in the April 15 Discovery Order, unprivileged factual information contained within a privileged communication is not discoverable – although it may be discoverable by other means. For example, notes of a conversation between Post and her clients, in which they discuss what happened at the broader meeting with Horbaczewski, would not be discoverable. That would not, however, necessarily preclude questioning of Post or her clients about what happened at the meeting with Horbaczewski.

That the April 15 Discovery Order does not address this distinction is not outcome determinative. As noted, Post declared that, to the best of her recollection, the entirety of the June 22 Notes reflect confidential attorney-client discussions between her and Laub and Kanes. Judge Stevenson credited Post's representations in finding that Plaintiffs had made a prima facie showing of privilege. This determination was not clear error. Thus, accepting the factual finding that the entirety of the June 22 Notes is privileged, Judge Stevenson did not err in determining that it would be inappropriate to order Plaintiffs to furnish a redacted version of the notes, distilled to the factual information they may contain. That factual information may be discoverable by other means, but not by requiring disclosure of the record of a privileged conversation.

Defendants next contest the decision by Judge Stevenson not to permit the alternative disclosures and discovery they requested in connection with the privilege dispute. Defendants sought various forms of alternative discovery, including the following: (i) Plaintiffs "be ordered to disclose whether the Post notes are self-contained or are part of a larger legal pad relating to the representation of Plaintiffs or other matters"; (ii) Plaintiffs be ordered to disclose "whether there are any other notes dated June 22, 2015 pertaining to meetings with the parties"; (iii) Plaintiffs "be ordered to produce the billing records relating to the June 22 meeting"; (iv) Plaintiffs "be ordered to disclose whether the notes disclose specific details about the capitalization structure or shareholders of DRL, without disclosing the substance of what is stated; and (v) Post be required to sit for "a further time-limited deposition . . . concerning the meeting after she refreshes her recollection with the notes." Dkt. 160-1 at 14-15. As to the proposed further deposition of Post, Defendants argued, *inter alia*, that it would "shed light on the issue of whether there were any separate privileged meetings with Plaintiffs and, if so, whether it is truly not possible to separate out any notes of such meetings from the communications that took place at the meeting with Mr. Horbaczewski." *Id.* at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
| --- | --- | --- | --- |
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Judge Stevenson found that these requests by Defendants were based on speculation, and, in any event, unnecessary to evaluate the claim of privilege. She found, in the alternative, that "the additional measures that Defendants seek go well beyond what would be needed to evaluate the privilege claim and would launch an entirely new tranche of collateral litigation regarding the nature of Ms. Post's representation of her clients." Dkt. 187 at 11. Judge Stevenson found that "[t]hese disclosures would meet neither the relevancy nor proportionality requirements of Rule 26(b)(1)," and that some of the requests "would simply uncover duplicative information." *Id.* at 11, 11 n.2.

Although ordering all of the alternative discovery requested by Defendants likely would have been cumulative, it was clear error to permit Defendants no means of seeking information from Post on the inconsistencies between her deposition testimony and her subsequent declaration. The April 15 Discovery Order acknowledges that "[t]here appears to be some inconsistency between Post's deposition testimony that she took 'some notes' during the portion of the meeting attended by Post, Plaintiffs, and Horbaczewski, and her declaration provided in connection with the Motion where she states that at some point she met privately with her clients and all of her notes reflect client communications." Dkt. 187 at 12. However, the Discovery Order does not provide any remedy to Defendants. That some notes taken by Post on June 22, 2015 may be subject to attorney-client privilege does not mean that all notes taken by Post that day are privileged – particularly if her notes are separable records of distinct meetings with different sets of participants. As Defendants point out, the careful phrasing of Post's declaration leaves open the possibility that the June 22 notes she references there may not be her exclusive notes of that day's meetings. *See* Post Decl. ¶ 4 (attesting to her review of "notes bearing the date June 22, 2015 that I understand were produced by Raines Feldman and provided to me via counsel for the Plaintiffs"). Further, as noted above, that Post has stated that, based on a review of the notes, it is her "best recollection" that they reflect only confidential attorney-client communications, raises issues as to whether some limited and focused cross-examination is warranted.

Under the circumstances presented here, the basis for a further deposition of Post is not unduly speculative. Nor would it fail the relevance and proportionality requirements of Rule 26(b)(1), particularly given that Defendants' other avenues for alternative discovery have been rejected. For the foregoing reasons, this Court has "a 'definite and firm conviction that a mistake has been committed'" by denying Defendants' request for a limited reopening of Post's deposition. *See Wolpin*, 189 F.R.D. at 422 (citation omitted). Therefore, Defendants' Motion for Review is **GRANTED** as to this ruling only.

