PATRICK M. RYAN (SBN 203215)
  pryan@bzbm.com
STEPHEN C. STEINBERG (SBN 230656)
  ssteinberg@bzbm.com
CHAD E. DEVEAUX (SBN 215482)
  cdeveaux@bzbm.com
GABRIELLA A. WILKINS (SBN 306173)
  gwilkins@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:  (415) 956-1900
Facsimile:  (415) 956-1152

*Attorneys for Plaintiffs*
*JUSTICE LAUB and DAN KANES*

KENNETH A. KUWAYTI (CA SBN 145384)
  KKuwayti@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone:  (650) 813-5600
Facsimile:  (650) 494-0792

ANDREW DITCHFIELD (admitted *pro hac vice*)
  andrew.ditchfield@davispolk.com
BRIAN M. BURNOVSKI (admitted *pro hac vice*)
  brian.burnovski@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

*Attorneys for Defendants*
*NICHOLAS HORBACZEWSKI and*
*DRONE RACING LEAGUE, INC.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUSTICE LAUB and DAN KANES,<br><br>            Plaintiffs,<br><br>      v.<br><br>NICHOLAS HORBACZEWSKI, DRONE RACING LEAGUE, INC., and DOES 1 TO 10,<br><br>            Defendants. | Case No. 2:17-cv-06210-JAK (KSx)<br><br>**JOINT REPORT IN RESPONSE TO DKT. 479**<br><br>Before the Hon. John A. Kronstadt |

## I. JOINT INTRODUCTORY STATEMENT

Pursuant to the Court's July 17, 2020 Order (Dkt. 479) (the "Order"), Plaintiffs Justice Laub and Dan Kanes ("Plaintiffs") and Defendants Nicholas Horbaczewski and Drone Racing League, Inc. ("Defendants") (collectively, the "Parties") submit this Joint Report to address the following four issues presented by the Court's Order:

> (1) Are there any other discovery disputes that either party will seek to present for resolution;
> (2) If there are such disputes, what is the earliest date on which they can be presented to Judge Stevenson;
> (3) Whether the resolution of any such disputes would be material to the analysis of the pending motions for summary judgment; and
> (4) What actions can the parties take, and/or what procedures can the Court adopt, that will lead to a more efficient conclusion of the remaining pretrial process.

As discussed in the Order, the following motions remain pending before the Court: (1) Plaintiffs' Motion for Partial Summary Judgment (Dkt. 194); (2) Defendants' Motion to Exclude Regan (Dkt. 225); (3) Plaintiffs' Motion to Exclude Parks (Dkt. 228); (4) Plaintiffs' Motion to Exclude Cumming (Dkt. 229); (5) Plaintiffs' Motion to Exclude Schoettelkotte (Dkt. 230); (6) Defendants' Motion for Summary Judgment (Dkt. 234); (6) Plaintiff Dan Kanes' Motion for Attorneys' Fees re the Anti-SLAPP motion (Dkt. 358); and (7) Plaintiffs' Conditional Motion for Certification of Interlocutory Appeal for the Purpose of Certifying a Question to the California Supreme Court (Dkt. 371) (collectively, the "Pending Motions"). Several additional discovery disputes are pending before Judge Stevenson: (1) The parties submitted letter-briefs regarding privilege issues on June 24, 2020 (Dkt. 476, 477), and (2) the parties sent emails to chambers on July 2, 2020, and July 6, 2020, regarding the log prepared by the independent forensic examiner who reviewed Mr. Kanes's October 2018 backup file. Finally, on July 22, 2020, Judge Stevenson granted in part and denied in part Defendants' Motion for Spoliation Sanctions

Against Justice Laub.  The order permits Defendants to file a request for reasonable attorneys' fees and expenses by August 5, 2020; that is also the deadline for either party to file objections to Judge Stevenson's order.

## II. PLAINTIFFS' POSITION ON REMAING DISCOVERY DISPUTES AND TIMING

After filing a motion on the various issues addressed in their motion re timeliness of discovery disputes (Dkt. 423), Plaintiffs do not anticipate filing any additional discovery motions. Plaintiffs will be prepared to file this motion with Judge Stevenson within the next two weeks, or no later than August 7, 2020. Plaintiffs also plan to move for spoliation sanctions against Defendants for the failure of Ryan Gury and Trevor Smith's (two key employees of the DRL and the founders of DroneKraft who Defendants' claim originated their idea for the DRL) failure to preserve text messages from 2015-17, either in conjunction with, or following their forthcoming motion to compel. Plaintiffs are looking forward to discovery motions concluding and this case moving towards trial.