Accordingly, Defendants' Motion for Review is **GRANTED IN PART AND DENIED IN PART**. The April 15 Discovery Order is affirmed, except as to the determination that a further, limited deposition of Post was unwarranted. That deposition shall not exceed two hours of testimony, *i.e.*, excluding the time spent by counsel on objections or colloquies. Counsel shall meet and confer to seek to agree on a date and time for the deposition. If they cannot agree, this issue shall be presented to Judge Stevenson for resolution. It is within the discretion of Judge Stevenson to direct how such a dispute should be presented and resolved.

Plaintiffs also argue that Defendants' Motion for Review was not substantially justified, and, accordingly, Defendants should be ordered to pay the reasonable expenses of Plaintiffs incurred in connection with the motion. Plaintiffs contend that Defendants' Motion for Review "lacks any merit," that "no reasonable person could expect it to be granted," and that "Defendants have presented no cogent argument or evidence that would undermine Judge Stevenson's findings." Dkt. 218 at 13. Defendants respond that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | | Date | July 30, 2019 |
|---|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | | |

their motion "was substantially justified, and, regardless, any award of expenses in these circumstances would be unjust." Dkt. 238. Defendants point out that Plaintiffs' claim of privilege hinged on a last-minute declaration by Post that even the April 15 Discovery Order acknowledged was not entirely consistent with her prior deposition testimony. *Id.* at 8-9. Defendants add that their legal positions are defensible, even if they do not ultimately prevail. *Id.*

Under the circumstances, an award of expenses is not appropriate. The inconsistencies between Post's declaration and her earlier deposition testimony raise questions that Plaintiffs left wholly addressed, and the evidentiary showing by Plaintiffs in support of their privilege claim was not particularly compelling. Moreover, the April 15 Discovery Order deemed this privilege dispute as more analogous to *Costco* than warranted. Defendants had a sufficiently reasonable basis on which to question the findings and conclusions of the April 15 Discovery Order, including as to those matters on which Defendants did not ultimately prevail. Therefore, Plaintiffs' request for an award of expenses is **DENIED**.

      b)     Plaintiffs' Motion for Review

          (1)    <u>Background</u>

              (a)    Procedural History

Defendants served their first sets of requests for production of documents ("First RFPs") in March 2018. Dkt. 152-1 at 4, 22; Dkt. 254 at 6-8. The First RFPs included a request that Plaintiffs produce

> [a]ll documents relating to communications between [Laub and Kanes] concerning the creation of a drone racing company, drone racing content for television, the Internet or other media, Mr. Horbaczewski, DRL, DRL employees or agents, this lawsuit, or any non-compete agreement to which you are a party, or other restrictions on your ability to invest in, assist with, be employed by, or otherwise be affiliated with, a drone racing company or DRL.

Ex. 26 to Declaration of Kenneth A. Kuwayti ("Kuwayti Decl. II"), Dkt. 152-28 at 19. On April 27, 2018, Plaintiffs submitted their responses to the First RFPs. Plaintiffs made several objections to this request but ultimately stated:

> Plaintiffs will produce non-privileged documents responsive to this request before this litigation was commenced to the extent any exist and are located during a reasonable search. Plaintiffs refuse to produce documents created after this litigation was commenced, to the extent any exist, based on the objections above. Plaintiffs intend to substantially complete production of non-privileged documents, if any exist, that are located in response to this request within 45 days.

*Id.* at 21.

The First RFPs also included other, broader requests, including ones for "[a]ll documents relating to DRL" and "[a]ll documents relating to any work product or ideas that [Laub or Kanes] created concerning drone racing or drone racing content for television, the Internet or other media prior to meeting [Horbaczewski]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

in January 2015." *Id.* at 6, 18. In their responses, Plaintiffs stated, *inter alia*, that they "will produce non-privileged documents responsive to this request to the extent any exist and are located during a reasonable search" and "intend to substantially complete production of non-privileged documents, if any exist, that are located in response to this request within 45 days." *Id.* at 7, 18.

On September 17, 2019, the parties filed a stipulation to continue certain case deadlines, including the non-expert discovery cut-off in this matter. Dkt. 76. The stipulation was approved, and the non-expert discovery cut-off was continued to November 30, 2018. Dkt. 78. Additional requests to amend the case schedule have been filed since that time. However, none sought a further extension of the non-expert discovery cut-off. On December 14, 2018, the parties filed another stipulation to continue the case schedule, including the deadline to file all motions. Dkt. 100. The stipulation was approved, and the deadline to file all motions was continued to February 25, 2019. Dkt. 101. That deadline was extended once more, with the last day to file all motions set for May 17, 2019. Dkt. 189.

On December 3, 2018, at a hearing on the motion to dismiss the TAC, defense counsel raised an unrelated issue with respect to discovery. Dkt. 95. The parties briefly discussed the nature of their dispute, and the Court stated that Judge Stevenson would retain jurisdiction to resolve discovery disputes, although the discovery cut-off had passed. *Id.*[7] The parties were directed to present their dispute -- one that is unrelated to the disputes currently before this Court -- to Judge Stevenson for her review. *Id.* Several discovery motions have been filed and decided since that time.