Plaintiffs have filed almost half as many discovery motions as Defendants throughout this case. In light of such, once the Court made clear that post-close-of-discovery motion were permitted (*see* Dkt. 398), Plaintiffs felt compelled to move to obtain the discovery that they were entitled to in order for discovery in this case to be fair, reciprocal, and bilateral. Once these remaining issues are resolved, Plaintiffs have no intention of seeking any further relief related to discovery.

## III. DEFENDANTS' POSITION ON REMAINING DISCOVERY DISPUTES

In light of the Order, and as discussed with Plaintiffs, Defendants are pursuing just one additional discovery issue—the production of text messages between Plaintiffs and third parties that are responsive to Defendants' prior discovery requests, including any texts relating to DRL. Plaintiffs suggest that Defendants never previously requested such texts, but that is not so. For example, in their first set of requests for production, dated March 28, 2018, Defendants requested, among other things, "[a]ll documents relating to any communications by you with any third party about DRL or this lawsuit (including any reporter or the press)" and "[a]ll documents relating to the reference to DRL on your LinkedIn profile, including any communications that you have had with any third party concerning that reference or your alleged affiliation with DRL." Dkt. 152-28 at 30, 33. Plaintiffs never conducted an adequate search for such texts or produced them during the initial discovery period.[1] Defendants understand, however, that Plaintiffs are agreeing to search for and produce such text messages now and, accordingly, Defendants do not anticipate that any motion practice on this issue will be necessary. In the event that a motion to compel becomes necessary, Defendants are prepared to file it by August 7, 2020.

Separately, and as noted above, there also remain pending before Judge

---

[1] Defendants previously moved to compel the production of text messages between Plaintiffs and between Mr. Kanes and his brother. Dkt. 152. Mr. Kanes' production of more than 1,200 text messages in response to that motion, which were located on an October 2018 iPhone backup that was never previously searched during discovery, indicates that there are likely additional responsive, unproduced text messages between Mr. Kanes and other individuals on the back-up file. *See* Dkt. 456 at 26 n.7 (describing responsive text messages that Plaintiffs failed to produce until the Court ordered them to do so). Defendants did not previously pursue this issue because they understood, until the Court's clarification in the Order, that it was too late to pursue it.

Stevenson several additional discovery-related issues, which concern (i) the parties' respective privilege logs and (ii) an outstanding issue relating to the independent forensic examination that Judge Stevenson previously ordered of Mr. Kanes' iPhone backup file. The parties completed the simultaneous briefing that was requested by Judge Stevenson on the first issue on June 24, 2020, and are awaiting a decision. Dkt. 476, 477. Among other issues addressed in that briefing, Defendants are requesting that Plaintiffs produce in their entirety (or, alternatively, in redacted form) 151 texts exchanged between them to which no attorney was present. The second issue involves certain additional information that Defendants have requested Plaintiffs to provide about the texts that were subject to forensic examination, including the total number of texts retrieved from Mr. Kanes's back-up by month. Defendants are hoping to work out a resolution with Plaintiffs regarding the second issue, but if not, have been given permission by Judge Stevenson to file a motion to compel on this issue. If needed, they will do so by August 7, 2020.[2]

---

[2] Regarding Plaintiffs' anticipated motions, Defendants remain willing to meet and confer to resolve as many of the open issues as possible.

## IV. PLAINTIFFS' POSITION ON PENDING MOTIONS FOR SUMMARY JUDGMENT

Resolution of any outstanding discovery disputes is immaterial to the analysis and determination of the pending motions for summary judgment. In fact, Defendants are time-barred from supplementing their motion for summary judgment. Pursuant to the Court's July 30, 2019 Order, Defendants could file a supplemental brief to their motion for summary judgment "[w]ithin **10 days of the completion of any outstanding discovery** [] that addresses the effect, if any, of [the text messages] with respect to Defendants' motion for summary judgment." Dkt. 347 at 36 (emphasis added). Defendants have surpassed this deadline by a long shot. In August 2019, Plaintiff Dan Kanes produced nearly 1,000 additional responsive text messages from a back-up file from his old iPhone on an old laptop. *See* Dkt. 430-01 at 11. But Defendants did not file any supplemental briefing. On December 20, 2019, Plaintiffs produced 200 new text messages between themselves and between Mr. Kanes and his brother, Aaron Kanes after Plaintiffs' forensic expert, Wayne Hale from Resurgant, Inc., was able to recover the messages from Mr. Kanes' same back-up. *See* Dkt. 428-01 at 19-20. Following this production, Defendants chose not to file any supplemental briefing. Defendants, however, were not satisfied and insisted on a second forensic exam by a neutral expert. Over a month ago, Defendants were notified of the results of the second forensic examination, which failed to discover any additional text messages. Nevertheless, Defendants again failed to file any supplemental briefing. "Completion" of this discovery ended months ago. *See* Dkt. 347 at 36. But Defendants now take the untenable position that "any Discovery" means "all Discovery," regardless of when they obtained information they claim supports their Motion for Summary Judgment. In short, Defendants claim that they can acquire evidence and sit on it for one year even though they think it is highly material to a pending motion. This is not a logical reading of the Court's order.