Later in December 2018, Defendants reviewed Plaintiffs' production of text messages[8] and "realized that we had not received any text messages that were exchanged solely between Mr. Kanes and Mr. Laub," or "any text messages from Aaron Kanes." Kuwayti Decl. II ¶ 7. On December 19, 2018, Defendants' counsel emailed Plaintiffs' counsel to "inquire[] about the missing text messages" but did not receive a response *Id.* ¶ 8; Ex. 8 to Kuwayti Decl. II, Dkt. 152-10. Defendants' counsel raised the issue several other times during the following months.

On January 7, 2019, Plaintiffs' counsel sent an email to Defendants' counsel that stated, *inter alia*: "We will investigate and produce non-privileged texts between [Kanes] and [Laub] to the extent relevant messages have not already been produced." Ex. 10 to Kuwayti Decl. II, Dkt. 156 at 2. On January 9, 2019, Plaintiffs' counsel sent another email to Defendants' counsel that stated, *inter alia*: "We are investigating what texts can be produced given that [Kanes] and [Laub] have upgraded their phones multiple times since late 2014/early 2015." Ex. 11 to Kuwayti Decl. II, Dkt. 156-1 at 3. On January 15, 2019, Plaintiffs' counsel sent a third, more detailed email to Defendants' counsel about the text messages. Ex. 13 to Kuwayti Decl. II, Dkt. 152-15 at 2. It stated:

> [Kanes] and [Laub] do not have the text messages that you requested (i.e. text messages between [Kanes]-[Laub] and [Kanes]-Aaron Kanes from January to November 2015) on their phones or iCloud backups. They have both replaced their phones multiple times long

---

[7]  The parties had stated that Judge Stevenson instructed them at a November 28, 2019 telephonic hearing that she would "lack[] jurisdiction to adjudicate discovery matters after the expiration of the discovery cut-off." Dkt. 94.
[8]  Plaintiffs had produced most of these text messages several months earlier. Declaration of Joseph J. Fraresso, Dkt. 152-41 ¶¶ 2-3. The majority of the text messages from Laub were produced by July 13, 2018, and the majority of text messages from Kanes were produced on January 10, 2018. *Id.* Supplemental productions were provided to Defendants on September 17, 2018, and November 13, 2018. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

before this litigation was commenced and did not preserve the messages that you requested by taking screenshots and saving the images. All the text messages you requested were likely no longer preserved by January 2016 and at the latest by January 2017 long before this case was filed. If the text messages you requested aren't available it makes no sense to dispute their relevance before the Court.

*Id.* Then, beginning January 23, 2019, Plaintiffs' counsel asserted that no production was required because the request by Defendants had been untimely. Ex. 19 to Kuwayti Decl. II, Dkt. 152-21 at 2; *see also* Ex. 21 to Kuwayti Decl. II, Dkt. 152-23 at 2-3; Ex. 23 to Kuwayti Decl. II, Dkt. 152-25 at 2.

On February 25, 2019, Defendants filed a motion to compel the production of text messages exchanged between Kanes and Laub, as well as those exchanged between Plaintiffs and Kanes' brother, Aaron Kanes. Dkt. 152.[9] Defendants explained that Plaintiffs had produced no text messages in either category. Defendants also sought, "[i]n the event Plaintiffs are unable to locate these texts, . . . an order permitting discovery into Plaintiffs' preservation and production efforts, and requiring Plaintiffs to turn over their cell phones and other relevant devices to an independent forensic vendor for review." *Id*. The parties briefed the motion in the joint stipulation format pursuant to Local Rule 37-2. *Id.*

Judge Stevenson held a hearing on the motion on March 27, 2019, and the matter was then taken under submission. Dkt. 177. On April 30, 2019, Judge Stevenson issued an order that granted in part and denied in part the motion ("April 30 Discovery Order"). Dkt. 212. On May 14, 2019, Defendants filed a motion for review of the April 15 Discovery Order. Dkt. 209.

(b)     The April 30 Discovery Order

*First*, the April 30 Discovery Order found that the motion to compel was timely. Dkt 212 at 5-6. It reasoned:

Plaintiffs urge that Defendants seek "to compel discovery first requested after the close of fact discovery." (Joint Stip. at 29.) Not so. Plaintiffs cannot plausibly dispute that Defendants sought text messages through their First RFP's served in March 2018. (*See* Joint Stip. at 5.) Moreover, in their written responses to Defendants' RFP, Plaintiffs stated that they would produce "non-privileged documents responsive to [the] requests to the extent any exist and are located during a reasonable search." (*Id.* (citing Kuwayti Decl., Ex. 26).)