1  It has now been almost *one year* since Defendants received the majority of
2  the text messages that they claimed they needed to supplement their motion for
3  summary judgment, and over *seven months* since Defendants received the
4  additional 200 text messages. But despite their repeated assertions that these text
5  messages are material to their summary judgment motion (*see e.g.* Dkt. 254 at 30),
6  Defendants have chosen not to supplement their motion with text messages that they
7  have had in their possession for almost a year. This delay strongly indicates that the
8  messages are not material, and in any event, the delay time-bars Defendants from
9  using any evidence that they have had in their possession for greater than ten days.
10 Moreover, Defendants have failed to show how any of the text messages could
11 possibly change the outcome of their motion for summary judgment. For example,
12 none of the text messages can alter the fact that Plaintiffs have already raised a
13 triable issue of fact that a partnership existed, and therefore no additional evidence
14 will be material to the resolution of their motion (*see* Dkt. 307 at 21:15-22:24),
15 because if the jury finds that there was a partnership, then a fiduciary duty exists as
16 a matter of law. *See* Cal. Corp. Code §16404(a); *Agam v. Gavra*, 236 Cal.App.4th
17 91, 112-13 (2015); Dkt. 307 at 21:25-27.[3]

18  In a further effort to delay, Defendants have asked Plaintiffs, for the *first time*
19 yesterday, to produce additional text messages between Plaintiffs and third parties,
20 and that they would be proceeding with a motion to compel if Plaintiffs do not
21 agree. Defendants claim these text messages with third parties will *also* be
22 "material" to their motion for summary judgment. Defendants' true intentions shine
23 through this façade — another delay tactic. It is difficult to fathom how these
24 additional text messages between Plaintiffs and third parties will in any way be
25 material to Defendants' motion for summary judgment. Especially, because they

---

[3] Plaintiffs believe they have raised a triable issue of fact as to all Defendants' summary judgment claims, and highlight only this one here as an example.

have never sought this production in the past.  Nevertheless, Plaintiffs have agreed to produce the additional text messages Defendants now seek in an effort to compromise and bring this case closer to trial, including the resolution of the pending motions for summary judgment.

Here, Federal Rules of Civil Procedure, Rule 56 should be our guide.  Under Rule 56, there is also no reason for the Court to defer or delay resolution of the motion for summary judgment.  *See* Fed. R. Civ. P. 56(d) ("[i]f a *nonmovant* shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it…" (emphasis added).  Defendants, while not the nonmovant here, do not claim that "essential" evidence is missing.  Instead, Defendants have argued, which Plaintiffs strongly disagree, that they have plenty of evidence for the Court to decide on their motion for summary judgment.  *See generally* Dkt. 234-1.  Defendants have failed to show how any new evidence from the text messages they already possess or the text messages they further seek will be material, essential or non-cumulative.[4]

---

[4] Defendants cannot point to additional pieces of evidence to bolster arguments they have already provided evidence for, as such evidence would not be essential.

## V. DEFENDANTS' POSITION ON PENDING MOTIONS FOR SUMMARY JUDGMENT

Defendants' position is that resolution of at least two of the outstanding discovery issues—Plaintiffs' failure to produce responsive text messages that they exchanged with third parties and Defendants' concerns over certain of Plaintiffs' privilege log entries—"would be material to the analysis of the pending motions for summary judgment." *See* Dkt. 479 at 4.

Plaintiffs' third-party texts, like the texts previously produced by Mr. Kanes in late 2019, are likely to bear materially on several of Defendants' defenses at summary judgment, including that (i) certain of Plaintiffs' claims are untimely, and (ii) Plaintiffs have not shown triable issues as to whether they formed a contract or a partnership with Defendant Nicholas Horbaczewski. Dkt. 234-1 at 20–28.