Thus, the record is clear that Defendants did not first request this discovery after the discovery cut off. Rather, Defendants have been seeking to obtain the responsive text messages for many months. Plaintiffs have consistently represented that they would produce responsive text messages and even after the December 2018 Settlement Conference when Defendants again raised the issue of missing text messages, Plaintiffs

_____

[9] Aaron Kanes had been identified by Plaintiffs in their supplemental initial disclosures as a person likely to have discoverable information as to "[d]evelopment of Plaintiffs' drone racing concepts; generation of promotional footage for the DRL's Gates of Hell Event." Ex. 27 to Kuwayti Decl. II, Dkt. 152-29 at 5. Aaron Kanes also was identified in Plaintiffs' supplemental interrogatory responses as someone with knowledge of "Plaintiffs concept for a drone racing league, Plaintiffs knowledge of drones." Ex. 33 to Kuwayti Decl. II, Dkt. 152-35 at 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | | Date | July 30, 2019 |
|---|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | | |

did not refuse to follow up because the request was untimely, instead Plaintiffs responded that they would "investigate." (*See* Joint Stip. at 10.)

It is also undisputed that, notwithstanding the November 30, 2018 discovery cut-off, Judge Kronstadt ordered in early December that the Magistrate Judge "will retain jurisdiction in this matter to resolve discovery disputes." (Dkt. No. 95.) Further, on December 14, 2018, the district judge extended the deadline for filing all motions to February 25, 2019 and set April 29, 2019 as the last date for hearing on motions not yet filed as of the December 14, 2018 order. (Dkt. No. 101.) Accordingly, the Court finds that Defendants' motion is timely.[2]

*Id.* It included a footnote that added:

Plaintiffs are incorrect that Defendants have both taken the position that fact discovery is closed and seek to hold Plaintiffs to a different schedule. The discovery that Plaintiffs claim Defendants thwarted with an objection that the discovery cut-off had passed was discovery that would have been *initially due after* the November 30, 2018 discovery cut-off. (*See, e.g.,* Joint Stip. at 15 (Plaintiffs' Rule 45 subpoena to Slack with a response deadline of December 3, 2018).)

*Id.* at 6 n.2.

*Second*, the April 30 Discovery Order proceeded to the merits of the motion and determined that the requested text messages "are relevant and proportional to the needs of the case." *Id.* at 6. The Order found it "concerning" that "despite producing hundreds of other text messages during the relevant time period, Plaintiffs' production contains no text messages whatsoever between Kanes and Laub and none between Kanes and his brother Aaron." *Id.* It noted that "Plaintiffs' only explanation is that Kanes and Laub both 'replaced' their iPhones during this period," but that "even if Kanes or Laub individually lost text messages while migrating their data to new phones, it seems highly unlikely that both Kanes and Laub independently would lose just those text messages with each other in the upgrade process." *Id.* at 6-7. The Order also found it "troubling" that "Plaintiff's counsel, in response to the Court's direct questioning, could not confirm if preservation directives were given to Kanes and Laub to preserve data on their phones and other electronic devices in light of this pending litigation." *Id.* at 7. It concluded that "Plaintiffs cannot evade their discovery obligations with unsubstantiated assertions that relevant text messages were lost when Plaintiffs' replaced their phones" and granted the following relief:

(1) Plaintiffs are ordered to search for and produce all responsive text messages between Laub and Kanes for the period January 2015 through March 2016. Consistent with the requirements of Rule 34, Plaintiffs must produce any responsive text messages that are located, "in a form or forms in which it is ordinarily maintained or in a reasonable usable form or forms." FED. R. CIV. P. 34(b)(2)(E)(ii);

(2) Plaintiffs are directed to each contact their cell phone provider(s) to determine what text m[e]ssages might be recoverable; and

(3) Plaintiffs must provide a signed affidavit outlining the specific search protocol(s) used to locate additional responsive text messages, including which iPhones were searched for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

the Kanes/Laub and Kane/Aaron Kanes messages, and, to the extent Plaintiffs assert that relevant text messages were lost when older phones were replaced, Plaintiffs must identify exactly when the replacement occurred as to each specific iPhone.

Finally, Plaintiffs must produce responsive text messages that are located in a format that preserves the integrity of conversational threads.

*Id.* at 7-8. However, the Order denied Defendants' request for forensic examination of Plaintiffs' other digital devices that may have been synchronized with their iPhones, because this request was "not a follow-on to previously served discovery, as is the case with the request that Plaintiffs conduct a further search for text messages responsive to Defendants' RFPs served before the discovery cut-off and that Plaintiffs' previously agreed to produce before the discovery cut-off." *Id.* at 8.

*Third*, the April 30 Discovery Order determined that an apportionment of fees was warranted in connection with the motion to compel:

Under Rule 37(a)(5)(C), when, as here, a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The parties have not addressed any award of expenses in the Joint Stipulation. However, as the Motion was largely granted, the Court will exercise its discretion to apportion fees in this matter.

Defendants may file a request for reasonable expenses incurred in bringing the Motion, including attorneys' fees, with supporting documentation within fourteen (14) days of the date of this Order, with a hearing set consistent with the Court's regular motion calendar. Plaintiffs may file any objection to Defendants' request within seven days of service of Defendants' request. Plaintiffs may file a reply within five days of service of any opposition.