Contrary to Plaintiffs' assertion that their previously produced texts (and any additional third-party texts that they have now agreed to produce) "are not material," Judge Stevenson observed in a recent order granting spoliation sanctions against Mr. Laub that several of Mr. Laub's text messages with third parties "contradicted Plaintiffs' allegations that they believed they had an agreement with Defendants and a controlling stake in DRL." Dkt. 480 at 10. Judge Stevenson further concluded that "there is extrinsic evidence that Plaintiff Laub likely received text messages from third parties about DRL during the relevant period and responded with statements that are relevant to Defendants' defenses in this case." *Id.* Accordingly, Defendants have every reason to believe that Mr. Kanes's unproduced texts with third parties about DRL, like the text messages he exchanged with Mr. Laub, will be relevant and material to the summary judgment analysis.[5]

Defendants' request for the production of text messages (or redacted text

---

[5] Defendants' supplemental brief in connection with their pending summary judgment motion will feature the numerous text messages produced by Mr. Kanes that undermine Plaintiffs' claims.

messages) that Plaintiffs have withheld as privileged also may influence the summary-judgment motions. According to Plaintiffs' privilege log, these texts all involve communications with their then-attorney about DRL, and 90 of them were exchanged during a time period—May and June 2015—that is relevant both to Defendants' statute-of-limitations arguments and their arguments about whether a contract/partnership was formed. This motion, too, should be resolved before Defendants are required to supplement the summary-judgment motion.

Plaintiffs' assertion that it is now too late for Defendants to supplement their summary judgment brief based on the texts produced to date, or with additional to-be-produced texts (in connection with the two issues identified above), is without merit. The Court's July 30 Order permitted Defendants to file a supplemental brief in support of their summary-judgment motion "[w]ithin 10 days of the completion of any outstanding discovery." Dkt. 347 at 36. Because various discovery has remained outstanding, and continues to remain outstanding, for the reasons above, the deadline to file the supplemental motion has not yet run. Indeed, the Court's July 17, 2020 order recognized as much, noting that Defendants had not yet filed their supplemental brief "because the parties have not completed this additional discovery." Dkt. 479 at 4.

Finally, Defendants strongly reject any suggestion by Plaintiffs that Defendants are trying, or have ever tried, to improperly delay this action. Defendants share Plaintiffs' interest in seeing a speedy and just conclusion to this litigation and have acted at all times in good faith in litigating the case. Plaintiffs' characterizations are not conducive to a productive resolution of pretrial proceedings and are contrary to this Court's admonition that the parties "proceed in a professional, civil and efficient manner in these proceedings." *See id.*

## VI. PLAINTIFFS' POSITION REGARDING PROCEDURES THAT WILL LEAD TO CONCLUSION OF THE PRETRIAL PROCESS

The Parties both agree that no further discovery is necessary for resolution of the four pending expert motions, Mr. Kanes' pending Motion For Attorney Fees, and Plaintiffs' Motion for Certification (Dkts. 225, 228, 229, 230, 358, & 371), and that the Court can proceed in ruling on these motions. Specifically, Defendants' Motion to Exclude Regan is an effort to deny Plaintiffs an opportunity to seek damages, and involves a pure *legal issue*: whether Plaintiffs' damages for Defendants' misappropriation of DRL stock is measured by the value of the stock at the time of trial or is frozen at the date of their misappropriation. *See* Dkts. 225 & 286. Resolution of this question turns on California Civil Code § 3336. California Courts of Appeal are split on whether § 3336 permits recovery for an increased value of the shares after the date of misappropriation. *See generally* Dkt. 371; *Compare Friedman*, 31 Cal. App. 2d at 73 (finding that section 3336's special circumstances exception permits recovery of misappropriated stock's highest intermediate value between date of conversion and trial) and *Betzer*, 14 Cal. App. 2d at 61 (same); *with Wong v. Paine, Webber, Jackson & Curtis*, 208 Cal. App. 2d 17 (1962) (finding that § 3336 limits misappropriation victim's damages to stock's value at time of theft). If the Court is not inclined to deny Defendants' motion it should swiftly grant Plaintiffs' Motion for Certification to give the California Supreme Court the opportunity to resolve this issue prior to trial in this action, as it implicates a question of the State's public policy. There is no additional discovery that would influence the analysis of this motion and either denying the motion now or certifying it immediately for review would be the most efficient course.