*Id.* at 9.

(2)    Positions of the Parties

Plaintiffs raise two objections to the April 30 Discovery Order: (i) Judge Stevenson erred in reaching the merits of the Defendants' purportedly untimely discovery request and motion; and (ii) Judge Stevenson erred in awarding expenses to Defendants, because Plaintiffs' conduct was justified and they had no opportunity to be heard on the issue. Dkt. 220-1 at 12-18. In support of their position, Plaintiffs argue that "it was both an erroneous factual determination and contrary to law to hold that Defendants' late discovery request and motion were timely." *Id.* at 12. Plaintiffs add that they produced responsive text messages several months before the discovery cut-off, but "Defendants did not take issue with the scope of the search and production, nor ask for the additional text messages at issue here, until December 19, 2018, weeks after the November 30 discovery cut-off." *Id.* Plaintiffs argue that "[d]iscovery not completed by the discovery deadline is not enforceable unless a party can justify relief from the deadline imposed by a scheduling order" – even where the request "seek[s] highly probative evidence." *Id.* at 12-13. Plaintiffs cite the definition of "discovery cut-off" in this Court's Standing Order and contend that "Defendants' interpretation and Judge Stevenson's application of the scheduling order as allowing any discovery dispute to be raised or motion to compel to be brought after the cut-off -- as long as it can be tied back to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

a broad discovery request at the outset of the case -- effectively renders the close of fact discovery meaningless and frustrates the purpose of a scheduling order." *Id.* at 7, 16.

Plaintiffs add that a bench officer is required to make findings of good cause and excusable neglect as a predicate to granting relief from the case schedule, but no such findings were made in the April 30 Discovery Order. *Id.* at 14-15. Plaintiffs add that Defendants were not diligent in pursuing discovery, and that Defendants have been steadfast in enforcing the discovery cut-off as to requests by Plaintiffs. Plaintiffs then contend that, in any event, a magistrate judge "d[oes] not have authority to alter [the district court]'s scheduling order to essentially extend the discovery cut-off past that date." *Id.* at 15.

As noted, Plaintiffs argue that Judge Stevenson erred by awarding expenses to Defendants both because Plaintiffs' conduct was substantially justified and because Plaintiffs were not afforded an opportunity to be heard on the matter, which is a prerequisite mandated by Fed. R. Civ. P. 37(a)(5)(A). *Id.* at 16-18. Plaintiffs assert that "[s]ubstantial justification 'has never been described as meaning "justified to a high degree," but rather has been said to be satisfied if there is a "genuine dispute" . . . "or if reasonable people could differ as to [the appropriateness of the contested action]."'" *Id.* at 16 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (alterations in original)). Plaintiffs contend that they justifiably "followed the clear language of the Court's Orders, as well as a prior case from Judge Segal applying Judge Kronstadt's definition of the cut-off, to determine that they were not obliged to comply with Defendants' discovery request after the discovery deadline. *Id.* at 17 (citing *Lallemand v. County of Los Angeles*, CV 17-0781 JAK (SSx), 2018 WL 6137135 (C.D. Cal. June 14, 2018)). Finally, they note that Defendants did not seek an award of expenses in their briefing or at oral argument, and thus "Plaintiffs did not have any opportunity to be heard and to show substantial justification before Judge Stevenson already reached the conclusion that Defendants are entitled to their expenses and fees." *Id.* at 18. Accordingly, Plaintiffs contend the expenses award "is contrary to Rule 37." *Id.*

Defendants respond that "Plaintiffs mischaracterize the record," and that the April 30 Discovery Order rested on sound factual and legal determinations. Dkt. 254 at 6-7. Defendants argue that their discovery requests and motion to compel were timely, and that "Plaintiffs have no credible explanation for failing to produce the text messages" sought by Defendants. *Id.* at 18-27. Defendants add that they "requested text messages between Mr. Kanes and Mr. Laub and between Plaintiffs and Aaron Kanes in their first set of document requests," and that Judge Stevenson rightly found that "'Plaintiffs cannot plausibly dispute that Defendants sought text messages through their First RFP's served in March 2018.'" *Id.* at 18 (quoting Dkt. 212 at 5). Defendants argue that "[t]here can be equally no dispute that Plaintiffs agreed to produce the texts," and, once again, the finding by Judge Stevenson "that 'Plaintiffs have consistently represented that they would produce responsive text messages'" is amply supported by the record. *Id.* (quoting Dkt. 212 at 5).

Defendants next argue that Judge Stevenson correctly determined that their motion to compel was timely. *Id.* at 23. They note that Plaintiffs stipulated to extend the deadline to file all motions, including discovery motions, to February 25, 2018, that the requested continuance was approved,[10] and that the motion to compel was filed by that deadline. *Id.* at 23.[11] Defendants further highlight that this Court

_____

[10]   Since that time, the last day to file all motions was continued to May 17, 2019. Dkt. 189.