As for the Motion for Attorney Fees related to Plaintiff, Dan Kanes's successful anti-SLAPP motion, Plaintiffs ask that the Court rule on that motion as soon as possible. The costs of litigating this case, which has been drug out for a very long time, is overwhelming these two individual Plaintiffs, who have very

limited assets, and is seriously impairing their ability to make it to trial.

Defendants claim that resolution of Defendants' Motion to Exclude Plaintiffs' expert Regan will limit the need for additional discovery, but that is incorrect. The discovery that Plaintiffs will be seeking in their impending motion to compel, such as the Series C financing and communication with investors, is likely to lead to discovery of admissible evidence related to other issues in the case, including admissions by the Defendants regarding the existence of the partnership, as well as Plaintiffs' remedies for unjust enrichment and specific performance related to their entitlement to a share of the business of the DRL. None of which are not implicated by the Regan opinions.

Accordingly, Plaintiffs are eager to resolve *all* Pending Motions and proceed with scheduling trial. Plaintiffs are recommending that the Court set a trial date for some time between **mid-January 2021 and March 2021**. In light of the current pandemic and out of concern for the Court's resources and everyone's health and safety, Plaintiffs suggest that the Court conduct a virtual trial with a truncated jury made up of six jurors, and three alternates, with alternates chosen at the end by lot. Plaintiffs are also amenable to a remote jury if, by the time of trial, the Court house remains closed to civil cases. If somehow, by the time of trial, the effects of the pandemic have subsided, the Parties could proceed in Court per usual. Federal courts have begun implementing new procedures like this, such as virtual trials and remote jury pools, including in a patent infringement case[6], in an effort to keep their cases on track. The reality is that the current COVID-19 situation does not appear to be materially improving any time soon, and the Parties need to adapt and be more

---

[6] *See Centripetal Networks, Inc. v. Cisco Systems, Inc.*, Case No. 2:18-cv-942020, WL 3411385 (E.D. V.A. April 23, 2020); https://www.law360.com/articles/1269331/cisco-patent-trial-kicks-off-over-zoom-without-a-hitch; *see also* https://www.reuters.com/article/us-health-coronavirus-courts-texas/texas-tries-a-pandemic-first-a-jury-trial-by-zoom-idUSKBN22U1FE.

flexible in order to move this case towards resolution. Setting a trial date will be the most effective way to efficiently move this case towards conclusion of the pre-trial process.

Plaintiffs proposed as much to Defendants, but Defendants' position is that, in essence, trial should be postponed *indefinitely*. They refused to even consider a virtual trial or a remote jury and insist on having at least nine jurors whenever trial does occur. Defendants have also offered nothing of substance to instruct the Court on how to efficiently move this case forward. Instead of utilizing this opportunity to guide the Court towards efficient resolution by stipulating to a trial date, Defendants are once again acting self-interestedly by presenting new issues to the Court in an attempt to drag this case out even further. This behavior must end. Defendants, represented by two mega international law firms with numerous lawyers on the case, have repeatedly employed tactics designed to make this case as expensive and long-lasting as possible for two individuals with limited financial means. Such tactics are epitomized by Mr. Horbaczewski's counterclaim for defamation (Dkt. 90), a flagrantly baseless pleading — later stricken by the Court (*see* Dkt. 347) — which Defendants conceded, in opposing an award of attorneys' fees to Plaintiffs, was "straightforward" because the "action arose out of protected activity." Dkt. 370 at 13:25-26;19:16-18. Well the tactic is working, as Plaintiffs are at their wits end and are beginning to think that they will never get their day in court, but this Court's request for a Joint Status Report provided Plaintiffs with a glimmer of hope that their day might come.

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs are entitled to a "*just, speedy, and inexpensive* determination" of their case. Fed. R. Civ. P. 1 (emphasis added). This case has been proceeding for over **three years**, without a trial date in sight. Unless a trial date is set at this time, Plaintiffs' rights to justice are in extreme jeopardy as Plaintiffs cannot bear the cost of proceeding in the face of such tactics much longer. *See* Fed. R. Civ. P. 1. Defendants claim that Plaintiffs

cannot possibly be hurting financially from the delays of this case as badly as they claim because their case is on contingency fee. But that does not account for the significant out-of-pocket expenses that Plaintiffs have been responsible for, which have been in excess of *six figures,* and to which they have had to cover, in part, on their credit cards. In light of all this, Plaintiffs respectfully request that this Court set a speedy trial date, order that it be done virtually and with remote jurors if necessary, and rule on all pending motions with all due speed and close off further financial bleeding until the time of trial.