[11]   Plaintiffs respond that the deadline to file motions "was extended to allow more time for: a) completion of the settlement conference before expert discovery; b) Defendants to obtain, before filing for summary judgment,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

provided that "Judge Stevenson will retain jurisdiction in this matter to resolve discovery disputes," even after the discovery cut-off. *Id.* at 15 (quoting Dkt. 95 at 1).[12] Defendants contend that Plaintiffs' citations to other decisions interpreting a discovery cut-off (i) were not raised before Judge Stevenson, and (ii) are inapposite, in any event, because the underlying discovery requests here were timely. *Id.* at 23-24. Accordingly, Defendants argue that timeliness presents no bar to their requested discovery, that no relief from the case schedule was required, and therefore that no findings of good cause of excusable neglect were necessary in the first instance. *Id.* at 25.

Defendants also argue that Plaintiffs' conduct was not substantially justified, that Plaintiffs were provided sufficient opportunities to be heard through the briefing and oral argument on the motion to compel, and that, under the April 30 Discovery Order, Plaintiffs will have a further opportunity to be heard on the issue of the expense award. *Id.* at 27-30. Defendants contend that Plaintiffs fail to create a genuine dispute as to timeliness, and instead seek to manufacture a "substantial justification by burying their heads in the sand." *Id.* at 28. They note that "Judge Stevenson found Plaintiffs' arguments were not credible on multiple levels," including both their arguments as to timeliness and their proffered explanation for why the disputed text messages could not be produced. *Id.* Defendants add that "the Supreme Court has held that '[t]he court generally may act *sua sponte* in imposing sanctions under the Rules,'" including an award of expenses pursuant to Fed. R. Civ. P. 37. *Id.* at 29 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n.8 (1991). Defendants further contend that "Plaintiffs have already had a full and fair opportunity to show their refusal to produce relevant text messages is 'substantially justified,'" in their briefing on the motion to compel and at oral argument on the motion on March 27, 2019. *Id.* at 29-30. Defendants also point of that "Plaintiffs will get a hearing," in that the April 30 Discovery Order determined that a hearing would be set as to the expense award. *Id.* at 29.

Finally, Defendants argue that they should be awarded fees incurred in connection with opposing Plaintiffs' Motion for Review, because "Plaintiffs' decision to bring this motion is not substantially justified." *Id.* at 30. Defendants contend that "Plaintiffs cannot show that Judge Stevenson's order was clearly erroneous or contrary to law," and that Plaintiffs misrepresented the record to support their arguments. *Id.* Defendants further contend that "[t]here is no genuine dispute that Defendants' motion to compel was timely[,] [a]nd it was well within Judge Stevenson's discretion to order that Plaintiffs pay Defendants' reasonable expenses in bringing the motion." *Id.* Accordingly, Defendants argue that Plaintiffs' Motion for Review is "meritless" and a fee award is warranted. *Id.*

As to the requested fee award, Plaintiffs reply that their positions in the motion for review are substantially justified. Dkt. 279 at 8. Plaintiffs reassert that their positions derive from "a) the Court's Orders defining the cut-off; b) Judge Segal's decision in *Lallemand*; and c) Defendants' own positions in repeatedly

---

discovery they had already moved to compel before the cut-off but that was still subject to review by this Court, namely, the June 22, 2015 notes taken by Plaintiffs' former counsel, Jennifer Post, and a further limited deposition of Justice Laub on supplemental interrogatory responses; c) preparation of expert reports; d) Defendants to file an Amended Answer; and e) Plaintiffs to file motions to dismiss and strike and seek discovery concerning Defendants' newly filed pleadings' – not with the intent that Defendants be permitted "to raise new discovery issues" after the prior deadline expired. Dkt. 279 at 4.

[12] Plaintiffs proffer a narrower interpretation of that Order. They contend that it "provided Judge Stevenson with continuing jurisdiction to resolve an already-pending discovery dispute concerning Defendants' request to claw back its own text messages, not to consider new discovery requests or disputes never before raised by either party, *i.e.*, like the issue now before the Court." Dkt. 279 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

refusing to provide discovery after the cut-off." *Id.* They contend that "[t]his is more than enough grounds for 'a responsible difference of opinion among conscientious, diligent but reasonable advocates.'" *Id.* (quoting *Vlasich v. Fishback*, No. 1:05-CV-01615-LJO-GSA-PC, 2009 WL 3706696, at *4 (E.D. Cal. Nov. 5, 2009)). Finally, Plaintiffs reiterate that their stipulation to continue the motion filing deadline was never intended to permit the parties "to raise new discovery issues and file new discovery motions" – and any argument to the contrary by Defendants is disingenuous. *Id.*

(3)   <u>Application</u>

Plaintiffs have not met their burden to show that the April 30 Discovery Order was clearly erroneous or contrary to law. *First*, it was not error for Judge Stevenson to find that the Defendants' motion to compel was timely. Judge Stevenson found that there was a sufficient nexus between the object of Defendants' motion to compel and their First RFPs -- which Defendants served approximately half a year before the discovery cut-off -- that the motion to compel should not be construed as seeking new discovery. This finding was reasonable. For example, the First RFPs specifically sought communications between Laub and Kanes

> concerning the creation of a drone racing company, drone racing content for television, the Internet or other media, Mr. Horbaczewski, DRL, DRL employees or agents, this lawsuit, or any non-compete agreement to which you are a party, or other restrictions on your ability to invest in, assist with, be employed by, or otherwise be affiliated with, a drone racing company or DRL.