## VII. DEFENDANTS' POSITION REGARDING PROCEDURES THAT WILL LEAD TO CONCLUSION OF THE PRETRIAL PROCESS

Defendants agree that resolution of the parties' four pending motions to exclude experts (Dkt. 225, 228, 229, 230) do not depend on any outstanding discovery and can be decided at the Court's convenience. For the same reasons, Defendants agree that the Court can move forward, at its convenience, with ruling on Plaintiffs' motion to conditionally certify the decision on one of the expert motions for interlocutory appeal (Dkt. 371) and Mr. Kanes's pending Motion for Attorney Fees (Dkt. 358).

Defendants further submit that the timely resolution of the expert motions and the conditional certification motion would help as the parties work to bring pretrial proceedings to a close. For example, should the Court exclude the expert opinions of Plaintiffs' damages expert, Greg J. Regan (as the Court indicated it was inclined to do in its tentative ruling), Defendants believe that would moot several categories of documents that Plaintiffs are seeking as part of the discovery issues they continue to pursue.[7] A ruling on Defendants' motion to exclude Mr. Regan's opinions would also provide both parties with additional clarity about the scope of damages at issue in the matter, which could help facilitate further discussions about a pretrial resolution.

Plaintiffs have recommended that the Court set a date for a virtual trial and a remote jury pool. These recommendations go beyond the information requested in the Order and, as such, Defendants view these issues as premature and will limit their discussion accordingly. Defendants share the goal of bringing this dispute to

---

[7] This includes documents related to DRL's Series C financing, which substantially post-date the alleged misconduct in the action. As Defendants have argued in connection with their motion to exclude Mr. Regan's damages opinion (and consistent with this Court's tentative ruling on that motion), information that postdates the alleged breach is irrelevant to damages under governing law. A final decision by the Court on that issue would provide valuable guidance to the parties.

resolution as soon as practicable, but given the strain on Court resources created by the COVID-19 pandemic, Defendants believe that the right approach is to resolve the remaining discovery disputes and assess the timing of trial in light of the Court's decisions on the pending motions discussed herein and the Court's preferences on how to proceed.  Given the pending cross-motions for summary judgment, the Court and parties would gain little speculating about the scope and format of trial now.  The more orderly way to proceed is for the Court to rule on the pending motions and then revisit what (if anything) remains for jury trial.

Should the Court entertain Plaintiffs' trial suggestions, Defendants oppose trying this case virtually, with a remote jury, or with a six-person jury.  Plaintiffs are correct that the court in *Centripetal Networks, Inc. v. Cisco Systems, Inc.* conducted a virtual trial, but that was a bench trial rather than a jury trial.  Moreover, counsel from one of Defendants' law firms tried that case and witnessed firsthand how technical issues made the trial less, not more, efficient.  Those issues would be multiplied if, as Plaintiffs propose, the jury is remote as well.[8]

Plaintiffs attribute Defendants' position to a desire for delay.  As noted above, that is not so, and fairness dictates a short response to Plaintiffs' assertions.  Plaintiffs contend that the length of these proceedings is creating a financial strain and that they cannot bear the cost of litigating this case much longer, but Plaintiffs represented to the Court previously that their counsel is representing them on a contingency fee basis.  Dkt. 358 at 13.  The financial strain is not-one-sided, and Defendants suffer from it as well.  But Defendants did not file three separate complaints.  Defendants are not to blame for the delay caused by Plaintiffs' misrepresentation to counsel and the Court regarding the existence of text messages that were exchanged between the Plaintiffs.  Nor Did Defendants fail to timely

---

[8] If helpful to the Court, Defendants would be pleased to offer further views regarding their concerns about a virtual trial with a remote jury.

produce 1,200 text messages or spoliate evidence, which injected a year-long delay while Defendants successfully engaged in motion practice to address such issues. Like Plaintiffs, Defendants look forward to a speedy and just resolution to this lawsuit, and are committed to pursuing that end.

DATED: July 24, 2020

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

By: _____/s/ Stephen C. Steinberg_____
Stephen C. Steinberg
*Attorneys for Plaintiffs*
*JUSTICE LAUB and DAN KANES*

DATED: July 24, 2020

DAVIS POLK & WARDWELL LLP

By: _____/s/ Andrew Ditchfield_____
Andrew Ditchfield
*Attorneys for Defendants*
*NICHOLAS HORBACZEWSKI and DRONE RACING LEAGUE, INC.*