Ex. 26 to Kuwayti Decl. II, Dkt. 152-28 at 19. Defendants' later motion to compel the production of certain text messages between Laub and Kanes -- when no text messages solely between Laub and Kanes had been voluntarily produced -- is clearly related to Defendants' initial discovery requests. The same rationale applies to text messages between them and Aaron Kanes, which relate back to other items within the First RFPs.

Once Judge Stevenson determined the motion to compel did not seek new discovery, she did not err in finding that the motion to compel was timely. The motion was filed after the non-expert discovery cut-off, but on the last day to file all motions, as amended. This cutoff applies to the filing of discovery motions. Moreover, as Judge Stevenson noted, this Court "provide[d] that Judge Stevenson w[ould] retain jurisdiction in this matter to resolve discovery disputes" after the discovery cut-off. Dkt. 95 at 1. That directive arose in the context of a particular discovery dispute, unrelated to the issues presented here, but was not limited in scope to that dispute alone. *See id.* That directive contemplated that the parties could continue to present discovery disputes to Judge Stevenson, to the extent any arose, provided that the parties would not be entitled to serve new discovery requests and thus undercut the core purpose of the discovery cut-off.

As a default, this Court's Standing Order defines the term "discovery cut-off" to mean "the date by which all discovery is to be completed," "not [merely] the date by which discovery requests must be served." Dkt. 9 at 54. However, as noted, the jurisdictional directive created an exception to the default rule of the Standing Order in order to permit Judge Stevenson to continue to address discovery disputes between the parties. That approach was adopted to serve the interests of party and judicial efficiency. Further, the jurisdictional directive would have had little significance under Plaintiffs' interpretation. Instead, Judge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

Stevenson retained jurisdiction to resolve discovery disputes, including the authority to deny or grant a motion to compel. Accordingly, it was not legal error for Judge Stevenson to determine that Defendants' motion to compel, which was filed by the last day to file motions and related back to timely discovery requests, was itself timely.[13]

Because Judge Stevenson did not err in finding that Defendants' motion to compel was timely, it is immaterial that a magistrate judge is generally not authorized to alter the deadlines set forth by a district judge in a scheduling order. For the same reasons, it is immaterial that Judge Stevenson did not make any findings of good cause and excusable neglect to justify relief from the case deadlines. Upon finding that the motion was timely, no such relief was necessary.

Further, there was no error in the finding by Judge Stevenson that an award of expenses would be appropriate in connection with the motion to compel. The parties agree that the correct standard for evaluating such an award is whether the non-prevailing party was "substantially justified" in its conduct, although they disagree on the proper application of that standard. Dkt. 220-1 at 16-18; Dkt. 254 at 28-30. Plaintiffs contend they were "entirely justified" in "object[ing] and refus[ing] to produce further text messages after the [discovery] deadline" and then opposing Defendants' motion to compel -- for the same reasons they argue their motion for review should be granted. Dkt. 220-1 at 17. Defendants respond that Judge Stevenson correctly "found Plaintiffs' arguments were not credible on multiple levels," particularly as to the alleged loss of responsive text messages. Dkt. 254 at 28. Defendants add that Plaintiffs failed to raise their arguments concerning *Lallemand* and this Court's Standing Order in their briefing before Judge Stevenson. *Id.* at 29.

The position of Defendants is more persuasive. It was reasonable for Judge Stevenson to find the Plaintiffs' proffered explanations for failing to produce the responsive text messages were sufficiently lacking in credibility that they did not provide a substantial justification. Judge Stevenson did not err in rejecting Plaintiffs' representations that, when Laub and Kanes replaced their iPhones, both of their phones selectively erased the responsive messages. Moreover, in their briefing of the motion for review, Plaintiffs do not meaningfully contest this facet of the April 30 Discovery Order.

It was also reasonable for Judge Stevenson to find Plaintiffs' arguments as to timeliness insufficient. Plaintiffs did not give sufficient weight to this Court's express directive that Judge Stevenson would retain jurisdiction to resolve discovery disputes in this matter after the non-expert discovery cut-off. That directive clearly distinguishes this matter from the authorities cited by Plaintiffs. Moreover, those cases were not cited to Judge Stevenson. Further, Judge Stevenson appropriately found it material that the parties had stipulated to extend the last day for filing all motions until February 25, 2019, the date on which Defendants' motion to compel was filed. Although Plaintiffs now contend they did not intend to

---

[13] This case is factually distinct from the circumstances presented in *Lallemand v. County of Los Angeles,* CV 17-0781 JAK (SSx), 2018 WL 6137135 (C.D. Cal. June 14, 2018), on which Plaintiffs rely. This Court provided after the non-expert discovery cut-off in this action that Judge Stevenson would retain jurisdiction to resolve discovery disputes. This was not a *pro forma* directive, and it created a substantive exception to the default rule set forth in this Court's Standing Order. No such directive was issued in *Lallemand*. *Second*, the relevant discovery requests here were served approximately six months before the discovery cut-off, and Judge Stevenson appropriately found that Plaintiffs had made repeated assurances they would comply with them. Defendants' service of the First RFPs afforded ample time for Plaintiffs to comply, whereas in *Lallemand*, "Defendants waited until the end of the fact discovery period even to serve the subpoenas" at issue. *Id.* at *3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

extend the date to file *this* motion, that intention is immaterial. The Order entered by the Court, which granted in part the stipulated continuance, continued the "[d]eadline for [f]iling [a]ll [m]otions," with no limitation on the nature of motion that could be properly filed by that amended deadline. Dkt. 101 at 2.

In addition, it was not error for Judge Stevenson to determine that "Plaintiffs cannot plausibly dispute that Defendants sought text messages through their First RFP's served in March 2018." Dkt. 212 at 5. The disputed text messages were responsive to several elements of Defendants' First RFPs, to which Plaintiffs represented they would voluntarily comply. The relationship is particularly close with regard to the text messages between Laub and Kanes, as communications between the two were expressly sought, but not provided, in response to the First RFPs. For these reasons, the determination by Judge Stevenson that Plaintiffs' conduct was not "substantially justified" does not warrant reversal.

As noted, Plaintiffs also argue that they were not afforded an opportunity to be heard on the issue of an expense award, and that the award is contrary to law for this independent reason. However, Judge Stevenson held a telephonic conference with the parties regarding this discovery dispute, Dkt. 212 at 3, and Judge Stevenson specifically provided for a hearing on the issue of an expense award in the April 30 Discovery Order, *id.* at 9-10. The Order states:

> Defendants may file a request for reasonable expenses incurred in bringing the Motion, including attorneys' fees, with supporting documentation within fourteen (14) days of the date of this Order, with a hearing set consistent with the Court's regular motion calendar. Plaintiffs may file any objection to Defendants' request within seven days of service of Defendants' request. Plaintiffs may file a reply within five days of service of any opposition.

*Id.* at 10. Thus, Plaintiffs will be afforded the opportunity to fully brief the issue of an expense award, as well as the opportunity to present their arguments on the matter to Judge Stevenson at a hearing. It also merits mention that the award of expenses is couched in permissive, not absolute terms. *See id.* ("Defendants *may* file a request for reasonable expenses . . . .) (emphasis added). This procedure was sufficient to comply with the requirements of Fed. R. Civ. P. 37.

For the foregoing reasons, Plaintiffs have not met their burden to demonstrate that the April 30 Discovery Order was clearly erroneous or contrary to law. Plaintiffs' Motion for Review is **DENIED**.

Notwithstanding these findings, an award of fees for the work performed by Defendants' counsel in connection with opposing Plaintiffs' Motion for Review is not warranted under the circumstances. Although Plaintiffs' arguments were unsuccessful, it was unusual for this Court to issue a jurisdictional directive to a magistrate judge following the discovery cut-off. Therefore, there was little independent authority on the precise contours of that directive. Further, it was somewhat unusual for Judge Stevenson to determine an expense award was appropriate absent a corresponding request from a party for such an award. The somewhat unique circumstances presented here weigh against granting a fee award. In addition, Defendants will have the opportunity to pursue an award of expenses with respect to the underlying motion to compel, which this Order does not overturn. Accordingly, there are "circumstances [that] make an award of expenses unjust," Fed. R. Civ. P. 37(a)(5)(B), and Defendants' request for an award of expenses is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-06210 JAK (KSx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | Justice Laub v. Nicholas Horbaczewski, et al. | | |

## V.    Conclusion

For the reasons stated in this Order, the Motion to Dismiss and the Special Motion to Strike are **GRANTED**. Defendants' Motion for Review is **GRANTED IN PART AND DENIED IN PART;** the April 15 Discovery Order is affirmed, except as to the determination that a further, limited deposition of Post was unwarranted. Plaintiffs' Motion for Review is **DENIED**, as are the requests for fee awards in connection with both motions for review**.**

Within 10 days of the completion of any outstanding discovery, Defendants may file a supplemental brief, not to exceed five pages, that addresses the effect, if any, of that discovery with respect to Defendants' motion for summary judgment. With seven days of any such filing, Plaintiffs may file a response, also not to exceed five pages. The supplemental brief(s) shall be limited to any new material arising out of this additional discovery and shall not simply repeat arguments previously presented as to Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer   ak